**RECORD NO. 13-5342**

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals
## For The District of Columbia Circuit

# MORGAN DREXEN, INC.; KIMBERLY A. PISINSKI,

*Plaintiffs – Appellants*,

**v.**

# CONSUMER FINANCIAL PROTECTION BUREAU,

*Defendant – Appellee*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————

## BRIEF OF APPELLANTS

———————

Randall K. Miller
Nicholas M. DePalma
Randal M. Shaheen
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons Corner, Virginia  22182
(703) 760-1600
rkmiller@venable.com
nmdepalma@venable.com
rmshaheen@venable.com

*Counsel for Appellants*

THE LEX GROUP^DC ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C.  20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

[ORAL ARGUMENT NOT SCHEDULED]

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| **MORGAN DREXEN, INC. and** | ) | |
| **KIMBERLY A. PISINSKI,** | ) | |
| | ) | |
| *Appellants,* | ) | |
| | ) | |
| **v.** | ) | **No. 13-5342** |
| | ) | |
| **CONSUMER FINANCIAL** | ) | |
| **PROTECTION BUREAU,** | ) | |
| | ) | |
| *Appellee* | ) | |
| | ) | |

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

The following information is provided pursuant to the Court's order of

November 21, 2013, and D.C. Circuit Rule 28(a)(1).

### A.     PARTIES AND AMICI

APPELLANTS

Morgan Drexen, Inc., and Kimberly A. Pisinski were Plaintiffs in the district

court and are Appellants in this Court.

APPELLEE

Consumer Financial Protection Bureau was the Defendant in the district

court and is Appellee in this Court.

AMICI

There were no amici in the district court.

## B.    RULING UNDER REVIEW

The ruling under review is the district court's October 17, 2013 order, Civil

Action No. 13-01112 (CKK), denying Appellant's Motion for Summary Judgment,

Motion for a Temporary Restraining Order, and Motion for a Preliminary

Injunction, and granting Appellee's Motion to Dismiss, or in the alternative, for

Summary Judgment.

## C.    RELATED CASES

This matter has not previously been before this Court. A related case

pending in the United States District Court for the Central District of California is

*Consumer Financial Protection Bureau v. Morgan Drexen, Inc., and Walter

Ledda*, Case No. SACV13-01267 JLS (JEMx).

A separate case challenging the constitutionality of the Consumer Financial

Protection Bureau brought by State of National Bank of Big Spring *et al.* is also

substantially related and was dismissed on August 1, 2013 by Judge Huvelle in the

district court (Civil Action No. 12-1032 (ESH). That case is currently on appeal in

this Court (Nos. 13-5247 and 13-5248).

Dated: December 23, 2013

Respectfully submitted,

VENABLE LLP

/s/ David D. Conway
David D. Conway
575 7th Street, NW
Washington, DC 20004
202.344.4489 (T)
202.344.8300 (F)
DDConway@Venable.com

*Randall K. Miller
*Nicholas M. DePalma
8010 Towers Crescent Drive,
Suite 300
Tysons Corner, VA 22182
(703) 905-1449
(703) 821-8949 (facsimile)
RKMiller@venable.com
NMDepalma@venable.com

*subject to admission

Counsel for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2013, I filed the foregoing through the

Appellate CM/ECF system.  Service will be accomplished by the Appellate

CM/ECF system.

/s/ David D. Conway_____
David D. Conway

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iv

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES............................................................1

STATUTES AND REGULATIONS ......................................................2

STATEMENT OF THE CASE...............................................................2

    I.    Procedural Background .........................................................2

    II.    CFPB's Unprecedented Power and Extreme Insulation ......................5

    III.    Morgan Drexen's Business Supporting Consumer-Advocate
    Lawyers Practicing Law .......................................................7

    IV.    Kim Pisinski's Role As A Consumer-Advocate Lawyer and
    Contract With Morgan Drexen for Support Services............................8

    V.    CFPB'S Investigation of Morgan Drexen Under Dodd-Frank ...........11

    VI.    CFPB Brings an Enforcement Action Against Morgan Drexen
    In California Alleging That It and the Consumer-Advocate
    Lawyers It Supports (Like Pisinski) Are Perpetrating Fraud on
    Consumers .........................................................................13

SUMMARY OF ARGUMENT ............................................................15

ARGUMENT .....................................................................................19

    I.    The District Court Erred in Holding That Pisinski Lacks
    Standing............................................................................19

    II.    The District Court Failed to Consider the Strength of Morgan
    Drexen's Showing That CFPB's Structure is Unconstitutional..........29

A.   Judicial Criteria ........................................................31

B.   Constitutional Violation #1:  Too Much Unchecked
     Agency Power ........................................................33

C.   Constitutional Violation #2:  In the Aggregate, CFPB's
     Lack of Structural Checks, Balances, and Oversight is
     Unconstitutional ........................................................35

D.   Constitutional Violation #3:  Insufficient Balance
     Between the Agency's Scope of Power and Checks,
     Balance and Oversight ............................................36

E.   Constitutional Violation #4:  Encroachment on
     Presidential Power to Supervise Executive Branch.................38

F.   Constitutional Violation #5:  Encroachment on Judicial
     Power By Prescribing Improper Rule of Decision ..................39

G.   Constitutional Violation #6:  Abdicating Congress's
     Most Important Power—the Power of the Purse .....................39

H.   Constitutional Violation #7:  Insufficient Democratic
     Control of Government ............................................41

I.   Constitutional Violation #8:  Refusing to Follow the
     Constitutional Tradition of Multimember Commission
     for a Regulatory-Enforcement Agency .....................................42

III.   Pre-Enforcement Review Was Appropriate ........................................45

IV.   The District Court Erred By Not Enjoining the Second-Filed
      California Action .................................................................47

CONCLUSION ....................................................................................................49

REQUEST FOR ORAL ARGUMENT ...............................................................50

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

ADDENDUM

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Abbott v. Lockheed Martin Corp.*,
    725 F.3d 803 (7th Cir. 2013) ...................................................................23, 29

*Am. Bar Ass'n v. F.T.C.*,
    671 F. Supp. 2d 64 (D.D.C. 2009), *vacated as moot*,
    636 F.3d 641 (D.C. Cir. 2011)......................................................................27

*\*Ass'n of Am. Railroads v. U.S. Dep't of Transp.*,
    721 F.3d 666 (D.C. Cir. 2013).............................................18, 32, 33, 34, 36

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289 (1979)......................................................................................22

*Baker v. Carr*,
    369 U.S. 186 (1962).......................................................................................19

*Bauer v. Marmara*,
    2013 WL 1684051 (D.D.C. Apr. 18, 2013)
    942 F. Supp. 2d 31 (D. D.C. 2013), 488 U.S. 361 (1988)......................32, 42

*Bell v. Hood*,
    327 U.S. 678 (1946)......................................................................................30

*\*Bowsher v. Synar*,
    478 U.S. 714 (1986)................................................................................32, 34

*\*Buckley v. Valeo*,
    424 U.S. 1 (1976).........................................................................................34

*\*CFPB v. Morgan Drexen Inc.*,
    No. 8:13-cv-01267 (filed Aug. 20, 2013)....................................................13

*\*Chief Authorities are Designated by an Asterisk*

*City of Arlington, Tex. v. FCC*,
    133 S. Ct. 1863 (2013)...................................................................34

**Clinton v. City of New York*,
    524 U.S. 417 (1998)....................................................................44

*Cobbledick v. United States*,
    309 U.S. 323 (1940)....................................................................46

**Columbia Plaza Corp. v. Security National Bank*,
    525 F.2d 620 (D.C. Cir. 1975)...............................................3, 48

*Consumer Financial Protection Bureau v.
Morgan Drexen, Inc. and Walter Ledda*,
    Case No. SACV13-01267 JLS (JEMx) (C.D. Cal.) .......................2

*Correctional Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001)......................................................................30

**Dearth v. Holder*,
    641 F.3d 499 (D.C. Cir. 2011).............................16, 19, 24, 29

*Deaver v. Seymour*,
    822 F.2d 66 (D.C. Cir. 1987)...............................................46, 47

*Dynalantic Corp v. Dep't of Defense*,
    115 F.3d 1012 (D.C. Cir. 1997)............................................23, 29

*Edmond v. United States*,
    520 U.S. 651 (1997).............................................................. 41-42

*Estate of Gaither ex rel. Gaither v. District of Columbia*,
    No. 03-cv-1458, 2005 WL 3272130 (D.D.C. Dec. 2, 2005)..........47

*Fed. Mar. Comm'n v. S. C. State Ports Auth.*,
    535 U.S. 743 (2002)....................................................................32

*Franchise Tax Bd. of Ca. v. Alcan Aluminum Ltd.*,
    493 U.S. 331 (1990)....................................................................20

*Free Enter. Fund v. Pub. Co. Acct'ing Oversight Bd.*,
    130 S. Ct. 3138 (2010)........................................ 17, 18, 19, 26, 30, 31, 34, 38

*Freytag v. Comm'r*,
    501 U.S. 868 (1991)......................................................................................41

*Gen. Elec. Co. v. E.P.A.*,
    360 F.3d 188 (D.C. Cir. 2004).....................................................................45

*Gordon v. Holder*,
    632 F.3d 722 (D.C. Cir. 2011).....................................................................47

*Hall v. Norton*,
    266 F.3d 969 (9th Cir. 2001) .......................................................................24

*Hamdan v. Rumsfeld*,
    548 U.S. 557 (2006)...........................................................................33, 43, 44

*Hanes Corp. v. Millard*,
    531 F.2d 585 (D.C. Cir. 1976).....................................................................45

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935)..............................................................................38, 44

*Huntsman Chem. Corp. v. Holland Plastics Co.*,
    208 F.3d 226 (10th Cir. 2000) .....................................................................22

*Information Handling Servs., Inc. v. Defense Automated Printing Servs.*,
    338 F.3d 1024 (D.C. Cir. 2003).............................................................19, 29

*Int'l Union of Bricklayers & Allied Craftsmen v. Meese*,
    761 F.2d 798 (D.C. Cir. 1985).............................................................24, 29

*Laird v. Tatum*,
    408 U.S. 1 (1972)................................................................................... 40-41

*LaRoque v. Holder*,
    650 F.3d 777 (D.C. Cir. 2011)......................................................... 17, 28-29

*Las Vegas Sands*, LLC v. Nehme,
 632 F.3d 526 (9th Cir. 2011) ..........................................................22

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)........................................................................20

*Massachusetts v. EPA*,
 549 U.S. 497 (2007)...................................................................19, 20

*McKinney v. Bd. of Trustees of Maynard Community College*,
 55 F.2d 924 (4th Cir. 1992) .................................................... 21-22

*Moore v. Suthers*,
 Case No. 11CV7027 (Colo. Dist. Ct. Denver Cnty. Sept. 12, 2012) ........9, 27

*Morrison v. Olson*,
 487 U.S. 654 (1988)...................................................................32, 36

*Mountain States Legal Found. v. Glickman*,
 92 F.3d 1228 (D.C. Cir. 1996)........................................................20

*Muir v. Navy Fed. Credit Union*,
 529 F.3d 1100 (D.C. Cir. 2008)............................................19, 28, 29

*Myers v. United States*,
 272 U.S. 52 (1926)..........................................................................38

*Nat'l Resources Defense Council v. Environmental Protection Agency*,
 464 F.3d 1 (D.C. Cir. 2006)............................................................23

*Proffitt v. FDIC*,
 200 F.3d 855 (D.C. Cir. 2000).......................................................39

*Ralpho v. Bell*,
 569 F.2d 607 (D.C. Cir. 1977)........................................................32

*Rankins v. Winzeler*,
 No. 02-cv-50507,
 2003 WL 21058536 (N.D. Ill. May 9, 2003)..................................46

*Raytheon Co. v. Ashborn Agencies, Ltd.*,
        372 F.3d 451 (D.C. Cir. 2004)......................................................20

*Red River Freethinkers v. City of Fargo*,
        679 F.3d 1015 (8th Cir. 2012) ..................................................29

*Sackett v. EPA*,
        132 S. Ct. 1367 (2012)..............................................................45

*Sherley v. Sebelius*,
        610 F.3d 69 (D.C. Cir. 2010)......................................16, 19, 23, 29

*State Nat'l Bank of Big Spring v. Lew*,
        No. 1:12-cv-01032-ESH,
        2013 WL 3945027 (D. D.C. Aug. 1, 2013)....................................7

*The Pocket Veto Case*,
        279 U.S. 655 (1929)...................................................................43

*Thomas v. Union Carbide Agr. Prods. Co.*,
        473 U.S. 568 (1985)...................................................................45

*Time Warner Entm't Co. v. FCC*,
        93 F.3d 957 (D.C. Cir. 1996).....................................................46

*U.S. Dep't of Navy v. Fed. Labor Relations Auth.*,
        665 F.3d 1339 (D.C. Cir. 2007).................................................40

*United States v. Klein*,
        80 U.S. 128 (1871).....................................................................39

*Washington Metro. Area Transit Auth. v. Ragonese*,
        617 F.2d 828 (D.C. Cir. 1980)...................................................48

*Whitman v. Am. Trucking Ass'ns, Inc.*,
        531 U.S. 457 (2001)..............................................................32, 36

## <u>CONSTITUTIONAL AMENDMENTS</u>

U.S. CONST. amend. V ................................................................45, 47

U.S. CONST. amend. XIV ...............................................................45

## <u>STATUTES</u>

12 U.S.C. §§ 5481 *et seq.*................................................................2

12 U.S.C. § 5491(b)(2)....................................................................7

12 U.S.C. § 5491(c) ........................................................................7

12 U.S.C. §§ 5491 *et seq.*...............................................................1

12 U.S.C. § 5497(a)(2)(C) ...........................................................7, 40

12 U.S.C. § 5497(a)(2)(iii)..............................................................6

12 U.S.C. § 5512(b)(4)(B) .............................................................39

12 U.S.C. § 5517(e) .......................................................................27

12 U.S.C. § 5531(a) .........................................................................6

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1331 ..............................................................................1

## <u>RULES</u>

ABA Model Rules Prof. Conduct 5.3 ..........................................9, 10, 28

ABA Model Rules Prof. Conduct 5.7 ................................................28

D.C. Dist. Court L. R. 7(h) ............................................................21

Fed. R. Civ. P. 56(f) ...................................................................4, 21

Fed. R. Crim. P. 16(b) ...............................................................................47

## **REGULATION**

16 C.F.R. pt. 310 .......................................................................................11

## **OTHER AUTHORITIES**

3 The Founders' Constitution 377 (Philip B. Kurland & Ralph Lerner eds., 1987) (debate of Mar. 1, 1793) .............................................................41

Consumer Financial Protection Bureau, Fiscal Year 2013 Congressional Budget Justification (available at http://files.consumerfinance.gov/f/2012/02/budget-justification.pdf)......................6

Derek S. Witte, *The Bear Hug that is Crushing Debt-Burdened Americans: Why Overzealous Regulation of the Debt-Settlement Industry Ultimately Harms the Consumers it Means to Protect*, 14 Tex. Rev. L. & Pol. 277 (2010) ....................................................................................................8

http://financialservices.house.gov/news/documentsingle.aspx? DocumentID=362307 ...............................................................................43

http://www.consumerfinance.gov/newsroom/cfpb-considers-debt-collection-rules/  ........................................................................................................8

http://www.consumerfinance.gov/newsroom/cfpb-files-suit-against-morgan-drexen-inc-for-charging-illegal-fees-and-deceiving-consumers/ ...........................15

*How Will the CFPB Function Under Richard Cordray*, Hearing Before the Subcomm. on TARP, Financial Services, and Bailouts of Public and Private Programs, 112th Cong., No. 112-107 (2012) ............................................6

Kate Stith, *Congress' Power of the Purse*, 97 YALE L.J. 1343 (1988) ..................41

Letter from Katherine Siggerud, Managing Director for Congressional Relations, U.S. Government Accountability Office to Senator Mike Crapo (July 12, 2013) (available at http://www.cfpbmonitor.com/files/2013/07/GAOLetter.pdf) (last visited Aug. 5, 2013) ...........................................................................................6

The Federalist No. 47 (J. Cooke ed. 1961) ..................................................33, 43, 44

The Federalist No. 51 (James Madison) (Clinton Rossiter ed., 1961) ...................40

Todd Zywicki, *The Consumer Financial Protection Bureau: Savior or Menace?*, 81 GEO. WASH. L. REV. 856 (2013) ........................................................43

U.S. Department of the Treasury, Financial Regulatory Reform: A New Foundation (2009) at 58 (emphasis added). *Available at* http://online.wsj.com/public/resources/documents/finregfinal06172009.pdf .........44

Plaintiff-Appellants Morgan Drexen, Inc. ("Morgan Drexen") and Kimberly Pisinski ("Pisinski"), by and through undersigned counsel, hereby file this brief in support of their appeal from the October 17, 2013 Order granting the Motion to Dismiss or in the Alternative for Summary Judgment filed by Defendant-Appellee Consumer Financial Protection Bureau ("CFPB"), and denying Appellants' Motion for Summary Judgment and Motion for Temporary Restraining Order to Enjoin Second-Filed Action.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 because the case involves a federal question, that is, a constitutional challenge to the structure of CFPB. This Court has jurisdiction under 28 U.S.C. § 1291 because the district court's October 17, 2013 Order appealed from "is a final, appealable Order." [JA 690] Morgan Drexen filed a timely notice of appeal on November 15, 2013. [JA 5]

## STATEMENT OF THE ISSUES

1.     Does CFPB's structure—as set forth in Title X of the Dodd-Frank Act, 12 U.S.C. §§ 5491 *et seq.*—lack constitutionally-required checks, balances, and oversight?

2.     Did the district court err in concluding that Pisinski lacked standing to sue?

- 1 -

3.      Did the district court err in declining to exercise its injunctive and

declaratory power?

4.      Did the district court err in failing to enjoin a second-filed case—

*Consumer Financial Protection Bureau v. Morgan Drexen*, *Inc. and Walter Ledda*,

Case No. SACV13-01267 JLS (JEMx) (C.D. Cal.)—that has overlapping parties

and legal issues?

## STATUTES AND REGULATIONS

Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act

("Dodd-Frank Act"), 12 U.S.C. §§ 5481 *et seq.*, which created CFPB is set forth in

the addendum.

## STATEMENT OF THE CASE

**I.      Procedural Background**

On July 22, 2013, Morgan Drexen (a legal support company) and Pisinski (a

lawyer supported by Morgan Drexen) commenced the civil action below, which

mounted a facial challenge to Title X of the Dodd-Frank Act on the basis that

CFPB lacks constitutionally-required checks, balances and oversight.  Morgan

Drexen and Pisinski moved for a preliminary injunction; at an initial status

conference, the Court suggested resolving the matter on an expedited summary

judgment procedure followed by an expedited decision.

At that status conference, CFPB represented to the district court that it had not yet decided whether to commence an enforcement action.  [JA 696]  Then, almost a month into this case and in the midst of accelerated briefing on summary judgment, on August 20, 2013, without notice, CFPB filed a civil enforcement action in the Central District of California against Morgan Drexen and its CEO, but omitted Pisinski as a party.  [JA 401-22]  The same day, CFPB filed a notice in the district court below attaching its California Complaint.  [JA 398]  Two days later, Morgan Drexen and Pisinski filed a motion for TRO and preliminary injunction to enjoin the second-filed action under *Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975).  [JA 421-30]

The parties submitted briefs on an expedited schedule, but engaged in no discovery.  CFPB did not answer the Complaint.  Morgan Drexen and Pisinski filed a 149-paragraph Statement of Undisputed Facts [JA 337-62], but CFPB did not file one of its own, and did not controvert Appellants' Statement of Undisputed Facts with any evidence.  In its initial filing with the Complaint and Motion for Preliminary Injunction, Morgan Drexen and Pisinski presented Declarations from:

(a)     Pisinski herself, describing her role as a lawyer supported by Morgan Drexen [JA 71-73] (including her contract with, and supervision of, Morgan Drexen, *id*. ¶ 3);

- 3 -

(b)     Walter Ledda, Morgan Drexen's CEO [JA 66-70] (describing the business to support lawyers, including Pisinski's contract with, and supervision of, Morgan Drexen, *id*. ¶4);

(c)     lawyer Randy Shaheen (who attached administrative discovery and correspondence with CFPB describing Morgan Drexen's business to support lawyers (like Pisinski) [JA 114-117, 120, 143-48, 318-35], including CFPB's statement to Shaheen that CFPB believed "***attorneys*** supported by Morgan Drexen" (like Pisinski) are in violation of laws CFPB was charged to enforce, [JA 83] (emphasis added); and

(d)     Todd Zywicki, a constitutional law professor who described the unprecedented structure of CFPB.  [JA 74-78]

CFPB did not file any declarations, affidavits, or other evidence of any kind. CFPB's response to Appellants' Statement of Undisputed Facts mentioned that CFPB wanted to pursue discovery [JA 513-15], but CFPB never moved for such discovery, nor did CFPB file a Rule 56(f) affidavit seeking any discovery. Significantly, CFPB never presented any ***facts*** regarding Pisinski's standing and her role as a lawyer supported by Morgan Drexen—the business model that was subject to CFPB's investigation and the California lawsuit.

The entire case before the district court lasted only three months, from the initial filing on July 22, 2103 to the decision on October 17, 2013, in which the district court (a) granted CFPB's motion to dismiss or in the alternative for summary judgment; (b) denied without prejudice plaintiffs' motion for summary judgment without reaching the merits of the constitutional issue; and (c) denied as moot the motion to enjoin the California case.

## II.     CFPB's Unprecedented Power and Extreme Insulation

CFPB is a new federal agency, created in 2010 by Title X of the Dodd-Frank Act, which has unprecedented authority but is intentionally insulated from the checks, balances, and oversight that apply to other regulatory enforcement agencies such as the FTC and SEC, which also are empowered to commence civil enforcement actions.  The scope of CFPB's powers is extraordinary.  Congress transferred the power to enforce *18* pre-existing consumer protection laws previously enforced by *seven* different agencies.  Congress also granted CFPB new authority to prosecute and prevent actions that it considers "abusive" to consumers, an entirely open-ended term that the agency has discretion to define on a case-by-

case basis.[1]  In addition to these powers, CFPB has launched a data collection

program, which implicates privacy considerations and is the subject of a GAO

investigation.[2]  In addition, CFPB has brought a large percentage of enforcement

actions targeting practicing lawyers—including in this case—despite a statutory

exemption for lawyers from its authority.[3]

      CFPB is funded outside of the congressional appropriations process and has

the right to claim up to 12% of the Federal Reserve System's funds, 12 U.S.C.

§ 5497(a)(2)(iii), *i.e.*, $597,600,000 in 2013,[4] which is an amount that dwarfs the

---

[1] *See How Will the CFPB Function Under Richard Cordray*, Hearing Before the Subcomm. on TARP, Financial Services, and Bailouts of Public and Private Programs, 112th Cong., No. 112-107, at 69 (2012) (CFPB's Director testifying that the term "abusive" is "a little bit of a puzzle because it is a new term"; CFPB has "been looking at it, trying to understand it, and we have determined that that is going to have to be a fact and circumstances issue; it is not something we are likely to be able to define in the abstract. Probably not useful to try to define a term like that in the abstract; we are going to have to see what kind of situations may arise where that would seem to fit the bill under the prongs.")

[2] Letter from Katherine Siggerud, Managing Director for Congressional Relations, U.S. Government Accountability Office to Senator Mike Crapo (July 12, 2013) (available at http://www.cfpbmonitor.com/files/2013/07/GAOLetter.pdf) (last visited Aug. 5, 2013).

[3] Section 1027(e) of Dodd Frank contains an "exclusion" from the CFPB's power to police unfair, deceptive, or abusive acts or practices ("UDAAP" authority) for attorneys engaged in the practice of law.  12 U.S.C. § 5531(a).

[4] *See* Consumer Financial Protection Bureau, Fiscal Year 2013 Congressional Budget Justification, at 7 (available at http://files.consumerfinance.gov/f/2012/02/budget-justification.pdf).

budget of comparable regulatory agencies.  Congress's appropriation committees
are prohibited from curtailing or even reviewing this funding.  12 U.S.C.
§ 5497(a)(2)(C).

CFPB departs from the bipartisan "commission" structure of other
regulatory agencies (such as the FTC and SEC).  Instead, it has a single Director
who has plenary power to authorize all CFPB actions including the decision to
bring the California enforcement proceeding against Morgan Drexen.  The single
Director serves a 5-year term and is not subject to presidential removal at will.  12
U.S.C. § 5491(b)(2) and (c).  Members of Congress, civic organizations, banks,
states attorney general and others have asserted that CFPB's structure is
unprecedented and departs from constitutional checks, balances, and oversight.
[JA 357-59]  Eleven state attorneys general and others brought a separate case in
this District presenting a constitutional challenge to the structure and powers of
CFPB.  That case was dismissed for lack of standing and is currently on appeal in
this Court.[5]

## III.   Morgan Drexen's Business Supporting Consumer-Advocate Lawyers Practicing Law

Morgan Drexen is a small business, headquartered in Costa Mesa,
California, that provides paraprofessional and support services to consumer-

---

[5] *State Nat'l Bank of Big Spring v. Lew*, No. 1:12-cv-01032-ESH, 2013 WL
3945027 (D. D.C. Aug. 1, 2013).

advocate lawyers who represent at-risk consumers subject to actions and lawsuits by debt collectors.  Morgan Drexen's business is premised on leveling the playing field for consumers who face intimidating debt collection practices.  Consumer-advocate lawyers supported by Morgan Drexen give financially distressed consumers legal representation, a chance to overcome their challenges, and a fair opportunity to respond to threats and lawsuits from debt collection agencies and their lawyers.  [JA 7, 10-11, 66-67, 348-49][6]  CFPB itself has said, repeatedly, that the debt collection industry uses abusive tactics such as threats and intimidation to menace consumers.[7]

## IV.    Kim Pisinski's Role As A Consumer-Advocate Lawyer and Contract With Morgan Drexen for Support Services

Pisinski is a lawyer practicing law in Connecticut. She is among those attorneys who have contracted with Morgan Drexen to provide paraprofessional and support services that facilitate her law practice.  Pisinski depends on Morgan Drexen to provide her clients with high quality yet relatively low cost legal services.  Pisinski remains responsible for the tasks that she delegated to Morgan

---

[6] For background on need for representation for consumers in debt, *see* Derek S. Witte, *The Bear Hug that is Crushing Debt-Burdened Americans: Why Overzealous Regulation of the Debt-Settlement Industry Ultimately Harms the Consumers it Means to Protect*, 14 Tex. Rev. L. & Pol. 277 (2010).

[7] http://www.consumerfinance.gov/newsroom/cfpb-considers-debt-collection-rules/ (emphasis added).

Drexen pursuant to Rule 5.3 of the Connecticut Rules of Professional Conduct.
[JA 8-10, 66-73, 513-515]

Because Morgan Drexen supports lawyers like Pisinski and acts under the supervision of lawyers, Morgan Drexen's activities constitute legal services and have been subject to oversight by the bar associations of several states.  For example, in *Moore v. Struthers*, a Colorado case involving Morgan Drexen—the Denver County District Court held that "because of the nature of the relationship between attorneys and their non-lawyer assistants, where attorneys can be held professionally responsible for their assistants' actions, the Court concludes that regulation of an attorney's non-lawyer assistant has direct implications on the attorney and therefore implicates the separation-of-powers doctrine."  *Moore v. Suthers*, Case No. 11CV7027, at 18 (Colo. Dist. Ct. Denver County, Sept. 12, 2012).  That case involved the Colorado Debt-Management Services Act, which contained a lawyer exemption from the agency's enforcement authority for legal services that is similar to Section 1027(e) of the Dodd-Frank Act.  The court noted that "the services provided by Morgan Drexen were *legal services* under the original [exclusion]."  *Id.* at 9 (emphasis added).  The court held that the Colorado Rules of Professional Conduct "explicitly permit attorneys to contract with nonemployee non-lawyer assistants to assist them in providing legal services and such assistants may act for the lawyer in rendition of the lawyer's professional

services." *Id.* at 9.  The court recognized that Morgan Drexen's services are

provided in an attorney-client relationship, and are provided by an attorney

licensed or otherwise authorized to practice law in Colorado.  *Id.* at 9-10.

Morgan Drexen's business is expressly authorized by the Rules of

Professional Conduct for lawyers, which are administered by the States, not federal

agencies.  CFPB has no authority to change these rules or expose Defendants to

inconsistent obligations. *See* ABA Model Rule of Professional Conduct 5.3

(permitting lawyers to use nonlawyer assistants); and Comment 3 ("A lawyer may

use nonlawyers outside the firm to assist the lawyer in rendering legal services to

the client. Examples include the retention of . . . a paraprofessional service").

The record contains extensive descriptions of Morgan Drexen's support for

lawyers and the fact that the lawyers are in charge and subject to state bar

oversight:

- The lawyers supported by Morgan Drexen form an attorney-client
  relationship with the clients and are "responsible for the legal
  representation" and "for supervising Morgan Drexen."  [JA 120]

- Morgan Drexen personnel perform a myriad of administrative and
  support functions at the instruction of supervising lawyers such as
  Pisinski.  [JA 143-150]

- Lawyers provide legal services such as preparation of bankruptcy filings, representation in credit agency lawsuits, meeting with clients to review and revise legal documents, reviewing and approving offers of settlement.  [JA 318-325]

- The Connecticut State Bar reviewed and approved Pisinski's use of Morgan Drexen to support Pisinski's law practice.  [JA 321]

## V.     CFPB'S Investigation of Morgan Drexen Under Dodd-Frank

In 2012, CFPB commenced an investigation of whether the fees consumers paid to lawyers (who use the support of Morgan Drexen) for legal services were something different, namely, disguised up-front fees for debt settlement services, which would violate the Amended Telemarketing Sales Rule ("TSR"), 16 C.F.R. pt. 310.  In defending the investigation, Morgan Drexen denied that either it or the lawyers it supports did anything that violated the TSR.

On March 13, 2012, CFPB issued a Civil Investigative Demand ("CID") to Morgan Drexen. [JA 505] The CID contained mandatory language stating that Morgan Drexen was "[r]equired" to produce documents and answer interrogatories, and that Morgan Drexen would be subject to "penalty imposed by law for failure to comply."  [*Id.*]  The CID requested information including communications between Morgan Drexen and its supported attorneys like Pisinski concerning the attorneys' clients and their personal financial data.  [JA 506]

- 11 -

Over the course of its investigation, Morgan Drexen produced over seventeen thousand pages of documents to CFPB, and CFPB deposed four of Morgan Drexen's key leaders, including its CEO and the General Counsel. [JA 508] The seemingly never-ending investigation was both burdensome and stigmatizing to Morgan Drexen and Pisinski, and directly intruded upon the practice of law and attorney-client relationship and confidentiality. Efforts were made to cooperate and resolve the matter. Pisinski personally flew to Washington D.C. to meet with CFPB's counsel and explain the legitimacy of the law practice supported by Morgan Drexen, and to ask CFPB to stop intruding upon her client confidences. However, CFPB made clear that it simply wanted to end this model of legal practice. Given this harm, and the belief that CFPB was unconstitutional, Morgan Drexen and Pisinski filed the instant suit on July 22, 2013, seeking injunctive and declaratory relief on the ground that CFPB was improperly exempted from checks, balances, and oversight in violation of the Constitution.

During an initial telephone conference with the district court, CFPB's counsel represented that CFPB had "not yet determined whether or not to file an enforcement action [against the Plaintiffs], and I can't commit to what we will do in that regard . . ." 7/25/13 Tr. 5:10-6:11. The Court commented that it would make an "expedited decision," and therefore it "would be helpful, probably, not to have an enforcement action . . . going on at the same time." *Id*. at 5:20-24. With

the consent of all parties, on July 25, 2013, the Court set a summary judgment briefing schedule for resolution of the case on cross-motions for summary judgment and issued an order that provided for merits briefing to be completed by September 25, 2013.  Docket No. 8.  Plaintiffs had initially sought a temporary restraining order and preliminary injunction, but withdrew their motion at the Court's request and in light of the Court's view that this matter was better resolved on summary judgment pursuant to an expedited briefing schedule.

**VI.    CFPB Brings an Enforcement Action Against Morgan Drexen In California Alleging That It and the Consumer-Advocate Lawyers It Supports (Like Pisinski) Are Perpetrating Fraud on Consumers**

Notwithstanding the July 25, 2013 court hearing where CFPB stated that it had not decided whether to file an enforcement action, less than a month later, on August 20, 2013, CFPB filed suit in the United States District Court for the Central District of California against Morgan Drexen and its Chief Executive Officer. *CFPB v. Morgan Drexen Inc.*, No. 8:13-cv-01267 (filed Aug. 20, 2013) (the "California Lawsuit").  CFPB submitted a copy of its Complaint along with a Notice in the district court below.  [JA 398-420]

Morgan Drexen's and Pisinski's concerns and representations about the CFPB investigation were confirmed by the California Lawsuit and accompanying press release, which made serious allegations that Morgan Drexen—together with the supported lawyers like Pisinski—are engaged in a scam.  CFPB's Complaint

seeks extraordinary relief, *inter alia*, damages, disgorgement of fees paid, and a permanent injunction to end Morgan Drexen's business.

In its California Complaint [JA 398-420], notwithstanding the exemption in the Dodd-Frank Act that prohibits CFPB from regulating attorneys engaged in the practice of law, and its arguments challenging Pisinski's standing below, CFPB ***accuses lawyers*** like Pisinski of participating in a deceptive scheme with Morgan Drexen to pretend to charge consumers for the lawyers' services, when in fact little to no lawyer services are actually provided. CFPB alleges that Morgan Drexen employs "what is known colloquially as the '***Attorney Model***' of debt relief services." Compl. ¶ 8. The Complaint alleges that consumers pay lawyers for legal services but that the lawyers lie, actually do "little to no work," and kick back the legal fee payments to Morgan Drexen. *Id.* The Complaint refers to these lawyers as "***Network Attorneys***." The Complaint also alleges that Morgan Drexen added the use of the so-called "Dual Contract Model" which is "designed to disguise consumers' up-front payments for debt relief services provided by Morgan Drexen as payments for bankruptcy-related work ***purportedly*** performed by Network Attorneys." *Id.* ¶ 14. The Complaint alleges that Morgan Drexen's business is based on a promise that "***Attorneys*** supported by Morgan Drexen will work to reduce your debt." *Id.* ¶ 21. The Complaint alleges that Morgan Drexen uses the promotional slogan "***[p]ut a lawyer on your side***." *Id.* The Complaint

- 14 -

then concludes that this is all a lie because "In numerous instances, Network

Attorneys perform little if any work."  *Id.* ¶43.

CFPB asserts in the California Lawsuit that jurisdiction exists because the

"action is brought by an agency of the United States" with "independent litigating

authority."  Compl. ¶¶ 2, 4.

The same day it filed the California Lawsuit, CFPB issued a press release,

stating among other things that : "CFPB believes the bankruptcy-related contract is

a ***ruse*** designed to disguise the illegal upfront fees the company is charging

consumers for debt-relief services as bankruptcy-related fees."[8]

## SUMMARY OF ARGUMENT

Pisinski, a lawyer with a contractual and ethical duty to supervise legal

support company Morgan Drexen, has standing to challenge a federal agency

investigating her law practice for alleged violations of law.  CFPB's enforcement

Complaint—which CFPB filed with the district court below—confirms what CFPB

told us during the investigation phase [JA 83], *i.e.*, that CFPB accuses Morgan

Drexen-supported ***lawyers*** like Pisinski for charging for legal services that were

not rendered.  According to CFPB, these lawyers are participants in a "***ruse***"

because they allegedly bill for services but actually they "perform little if any

---

[8] http://www.consumerfinance.gov/newsroom/cfpb-files-suit-against-morgan-drexen-inc-for-charging-illegal-fees-and-deceiving-consumers/

work," and the legal fees are "disguised" debt settlement fees.  These serious (and false) allegations threaten Pisinski's business, reputation, and ability to practice law.  CFPB's remedy is (a) a permanent injunction that would forever terminate Pisinski's ability to continue her business with Morgan Drexen; and (b) disgorgement of all fees paid.  As a lawyer, Pisinski has a unique interest to vindicate herself based on her ethical obligations to supervise her support personnel and her right to be free from federal regulation under the Dodd Frank Act exemption for lawyers.

Pisinski's concrete and particularized injuries provide sufficient, and indeed compelling, support for Pisinski's standing to sue.  The district court committed multiple and independent errors including by failing to address or even mention facts in the record supporting standing, siding with CFPB on the merits of Pisinski's defenses, and requiring Pisinski to have actually-suffered—rather than possess imminent and probable—injuries.  The district court committed errors similar to the district courts in recent reversals on standing (*Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011); *Sherley v. Sebelius*, 610 F.3d 69, 71 (D.C. Cir. 2010)).

On the merits, Pisinski adamantly denies CFPB's allegations, Pisinski believes that CFPB's unprecedented and extremely insulated structure blatantly violates the Constitution, and that CFPB has no legal authority to interfere with her

- 16 -

law practice, which is regulated by state bar associations and exempted from CFPB

regulation.  In evaluating standing, the court "*must* assume [Pisinski] ***will prevail***

on the merits."[9] Instead the district court did just the opposite.  The district court

believed that the record did "***not establish*** that CFPB is regulating lawyers," [JA

717], and indeed the District Court assumed that Pisinski was "non-regulated", a

finding impossible to square with CFPB's enforcement Complaint's express

accusation that lawyers participate in a ruse; but in any event, this was an improper

consideration for the district court requiring reversal.  Pisinski need not

conclusively "establish" her case on the merits in order to demonstrate standing to

sue.

The district court should have exercised its equitable powers to reach the

merits of Appellants' constitutional challenge to the structure of CFPB.  Under

*Free Enterprise Fund*, Morgan Drexen and Pisinski have the right to bring a pre-

enforcement facial challenge to test this new agency's extreme and entirely

unprecedented structure.  The case presented a pure issue of law and was filed

when CFPB claims to have not even decided whether it would commence an

enforcement action.

The merits have to be considered in determining whether to exercise

equitable power, and here, the merits are compelling.  CFPB has extraordinary

---

[9] *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011).

powers transferred from 7 agencies to enforce 18 statutes—yet this enormous

power is concentrated in the hands of a single individual, the CFPB Director.

CFPB lacks the traditional features of restraint—no congressional appropriation

oversight, no ability for the President to remove the CFPB Director at will, no

deliberated decisionmaking through a multi-member commission structure (such as

that in place at the only comparable regulatory-enforcement agencies such as FTC

or SEC).  Congress designed CFPB to be novel, swift and powerful, yet

extraordinarily insulated from both political-branch oversight and internal

restraints.  The structure makes CFPB very efficient and potent.  But such

concentrated and unchecked power is a frontal assault on the core architecture of

separate powers, checks and balances, democratic control of government, and the

liberty to American citizens that this architecture was designed to safeguard.

Ultimately CFPB's novel and extreme power has violated Morgan Drexen's and

Pisinski's liberty interests and due process rights as American citizens.  Morgan

Drexen and Pisinski are *both* "entitled" to an equitable determination "sufficient to

ensure that the [rules] to which they are subject will be enforced only by a

constitutional agency."  The "novelty" of CFPB's structure is the "signal" of the

constitutional violation, *Ass'n of Am. Railroads v. U.S. Dept. of Transp.*, 721 F.3d

666, 673 (D.C. Cir. 2013), and the remedy for such a violation lies in the district

court's equitable power.  As the Court held in *Free Enterprise Fund*, it is precisely

the district court's injunctive power that should be exercised in the face of these legitimate claims.  The district court failed to obey the holding in *Free Enterprise Fund* and abdicated is equitable powers and responsibilities.  This Court should reverse the district court, declare CFPB's structure to violate the Constitution, and enjoin CFPB from proceeding against Morgan Drexen and Pisinski.  In the alternative, this Court should remand for the district court to enjoin CFPB from proceeding with its enforcement action until the district court can adjudicate the merits of the constitutional claim.

## **ARGUMENT**

## I.       **The District Court Erred in Holding That Pisinski Lacks Standing**

This Court reviews the district court's ruling that Pisinski lacks standing *de novo*.  *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) (reversing dismissal for lack of standing); *Sherley v. Sebelius*, 610 F.3d 69, 71 (D.C. Cir. 2010) (same); *Muir v. Navy Fed. Credit Union*, 529 F.3d 1100, 1105 (D.C. Cir. 2008) (same); *Information Handling Servs.*, *Inc. v. Defense Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003) (same).

 "[T]he gist of the question of standing" is, "at bottom," whether plaintiffs have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness" that "sharpens" the presentation of issues to the Court. *Baker v. Carr*, 369 U.S. 186, 204 (1962); *Massachusetts v. EPA*, 549 U.S. 497,

517 (2007).  To assure such "adverseness," a plaintiff must demonstrate that "[1] it has suffered a concrete and particularized injury that is either actual or imminent, [2] that the injury is fairly traceable to the defendant, and [3] that it is likely that a favorable decision will redress that injury." *Massachusetts*, 549 U.S. at 517 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Even the "threat of relatively small financial injury [is] sufficient to confer Article III standing."  *Raytheon Co. v. Ashborn Agencies, Ltd.*, 372 F.3d 451, 454 (D.C. Cir. 2004) (describing holding of *Franchise Tax Bd. of Ca. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990)).  For each claim, "if constitutional and prudential standing can be shown for at least one plaintiff, [the court] need not consider the standing of the other plaintiffs to raise the claim."  *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996).

The district court erred in several respects, including that Pisinski lacked standing.

*First*, in concluding that Pisinski's standing is based on "limited allegations," the district court failed to credit, or even mention, substantial evidence in the record in support of standing.  For example, the concern that Pisinski expressed that she was a target of CFPB is confirmed by the California Lawsuit which makes clear that the agency considers lawyers like Pisinski, who Morgan Drexen supports, to be part of an illegal scheme, that they were lying

about proving legal services, and that they kick back money to Morgan Drexen paid as legal fees. [JA 401-420] The record describes the Morgan Drexen business to support lawyers in detail [JA 114-117, 120, 143-48, 318-35], identifies Pisinski as one of those lawyers, with both a contract with Morgan Drexen and a ethics obligation to supervise Morgan Drexen [JA 66-73], identifies Pisinski's concern about her clients' privilege and privacy and refusal to authorize Morgan Drexen's turning over client files [JA 71-72], and identifies the fact that the CFPB came right out and said that the agency believed that the *lawyers*—in addition to Morgan Drexen—were violating the law. [JA 83]

Pisinski and Morgan Drexen made extensive allegations in the Complaint about these matters [JA 8-12] and, given CFPB's election to not file an Answer in the proceeding below, there is no denial of these allegations in the record. Pisinski and Morgan Drexen also interposed formal Statements of Undisputed Facts about Pisinski; CFPB's did not controvert these but instead stated that it "lacks knowledge" about Pisinski and "seeks discovery" about these matters, but never moved for discovery or filed the required Rule 56(f) affidavit. [JA 513-15] Accordingly, pursuant to DC District Court Local Rule 7(h) and related case law, these statements should have been deemed admitted.

Refusing to address the evidence demonstrating Pisinski's standing constitutes reversible error. *See McKinney v. Bd. of Trustees of Maynard*

- 21 -

*Community College*, 955 F.2d 924, 929-30 (4th Cir. 1992) (reversing grant of summary judgment, after "[v]iewing the evidence in its entirety" and finding the district court had "completely ignored" certain evidence); *Huntsman Chem. Corp. v. Holland Plastics Co.*, 208 F.3d 226 (10th Cir. 2000) ("court abused its discretion in refusing to consider" materials in the summary judgment record); *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) (holding that district court abused discretion by failure to consider evidence).

*Second*, the district court applied an impermissible legal test by requiring Pisinski to demonstrate legal injury with virtual certainty.  The district court's conclusion that "Pisinski has provided no evidence that she will not be able to find a substitute for Morgan Drexen's services" imposed a greater burden on Pisinski than she is required to carry:  (a) Pisinski's injury is not limited to replacing Morgan Drexen—her own practice of law is jeopardized if she did not supervise Morgan Drexen properly or if she assisted in the alleged fraud.  (b) Even focusing on the district court's search for evidence of Pisinski's ability to find a new business partner, the inquiry exposes an error of law:  a plaintiff "does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough."  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (internal citation omitted).

(c) In addition to permanently enjoining the business—any presumably any other business like it—CFPB's California lawsuit seeks "excision of reformation of contracts, the refund of monies paid, restitution, and disgorgement."  [JA 420] Some of that money went to Pisinski, and if CFPB's accusations are proven, and if CFPB obtains the relief it has demanded, Pisinski potentially could be liable to return fees that she has received.  In light of these allegations, the district court could not legitimately have found Pisinski's injuries to be purely speculative. *See Nat'l Resources Defense Council v. Environmental Protection Agency*, 464 F.3d 1, 6 (D.C. Cir. 2006) (stating that risk of injury must be "non-trivial" and "sufficient . . .  to take a suit out of the category of the hypothetical."); *see Sherley*, 610 F.3d at 74 ("Although no one can say exactly how likely the Doctors are to lose funding . . . the Doctors face a substantial enough probability to deem the injury to them imminent."); *Dynalantic Corp v. Dep't of Defense*, 115 F.3d 1012, 1016 (D.C. Cir. 1997) (reversing district court dismissal for lack of standing, finding that an allegation that defendant's conduct "causes a not insignificant portion of its potential business opportunities to be foreclosed to it clearly makes out an injury"); *see also Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013) (reversing district court determination that plaintiff lacked standing to sue, stating, "Injury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery.  The fact that a plaintiff may have difficulty proving

damages does not mean that he cannot have been harmed.").  Moreover, Pisinski "need not be omniscient and pinpoint precisely when and where the next infraction will occur." *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 803 (D.C. Cir. 1985).

Here, Pisinski's injury does not depend on any "conjecture" about the CFPB's behavior.  *See Hall v. Norton*, 266 F.3d 969, 976-77 (9th Cir. 2001) (Ninth Circuit reversed and remanded the district court's determination that the plaintiff lacked standing, concluding that the plaintiff's "claim of injury does not 'rely on conjecture about the behavior of other parties'").  It is clear from the California Lawsuit that CFPB seeks to entirely enjoin this business and obtain declaratory and injunctive relief that the entire business model is unlawful plus disgorgement of duns already received.  It cannot be the case that a person lacks standing to challenge an agency that seeks to terminate the person's existing business and claw back the profits (and ensure that the person can never do anything like it again), based on the premise that the person can start over with a different business.  Pisinski's showing of injury is thus "sufficiently real and immediate to support [her] standing."  *Dearth*, 641 F.3d at 503.

***Third***, the district court mischaracterized Pisinski's injury by focusing almost exclusively on the threat that CFPB's pre-lawsuit investigation, including CFPB's CID, posed to the attorney-client privilege that protects Pisinski's

- 24 -

communications with her clients. To be sure, this was a legitimate concern and a critical obligation for Pisinski to take all steps necessary to safeguard client confidences. But the record demonstrates more palpable injury for Pisinski—that CFPB was attempting to destroy her law practice. CFPB's lawsuit raises questions about Pisinski's professional standing, such as whether Pisinski fulfilled her ethical obligations to supervise the individuals and companies that assist her in providing legal services; and whether Pisinski only bills clients for work that has been performed.

The district court appeared to be favorably influenced by CFPB's disingenuous argument that standing based on the CID and investigation was insufficient based on an argument that the 'investigation's now over.' However, CFPB's choice (29 days after the case below was filed) to close its 16-month investigation and launch a federal lawsuit in no way diminishes Pisinski's standing; to the contrary, it confirms, enhances, and validates Pisinski's standing— the imminent injury alleged has now occurred.

Before the standing issue was presented to the district court, CFPB made the unilateral decision to clarify and intensify the harm by filing a lawsuit. CFPB's statements in the California Lawsuit are judicial admissions, and nothing in the record refutes them. The parties and Court did not have to speculate any longer about what CFPB's investigation "might" mean—(*see* Shaheen Decl. reporting on

- 25 -

CFPB's concerns that the "attorneys" are engaged in misconduct [JA 83]), CFPB made its accusations part of the record when it filed the California Lawsuit. Yet, all of this was ignored by the district court. Under the district court's opinion, CFPB could initiate its investigation, bring a lawsuit in another state accusing Pisinski (at minimum, by implication), but prevent her from having her day in court to challenge CFPB's constitutionality.

Ironically, the district court considered the California Lawsuit for a different purpose, to support dismissal and to effectively transferring venue to California as to Morgan Drexen. Yet the district court did not address CFPB's allegations against lawyers. This Court may wish to take judicial notice that Pisinski attempted to intervene in the California Lawsuit and that CFPB opposed intervention—ironically by extensively quoting from the district court's opinion in this case. *See* California Lawsuit (Docket No. 47) at 4-6. The maneuver worked, and the California court denied Pisinski's motion to intervene. Now Pisinski is left without a federal courtroom to raise fundamental and serious constitutional issues in which she has a direct and keen interest. Like the appellants in *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 130 S. Ct. 3138 (2010), Pisinski is entitled threatened with harm and is therefore entitled to test CFPB's constitutionality.

- 26 -

*Fourth*, as a lawyer, Pisinski has a right to be free from interference from CFPB regulation, given the exemption in the Dodd-Frank Act for lawyers practicing law. 12 U.S.C. § 5517(e); *see also Am. Bar Ass'n v. F.T.C.*, 671 F. Supp. 2d 64 (D.D.C. 2009), (invalid attempt by FTC to regulate lawyers) *vacated as moot*, 636 F.3d 641 (D.C. Cir. 2011). *See also Moore v. Suthers*, Case No. 11CV7027, at 18 (Colo. Dist. Ct. Denver Cnty. Sept. 12, 2012) (holding that "because of the nature of the relationship between attorneys and their non-lawyer assistants, where attorneys can be held professionally responsible for their assistants' actions, the Court concludes that regulation of an attorney's non-lawyer assistant [Morgan Drexen] has direct implications on the attorney and therefore implicates the separation-of-powers doctrine.")).[10]

The district court's concern that granting standing to Pisinski would open the floodgates to litigation against agencies "to any contractual counterparty of a regulated entity" disregards the nature of the relationship between lawyer and a paraprofessional under the lawyer's supervision. A lawyer has legal and ethical obligations related to supervision and responsibility for support personnel that extend significantly beyond the contractual relationship. Moreover, the lawyer and her paralegal engaged in the enterprise of law are inseparable—the lawyer

---

[10] The court may take judicial notice of this decision, and a copy is available at California Lawsuit (Docket No. 27-2) (Exhibit 5 to Shaheen Declaration) 69-106.

ultimately is directing the practice and is responsible for the support personnel. *See* ABA Model Rules Prof. Conduct 5.3; 5.7.

An analogy based on a hypothetical illustrates the point: a new and potentially unconstitutional "Judicial Investigation Panel" brings an enforcement action alleging that a court's law clerk acted improperly; the "Panel" targets only the clerk, and forbids the supervising judge from challenging the Panel's constitutionality, authority, or assessment. Should the supervising judge have standing?

*Fifth*, the court impermissibly evaluated standing based on its views of CFPB's theory of the case on the merits. The question is not whether Pisinski's claims on the merits are correct but whether she faces sufficiently imminent and concrete risk. In the most notable example, the district court sided with CFPB on the merits by finding that CFPB was not really regulating Pisinski. [JA 717 n.8; JA 718] This finding is difficult to square with the California Complaint, but it does not matter—the district court should not be making such findings against Pisinski in the context of a standing to sue determination. "In reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *Muir v. Navy Federal Credit Union*, 529 F.3d 1100, 1105 (D.C. Cir. 2008); *see also LaRoque v. Holder*, 650

F.3d 777, 785 (D.C. Cir. 2011) ("And in assessing plaintiff's standing, we must assume they will prevail on the merits of their constitutional claims.").

For these reasons, Pisinski has standing to sue, and the district court's decision should be reversed. *See Dynalantic Corp*, 115 F.3d at 1016 (reversing district court dismissal for lack of standing); *Dearth*, 641 F.3d at 501 (same); *Sherley*, 610 F.3d at 71 (same); *Muir*, 529 F.3d at 1105 (same); *Information Handling Servs.*, *Inc.*, 338 F.3d at 1029-31 (same); *Int'l Union of Bricklayers & Allied Craftsmen*, 761 F.2d at 803 (same); *see also*, *e.g.*, *Abbott*, 725 F.3d at 808 (same); *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1022-27 (8th Cir. 2012) (same).

## II.    The District Court Failed to Consider the Strength of Morgan Drexen's Showing That CFPB's Structure is Unconstitutional

In evaluating whether to exercise its injunctive and declaratory powers, the district court should have considered the strength of Morgan Drexen's showing on the merits of its constitutional challenge. That challenge raises a pure issue of law and presents a unique kind of irreparable harm—if Morgan Drexen and Pisinski's contentions are correct, then they are harmed by an entity whose very existence violates the Constitution. A review of the constitutional defects flowing from CFPB's extraordinary power yet absence of checks, balances, and oversight, demonstrates that the district court should have reviewed the merits of plaintiffs'

facial constitutional challenge and granted injunctive and declaratory relief before the enforcement lawsuit continued.

The district court declined to order injunctive relief because of its assumption that Morgan Drexen and Pisinski could not show irreparable harm. However, this case presents a threshold constitutional challenge to the authority of a newly-created federal agency with a novel structure whose constitutionality has not previously been the subject of a judicial decision on its merits.  In *Free Enterprise Fund*, 130 S. Ct. 3138 (2010), where the Court held a new federal agency's structure unconstitutional, the target of an enforcement proceeding sought "an injunction preventing the Board from exercising its powers."  *Id*. at 3149.  The Court rejected the government's argument that injunctive relief was not appropriate.  The Court noted that **"equitable relief** 'has long been recognized as the proper means for preventing entities from acting unconstitutionally'"  *Id*. at 3151 n.2 (emphasis added) (*quoting Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).  "[I]t is established practice for this Court to sustain the jurisdiction of federal courts **to issue injunctions** to protect rights safeguarded by the Constitution."  *Id*. at 3151 n.2 (emphasis added) (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)); *cf. id.* at 3181 (Breyer, J., dissenting) (citing cases "**affirming grant of preliminary injunction** to cure, inter alia, a separation-of powers violation") (emphasis added).

- 30 -

In such circumstances, the constitutionality of a new and novel agency is "collateral" to the merits of a matter because the challenging parties "objected to the Board's existence." *Id*. at 3150. The Court therefore held that the petitioners were "entitled" to a judicial determination "sufficient to ensure that the [rules] to which they are subject will be enforced only by a constitutional agency." *Id*. at 3164. Upon exercising judicial review, the Court held that the challenges were correct—PCAOB was found to be unconstitutional.

### A.    Judicial Criteria

A constitutional challenge to agency structure should be informed by the overall context and comparison of the scope of agency power to accompanying structural protections (checks, balances, and oversight). Congress's power to create federal agencies is not mentioned in the Constitution, but is discussed in Supreme Court cases, which establish principles that could have guided the district court's analysis:

1.    Federal courts have the authority to review, and if necessary declare unconstitutional, an agency's structure.[11]

2.    "[S]tructural protections against abuse of power [are] critical to preserving liberty."[12]

---

[11] *Free Enter. Fund v. Pub. Co. Acct'ing Oversight Bd.*, 130 S. Ct. 3138, 3160 (2010).

3.      Federal agencies must be subject to constitutional "checks and balances."[13]

4.      The extent of the required checks and balances depends on the scope of the agency's powers and duties.[14]

5.      History and "traditional ways of conducting government give meaning to the Constitution."[15]

6.      "[J]ust because two structural features raise no constitutional concerns independently does not mean Congress may combine them in a single statute."[16]

---

[12] *Bowsher v. Synar*, 478 U.S. 714, 730 (1986).

[13] *Ralpho v. Bell*, 569 F.2d 607, 620 (D.C. Cir. 1977) (holding that it is "daring to suggest that Congress, though subject to the checks and balances of the Constitution, may create a subordinate body free from those constraints"); *compare Fed. Mar. Comm'n v. S. C. State Ports Auth.*, 535 U.S. 743, 773 (2002) (Breyer, J., dissenting) (observing that the Court permitted Congress to delegate rulemaking and adjudicative powers to agencies in part "because the Court established certain safeguards surrounding the exercise of these powers").

[14] *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 475 (2001) ("[T]he degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred."); *Morrison v. Olson*, 487 U.S. 654, 671-73, 695-97 (1988)  (less protection is necessary where the agency has a targeted and narrow scope of delegated power exercised by inferior officers).

[15] *Bauer v. Marmara*, 2013 WL 1684051, at *9 (D.D.C. Apr. 18, 2013).

[16] *Ass'n of Am. Railroads v. U.S. Dept. of Transp.*, 721 F.3d 666, 673 (D.C. Cir. 2013).

7.    An agency's "novelty may . . . signal unconstitutionality."[17]

8.    "The accumulation of all powers legislative, executive and judiciary in the same hands . . . may justly be pronounced the very definition of tyranny" which threatens basic liberty interests and due process rights.[18]

Application of these immutable principles demonstrates the strength of Appellants' claim on the merits and reveals independent constitutional violations.

### B.    Constitutional Violation #1:  Too Much Unchecked Agency Power

The first problem is that the CFPB has too much power for a federal agency, without meaningful control by any of the institutions of government except federal courts.  Congress's power to delegate government authority to federal agencies is not mentioned in the Constitution but instead has been subject to judicial review and approval on a case-by-case basis by the Supreme Court in cases that have emphasized constitutional restraints.  The power Congress may grant to administrative agencies is certainly not absolute.  Recent cases in this Court and in the Supreme Court have suggested that heightened scrutiny is needed when

---

[17] *Id.* at 673.

[18] *Hamdan v. Rumsfeld*, 548 U.S. 557, 602 (2006) (quoting The Federalist No. 47, p. 324 (J. Cooke ed. 1961) (J. Madison)).

Congress undertakes novel and unprecedented delegations of power.[19]  *See Free*

*Enterprise Fund*; *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 721 F.3d 666,

673 (D.C. Cir. 2013); *see also Bowsher v. Synar*, 478 U.S. 714, 717-723 (1986);

*Buckley v. Valeo*, 424 U.S. 1, 126 (1976).

  At a fundamental level, CFPB's structure and power are unprecedented, and

CFPB can point to no other comparable agency or Supreme Court decision that can

justify its exercise of unchecked power of extraordinary breadth.  "Perhaps the

most telling indication of [a] severe constitutional problem . . . is the lack of

historical precedent." *Free Enter. Fund*, 130 S. Ct. at 3159 (internal quotation

marks omitted).  In the 2013 *City of Arlington* decision, Chief Justice Roberts—

writing for himself and Justices Kennedy and Alito—noted that the "danger posed

by the growing power of the administrative state cannot be dismissed." *City of*

*Arlington*, *Tex. v. FCC*, 133 S. Ct. 1863, 1879 (2013) (Roberts, J., dissenting).

Justice Roberts urged courts to ask "whether the authority of administrative

agencies should be augmented even further" in light of the increasing concerns

about an ever expanding fourth branch of government.  *Id*.  In creating CFPB,

---

[19] *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 721 F.3d 666, 673 (D.C. Cir.
2013) ("novelty. . . signal[s] unconstitutionality"); *City of Arlington*, *Tex. v. FCC*,
133 S. Ct. 1863, 1879 (2013) (Roberts, J., dissenting) (noting the danger posed by
the growing power of the administrative state cannot be dismissed").

Congress amended the new agency with unchecked power beyond that previously granted to any administrative agency and without constitutional precedent.

### C. Constitutional Violation #2:  In the Aggregate, CFPB's Lack of Structural Checks, Balances, and Oversight is Unconstitutional

CFPB was designed with elements of "insulation" which—when evaluated one by one—may be justifiable in certain circumstances, but whose accumulated effects create a constitutional violation in these unique circumstances.  CFPB's Director does not serve at the pleasure of the President; he has half a billion dollars to spend annually without being subject to Congress's appropriations power; and he does not have to build consensus for decisions through a multimember structure. Beyond this, judicial review has been curtailed—federal courts are now prohibited from siding with another agency when there is overlapping jurisdiction (as there is in CFPB's enforcement action—CFPB and FTC share enforcement power regarding the TSR); CFPB commences enforcement actions at will—without the restraining effect of Department of Justice involvement —because CFPB has "independent litigating authority" (Cal. Compl. ¶ 4); CFPB is immune from "government shutdown" in the event of a general lapse of appropriations; and CFPB is immune from pre-promulgation review of its rules by the President through OMB's Office of Information and Regulatory Affairs, which is the mechanism through which the President normally monitors agency regulatory actions and polices intra-agency disputes.

Where, as here, the power of CFPB overlaps substantially with those of many other agencies, the Court must evaluate these features—not in isolation—but in terms of accumulated impact. "[J]ust because two structural features raise no constitutional concerns independently does not mean Congress may combine them in a single statute." *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 721 F.3d 666, 673 (D.C. Cir. 2013). Here, CFPB is unprecedented given the combination of its features of insulation and autonomy, which sweep well beyond those granted to the so-called "independent" regulatory agencies such as the SEC and FTC. There is simply no historical precedent that can justify CFPB's combined lack of structural safeguards. CFPB's "novelty. . . signal[s] unconstitutionality." *Id.*

### D.  Constitutional Violation #3:  Insufficient Balance Between the Agency's Scope of Power and Checks, Balance and Oversight

The CFPB's lack of structural protections is unconstitutionally out of sync with the extraordinary scope of its power. The more power an agency possesses, the greater need for protective checks, balances and oversight. *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 475 (2001) ("[T]he degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred."); *Morrison v. Olson*, 487 U.S. 654, 671-73, 695-97 (1988) (finding less protection is necessary when the agency in question had a targeted and narrow scope of delegated power exercised by inferior officers).

Under this principle, the Court should conduct a two-part inquiry to: (1) evaluate the overall scope of delegated power and degree of agency discretion; and (2) assess the sufficiency of the overall combined structural protections of accountability and checks and balances in light of the scope of delegated power and degree of agency discretion.  The more unfettered the powers exercised or delegated, the greater is the need for internal as well as external checks and restraints on power to prevent its abuse.

In step 1, CFPB has great power and great discretion. CFPB was created to exercise the authority of seven separate agencies and assume market-wide coverage. With respect to virtually every boardroom and living room, CFPB exercises rulemaking, adjudicatory, and enforcement powers; it conducts investigations, issues subpoenas and civil investigative demands for the attendance and testimony of witnesses and production of documents and materials, and commences administrative and judicial proceedings.  It can take actions, including direct enforcement action, to prevent "unfair," "deceptive," or "abusive act[s] or practice[s]" ("UDAAP" authority) where the term "abusive" is undefined and open-ended, and even according to CFPB's Director, "a little bit of a puzzle." CFPB also conducts data collection activities which raise serious and constitutional concerns regarding privacy.

- 37 -

In step 2, however, instead of providing *additional* protections in light of the broad delegation, Congress created unprecedented *insulation*. Concentration of power in a single Director, free from congressional appropriations oversight, who does not serve at the pleasure of the President, and whose agency is subject to curtailed judicial review—all of these structural features create extreme isolation from the political process and checks and balances. CFPB's lack of structural protection cannot be reconciled with its broad delegation of power.

### E.     Constitutional Violation #4:  Encroachment on Presidential Power to Supervise Executive Branch

The Dodd-Frank Act prevents the President from removing the Director at will, and thereby subverts the President's ability to ensure that the laws are faithfully executed. This provision violates *Myers v. United States*, 272 U.S. 52 (1926) (invalidating a limitation on the President's power to remove a postmaster from office on the grounds that the statute invaded the Constitution's vesting of executive power to the President). The Supreme Court in *Free Enterprise Fund* cited *Myers* as controlling authority for the general rule that presidents may dismiss agency officials "at will." The Court noted that the power could be restricted "under certain circumstances," *Free Enter. Fund*, 130 S. Ct. at 3146 (citing to the multimember commission (FTC)—the so-called "body of experts" in *Humphrey's Executor v. United States*, 295 U.S. 602, 624 (1935)). Here, there is

no "body of experts" or other circumstance to justify departing from *Myers*, when so much authority is concentrated in the hands of one officer.

### F.    Constitutional Violation #5:  Encroachment on Judicial Power By Prescribing Improper Rule of Decision

Dodd-Frank prescribes an improper rule of decision that declares CFPB the winner in any inter-branch dispute.[20]  This provision grants a special exemption, in the specific case of CFPB, from the ordinary rule that there is no *Chevron* deference to the views of any one agency when more than one agency administers a statute.  *See Proffitt v. FDIC*, 200 F.3d 855, 860 (D.C. Cir. 2000) (collecting). By doing so, Congress "inadvertently pass[e]s the limit which separates the legislative from the judicial power."  *United States v. Klein*, 80 U.S. 128, 146-47 (1871) (holding that Congress may not dictate a "rule of decision" to the judicial branch).

### G.    Constitutional Violation #6:  Abdicating Congress's Most Important Power—the Power of the Purse

By cutting off congressional appropriations oversight of its use of its financial resources, Dodd-Frank removed the most important check on potential abuses of power by CFPB.  Article I, Section 9 provides, in part: "No Money shall

---

[20] 12 U.S.C. § 5512(b)(4)(B) requires courts to grant the same deference to CFPB's interpretation of federal consumer financial laws that they would "if [CFPB] were the only agency authorized to apply, enforce, interpret, or administer the provisions of such Federal consumer financial law."

be drawn from the Treasury, but in Consequence of Appropriations made by Law."
The Dodd-Frank Act exempts CFPB from the congressional appropriations power
because the Act authorizes the Director to unilaterally requisition half a billion
dollars (12% of the Fed's budget), without congressional approval.  Not only may
CFPB spend this enormous amount without Congress's authorization, Congress is
actually prohibited from reviewing CFPB's use of these funds.

The Dodd-Frank Act states "the funds derived from the Federal Reserve
System pursuant to this subsection shall not be subject to review by the
Committees on Appropriations of the House of Representatives and the Senate."
12 U.S.C. § 5497(a)(2)(C).  Thus, Congress's "ultimate weapon of enforcement"—
the power of the purse—from their experience the drafters of the Constitution
knew was the most important tool against abuse by executive agencies—has been
disabled.[21]  "This power over the purse may, in fact, be regarded as the most
complete and effectual weapon with which any constitution can arm the immediate
representatives of the people, for obtaining a redress of every grievance, and for
carrying into effect every just and salutary measure."  The Federalist No. 51, at 320
(James Madison) (Clinton Rossiter ed., 1961) (quoted in *U.S. Dep't of Navy v. Fed.
Labor Relations Auth.*, 665 F.3d 1339, 1346-47 (D.C. Cir. 2007)); *Laird v. Tatum*,

---

[21] The appropriations process also implicates the President's authority because the
President has the right to veto any appropriations bill.

408 U.S. 1, 15 (1972) (describing Congress's power of the purse as particularly

well suited to monitor the "wisdom and soundness of Executive action"); Kate

Stith, *Congress' Power of the Purse*, 97 YALE L.J. 1343, 1356 (1988)

("[A]ppropriations do not merely set aside particular amounts of money; they

define the character, extent, and scope of authorized activities."); 3 The Founders'

Constitution 377 (Philip B. Kurland & Ralph Lerner eds., 1987) (debate of Mar. 1,

1793) (reporting comment made by James Madison shortly after ratification of the

Constitution that "appropriations of money [are] of a high and sacred character;

[they are] the great bulwark which our Constitution [has] carefully and jealously

established against Executive usurpations").

CFPB can identify no other agency head like its Director, who is responsible

for regulating private sector activity and who has sole power to determine whether

and how to spend half a billion dollars outside of the appropriations process.

## H.    Constitutional Violation #7:  Insufficient Democratic Control of Government

Governmental power cannot be exercised by unelected bureaucrats who are

not closely supervised and disciplined by direct representatives of the people.  For

example, in *Freytag v. Comm'r*, 501 U.S. 868, 884 (1991), the Court held that

political accountability enables the public to monitor and check through the ballot

box government actions to "ensure that those who wield[]" power are "accountable

to political force and the will of the people."  Also in *Edmond v. United States*, 520

U.S. 651, 663 (1997), the Court held that the Constitution underscores the importance of preserving "political accountability relative to important [g]overnment assignments."  To pass constitutional muster and maintain democratic accountability, CFPB must be subject to political oversight.

However, the Dodd-Frank Act stripped away core powers necessary to ensure CFPB's responsiveness to the electorate:  the President's removal power and Congress's power of the purse.  In other cases, courts have grappled with which political institution—Congress or the President—had the power to oversee an agency, a classic separation of powers dispute between two branches.  Here, however, by disabling removal and insulating CFPB from the appropriations process, Congress has eviscerated CFPB's political accountability to both itself and the President, and left the electorate unprotected.

## I.     Constitutional Violation #8:  Refusing to Follow the Constitutional Tradition of Multimember Commission for a Regulatory-Enforcement Agency

In creating the CFPB, Congress departed from well-established practice, that regulatory-enforcement agencies (such as SEC, FTC, CSPC, PCAOB, to name a few) are set up as multimember commissions.  "[T]raditional ways of conducting government give meaning to the Constitution."  *Bauer v. Marmara*, 942 F. Supp. 2d 31, 36 (D. D.C. 2013), 488 U.S. 361, 401 (1988)).  "Long settled and established practice is a consideration of ***great weight*** in a proper interpretation of

constitutional provisions" relating to the separation of powers.  *The Pocket Veto Case*, 279 U.S. 655, 689 (1929) (emphasis added).

The multimember commission structure functions as an internal check and restraint on the exercise of government power, and ensures compliance with the constitutionally-required principles to avoid concentrating government power in the hands of a single person[22] such as the CFPB Director.  Multimember decision-making guards against the prospect that a single individual is or will become biased, blinded, or captured.[23]  On September 12, 2013, the Chairman of the House Financial Services Committee stated:  "CFPB is uniquely unaccountable even to itself since there is fundamentally no 'it,' no 'they' only a 'he.' There is no commission, only one omnipotent director fundamentally accountable to no one."[24] The 11th hour decision to drop the "commission" structure from the House-enacted

---

[22]  *Hamdan v. Rumsfeld*, 548 U.S. 557, 602 (2006) (quoting The Federalist No. 47, p. 324 (J. Cooke ed. 1961) (J. Madison)).

[23] Todd Zywicki, *The Consumer Financial Protection Bureau: Savior or Menace?*, 81 GEO. WASH. L. REV. 856, 897-98 (2013).

[24] http://financialservices.house.gov/news/documentsingle.aspx? DocumentID=362307.

version of the CFPB is an independent constitutional violation under these circumstances.[25]

The Supreme Court has often cited Madison's formulation that "The accumulation of all powers legislative, executive and judiciary in the same hands . . . may justly be pronounced the very definition of tyranny." *Hamdan v. Rumsfeld*, 548 U.S. 557, 602 (2006) (quoting The Federalist No. 47, p. 324 (J. Cooke ed. 1961) (J. Madison)). The accumulation of CFPB's enormous power in the hands of a single individual (the Director) cannot be reconciled with this constitutional requirement. In fact, it so significantly departs from this requirement that the exercise of enforcement authority by the individual rises to the level of a deprivation of liberty interests and due process rights. There is no restraint on the Director's ability to become an oppressor. *See Clinton v. City of New York*, 524 U.S. 417, 450 (1998) (Kennedy, J., concurring) (describing that the dangers posed by the concentration of powers "to ***secure liberty*** in the fundamental political sense

---

[25] The administration proposed the CFPB as a multimember agency whose decisions would have the benefit of the "diverse" views of a "Board." The Administration's White Paper stated: "The CFPA will have a Director and a Board. The Board should represent a ***diverse set of viewpoints and experiences***." U.S. Department of the Treasury, Financial Regulatory Reform: A New Foundation (2009) at 58 (emphasis added). *Available at* http://online.wsj.com/public/resources/documents/finregfinal06172009.pdf. *Compare Humphrey's Executor v. United States*, 295 U.S. 602, 624 (1935) (emphasizing that FTC commissioners—as a multimember body—are "called upon to exercise the trained judgment of a body of experts 'appointed by law and informed by experience'").

of the term, quite in addition to the idea of freedom from intrusive governmental acts") (emphasis added).  In other words, concentration threatens liberty and due process in violation of the Fifth and Fourteenth Amendments and also in the very structure of the Constitution.

## III.    Pre-Enforcement Review Was Appropriate

In light of the novelty of CFPB's structure and its deviation from the Constitutional requirement of checks, balances, and oversight, the district court should have exercised its authority to review plaintiffs' claims and should have issued declaratory and injunctive relief.  The lawsuit is a facial challenge on a matter of public importance, *Hanes Corp. v. Millard*, 531 F.2d 585, 592 n.4 (D.C. Cir. 1976), and was commenced before CFPB, by its own admission, had even determined whether it would bring an enforcement action.  The district court can and should undertake pre-enforcement review of a facial challenge to a statute based on constitutional claims.  *See*, *e.g.*, *Gen. Elec. Co. v. E.P.A.*, 360 F.3d 188, 190-94 (D.C. Cir. 2004).  As a matter of judicial authority, plaintiffs did not have to, and should not have been required to wait until CFPB actually decided whether to sue them before bringing this free threshold challenge to the constitutionality of CFPB.  *See*, *e.g.*, *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 581 (1985), or be "strong-armed" by CFPB into regulatory compliance.  *Sackett v. EPA*, 132 S. Ct. 1367, 1374 (2012).  The case raised a pure legal question that "is

presumptively fit for judicial review," *Time Warner Entm't Co. v. FCC*, 93 F.3d 957, 965, 974 (D.C. Cir. 1996).

The district court's reliance on *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987), is misplaced. *Deaver* stands for the limited proposition that civil proceedings are appropriately stayed pending collateral ***criminal*** proceedings. *Id.* at 71 ("Prospective defendants cannot, by bringing ancillary equitable proceedings, circumvent federal ***criminal*** procedure") (emphasis added). Further demonstrating that the rationale of *Deaver* is limited to criminal cases, this court held that: "all citizens must submit to a criminal prosecution brought in good faith so that larger societal interests may be preserved." *Id.* at 69 (citations omitted). "'Bearing the discomfiture and cost of prosecution for crime even by an innocent person is one of the painful obligations of citizenship.'" *Id.* (quoting *Cobbledick v. United States*, 309 U.S. 323, 325 (1940)). Permitting civil suits in the context of criminal proceedings would further permit "much more extensive discovery" that Congress "hardly intended to permit criminal defendants." *Rankins v. Winzeler*, No. 02-cv-50507, 2003 WL 21058536, at *6 (N.D. Ill. May 9, 2003) (citing *Deaver*, 822 F.2d at 68-71).

The rationale of *Deaver* does not extend to a free-standing threshold constitutional challenge to the structure of the enforcement agency in civil enforcement proceedings because there are no countervailing concerns about

circumventing criminal procedure. "It is well-established that a district court has

discretionary authority to stay a civil proceeding pending the outcome of a parallel

*criminal* case when the interests of justice so require . . . . Courts are afforded this

discretion because the denial of a stay could impair a party's Fifth Amendment

privilege against self-incrimination, extend [the government's] criminal discovery

beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the

defense's theory to the prosecution in advance of trial, or otherwise prejudice the

criminal case." *Estate of Gaither ex rel. Gaither v. District of Columbia*, No. 03-

cv-1458, 2005 WL 3272130, at *3 (D.D.C. Dec. 2, 2005) (citations omitted and

emphasis added)

 *Deaver*, thus is inapplicable on its own terms because this is a civil case, not

a criminal case.  In any event, no discovery is necessary because this is a facial

constitutional challenge.  Thus, there is no danger that this lawsuit will impair

Plaintiffs' Fifth Amendment rights or provide for criminal discovery beyond the

limits of the Federal Rules of Criminal Procedure.

## IV. The District Court Erred By Not Enjoining the Second-Filed California Action

 When reviewing a denial of a preliminary injunction, the Court ultimately

reviews the denial for abuse of discretion, but any legal conclusions are considered

*de novo*.  *Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011).  It is well-

established that a federal court has ample authority to enjoin a party from

proceeding with a later-filed action in another federal court that has an overlapping legal issue. *See Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975). "In determining whether prosecution of a suit in another forum should be preliminarily enjoined pending disposition of the action in which the motion is filed, [the preliminary injunction factors] are of secondary significance." *Id.* at 622 n.3.1. "The primary factor to be weighed is the convenience of the parties and the courts." *Id. Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980). For example, in *Columbia Plaza*, this Court ordered the district court to enjoin the defendant from prosecuting in a separate case what would have been a counterclaim in the first-filed action. *Columbia Plaza*, 525 F.2d at 627. This Court noted that the "problem of whether to enjoin another action involving the same parties and issues . . . requires a balancing not of empty priorities but of equitable considerations genuinely relevant to the ends of justice." *Id.* at 628.

Here, the district court erred in refusing to issue the preliminary injunction because the *Columbia Plaza* factors overwhelmingly supported the requested relief. First, there was no "race" to the courthouse as proven by CFPB's on-the-record representation that CFPB had not even decided whether to file a lawsuit at the time of the initial status conference (CFPB did not file the California Lawsuit until almost a month later). Second, the California Lawsuit was guaranteed to

result in duplicative and potentially inconsistent decisions (indeed, this is already happening with proceedings now pending on both coasts). Third, every California hearing is preceded by the wasteful and burdensome spectacle of all counsel in the case—including multiple government counsel from CFPB—boarding transcontinental flights and checking into California hotels. Fourth, the D.C. Circuit is the appropriate forum to hear this case, due to its expertise in constitutional and administrative law and the pendency of the only other case in the country presenting a foundational challenge to CFPB.

These factors were briefed in a motion for a preliminary injunction below, but the district court did not address them. For these reasons, the Court should order that the second-filed action should be enjoined.

## CONCLUSION

For the foregoing reasons, the district court's denial of injunctive and declaratory relief should be reversed, and this Court should declare the CFPB to be unconstitutional. In the alternative, this Court should remand with instructions to enjoin CFPB from any further prosecution of its enforcement action pending the district court's adjudication on the merits of the constitutional challenge mounted by Morgan Drexen and Kim Pisinski.

- 49 -

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Federal Rule of Appellate Procedure 34(a)(1), undersigned

counsel respectfully requests oral argument in this appeal.

VENABLE LLP

/s/ Randall K. Miller
Randall K. Miller
Nicholas M. DePalma
Randal M. Shaheen
8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA  22182
Main:  703.760-1600

March 17, 2014

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*10,991*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>March 17, 2014</u>        <u>/s/ Randall K. Miller    </u>
                                            *Counsel for Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 17th day of March, 2014, I caused this Brief of

Appellants to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

> John R. Coleman
> David M. Gossett
> CONSUMER FINANCIAL PROTECTION BUREAU
> 1700 G Street, NW
> Washington, DC  20552
> (202) 435-7254
> john.coleman@cfpb.com
> david.gossett@cfpb.com
>
> *Counsel for Appellee*

I further certify that I caused the required copies of the Brief of Appellants

to be hand filed with the Clerk of the Court.

/s/ Randall K. Miller

*Counsel for Appellants*
