[ORAL ARGUMENT NOT SCHEDULED]
No. 13-5342

IN THE UNITED STATES COURT OF APPEALS FOR THE
DISTRICT OF COLUMBIA CIRCUIT

MORGAN DREXEN, INC,; KIMBERLY A. PISINSKI,

Plaintiffs-Appellants,

v.

CONSUMER FINANCIAL PROTECTION BUREAU,

Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF FOR APPELLEE

Meredith Fuchs
  *General Counsel*
To-Quyen Truong
  *Deputy General Counsel*
John R. Coleman
  *Senior Litigation Counsel*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
(202) 435-7254
john.coleman@cfpb.gov

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

The appellants in this Court, who were plaintiffs in the district court, are Morgan Drexen, Inc. and Kimberly A. Pisinski.

The appellee in this Court, who was defendant in the district court, is the Consumer Financial Protection Bureau.

There were no amici in the district court.

### B.    Rulings Under Review

The ruling under review is the Memorandum Opinion and accompanying Order issued on October 17, 2013 by Judge Colleen Kollar-Kotelly, docket numbers 23 and 24.  [JA 690-720].  The opinion is not yet published.

### C.    Related Cases

This matter has not previously been before this Court or any other court.  A related case pending in the United States District Court for the Central District of California is captioned *Consumer Financial Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal.).  The defendants in that matter unsuccessfully

attempted to appeal an interlocutory ruling of the district judge to the United States Court of Appeals for the Ninth Circuit.  *See Consumer Financial Protection Bureau v. Morgan Drexen, Inc.*, 14-55333 (9th Cir.).

In *State National Bank of Big Spring v. Lew*, Nos. 13-5247, 13-5248 (D.C. Cir.), different private plaintiffs are appealing a district court's dismissal, without reaching the merits, of a complaint challenging the constitutionality of the Consumer Financial Protection Bureau.  *See State Nat'l Bank of Big Spring v. Lew*, 958 F. Supp. 2d 127 (D.D.C. 2013).

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.........................................................................i

TABLE OF AUTHORITIES .................................................................iii

GLOSSARY .........................................................................................xi

INTRODUCTION .................................................................................1

JURISDICTIONAL STATEMENT ........................................................3

STATEMENT OF THE ISSUES ............................................................3

PERTINENT STATUTES AND REGULATIONS...................................4

STATEMENT OF THE CASE................................................................5

    A.  The Consumer Financial Protection Bureau......................................5

        1.  The Bureau's Structure and Funding ...........................................5

        2.  The Bureau's Authority................................................................6

    B.  Facts and Prior Proceedings ............................................................9

        1.  The Bureau's Investigation of Morgan Drexen ...........................9

        2.  Proceedings in the District Court Below.....................................9

        3.  Subsequent Proceedings in the California District Court ...........15

SUMMARY OF ARGUMENT...............................................................16

STANDARD OF REVIEW ...................................................................18

ARGUMENT........................................................................................19

I.    The Court should dismiss this appeal on grounds of prudential mootness because the declaratory and injunctive relief sought by Plaintiffs could not relieve their alleged injury .......................................................................19

II.   The district court did not abuse its discretion by refusing to grant Morgan Drexen's request for declaratory and injunctive relief .................................23

   A.   The district court did not abuse its discretion when it found that Morgan Drexen would not suffer irreparable harm in the absence of an injunction ...................................................................................................23

   B.   The district court did not abuse its discretion by withholding declaratory relief.........................................................................................................27

III.  The district court properly held that Pisinski lacks standing........................32

IV.   If the Court finds that the district court committed reversible error, it should remand to the district court ..........................................................................45

V.    In Any Event, the Bureau's Structure is Constitutional ...............................47

   A.   Congress Has Not Unconstitutionally Abdicated Its Authority................48

   B.   Congress Has Not Encroached Upon the Authority of the President........50

   C.   Congress Has Not Encroached on the Judicial Power ..............................52

   D.   Plaintiffs' Policy Arguments Should be Directed to the Political Branches ..................................................................................................54

CONCLUSION....................................................................................................55

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**                                                              **Page**

*14 Penn. Plaza LLC v. Pyett*, 556 U.S. 247 (2009) .................................................55

*Abbott v. Lockhead Martin Corp.*, 725 F.3d 803 (7th Cir. 2013)...........................41

*AINS, Inc. v. United States*, 56 Fed. Cl. 522 (Fed. Cl. 2003) ........................... 49, 50

*Am. Fed'n of Gov't Employees, AFL-CIO v. Fed. Labor Relations Auth.*, 388 F.3d 405 (3d Cir. 2004) .................................................................................................50

*Americans for Safe Access v. Drug Enforcement Agency*, 706 F.3d 438 (D.C. Cir. 2013)......................................................................................................................40

*Ashwander v. TVA*, 297 U.S. 288 (1936)................................................................45

*\*Chamber of Commerce v. E.P.A.*, 642 F.3d 192 (D.C. Cir. 2011) .... 33, 34, 35, 36, 38, 40

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006) .25

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)......53

*CIBA Corp. v. Weinberger*, 412 U.S. 640 (1973) ...................................................21

*Cincinnati Soap Co. v. United States*, 301 U.S. 308 (1937)............................. 49, 50

*\*Clapper v. Amnesty Int'l U.S.A.*, —U.S.—, 133 S. Ct. 1138 (2013)........ 32, 33, 38

*Clark v. Memolo*, 174 F.2d 978 (D.C. Cir. 1949)...................................................21

*Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620 (D.C. Cir. 1975)............31

*Authories chiefly relied upon are marked with asterisks.

iii

*Consumer Financial Protection Bureau v. Morgan Drexen, Inc.*, 14-55333 (9th Cir. April 11, 2014) ............................................................................15

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466 (D.C. Cir. 2009) ...................................................................................... 36, 38

*Cuomo v. The Clearing House Ass'n, LLC*, 557 U.S. 519 (2009)...........................7

*Dearth v. Holder*, 641 F.3d 499 (D.C. Cir. 2011) ........................................... 32, 34

*\*Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987) ................................... 11, 12, 26

*Deutsche Bank Nat'l Trust Co. v. FDIC*, —F.3d—, 2014 WL 931238 (9th Cir. Mar. 11, 2014) ...................................................................................19

*District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077 (D.C. Cir. 1984).................48

*Doe v. DiGenova*, 779 F.2d 74 (D.C. Cir. 1985) ...................................................46

*Dynalantic Corp. v. Dept. of Defense*, 115 F.3d 1012 (D.C. Cir. 1997) .......... 40, 41

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ......................................18

*EEOC v. Univ. of Penn.*, 850 F.2d 969 (3d Cir. 1988) ...........................................31

*Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) ...............................................45

*\*Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003)............................ 19, 20

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S.Ct. 3138 (2010) .25, 50

*Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390 (7th Cir. 1986).........46

*Green v. Mansour*, 474 U.S. 64 (1985) ................................................................20

*\*Hanes Corp. v. Millard*, 531 F.2d 585 (D.C. Cir. 1976) ................................. 28, 30

*Harrington v. Bush*, 553 F.2d 190 (D.C. Cir. 1977).............................................49

iv

*Hart's Case*, 16 Ct. Cl. 459 (1880), *aff'd* 118 U.S. 62 (1886) ...............................49

*Hill v. Traxler*, —Fed. Appx.—, 2013 WL 7022180 (D.C. Cir. Dec. 27, 2013) ....22

*Hollingsworth v. Perry*, —U.S.—, 133 S. Ct. 2652 (2013).............................. 32, 43

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) ................... 50, 51, 52

*Hunt v. Imperial Merch. Services, Inc.*, 560 F.3d 1137 (9th Cir. 2009).................20

*I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21
(D.C. Cir. 1986) ...................................................................................................24

*I.A.M. Nat'l Pension Fund Benefit Plan A v. Indus. Gear Mfg. Co.*, 723 F.2d 944
(D.C. Cir. 1982)............................................................................................ 45, 46

*In re Navy Chaplaincy*, 697 F.3d 1171 (D.C. Cir. 2012) ........................................18

*Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798 (D.C. Cir.
1985).....................................................................................................................41

*Janko v. Gates*, 741 F.3d 136 (D.C. Cir. 2014) ......................................................54

*JMM Corp. v. District of Columbia*, 378 F.3d 1117 (D.C. Cir. 2004) ...................23

*LaRoque v. Holder*, 650 F.3d 777 (D.C. Cir. 2011) ................................................40

*Loving v. United States*, 517 U.S. 748 (1996) ........................................................48

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................. 33, 34, 39

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ........................... 27, 47

*Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319 (D.C. Cir. 2011) ..............46

*Monsanto v. Geertson Seed Farms*, 561 U.S. 139, 130 S. Ct. 2743 (2010)..... 23, 25

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) .................................23

*Morrison v. Olson*, 487 U.S. 654 (1988) ................................................................51

*Myers v. United States*, 272 U.S. 52 (1926) ............................................................51

*Natural Resources Def. Council v. E.P.A.*, 464 F.3d 1 (D.C. Cir. 2006) ...............40

*Nextwave Pers. Communications v. FCC*, 254 F.3d 130 (D.C. Cir. 2001) .............21

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ................................................................23

*Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414 (1990) ..............................49

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) .............................................46

*Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991)..................... 19, 20

*Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237 (1952) ...................20

*Public Citizen v. U.S. Dist. Court for Dist. of Columbia*, 486 F.3d 1342 (D.C. Cir. 2007) .....................................................................................................................23

*Reisman v. Caplin*, 375 U.S. 440 (1964) .................................................................25

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974).......................24

*Salazar v. Buono*, 559 U.S. 700 (2010) ...................................................................47

*Salleh v. Christopher*, 85 F.3d 689 (D.C. Cir. 1996).............................................53

*Samuels v. Mackell*, 401 U.S. 66 (1971).................................................................28

*Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985)................................28

*Sherley v. Sebelius*, 610 F.3d 69 (D.C. Cir. 2010)..................................................41

*Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002)................................................40

*Singleton v. Wulff*, 428 U.S. 106 (1976) .................................................................45

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) ..........23

*Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735 (1996)..............................53

*Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72 (D.D.C. 2009) .........................29, 30
*Trainor v. Hernandez*, 431 U.S. 434 (1977).....................................................27

*U.S. Dep't of Navy v. Fed. Labor Relations Auth.*, 665 F.3d 1339
    (D.C. Cir. 2012).........................................................................................49

*United States v. Klein*, 80 U.S. 128 (1871)...............................................54

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ...................................18, 23

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ................................................44

*\*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ...........................................18, 27

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154 (D.C. Cir.
    2002)..........................................................................................................34

## Constitutional Provisions

U.S. Const. art. I, § 9, cl. 7..................................................................48

U.S. Const. art. II, § 1 .........................................................................50

U.S. Const. art. II, § 3 .........................................................................50

## Statutes

12 U.S.C. § 5481(12) ..........................................................................6

12 U.S.C. § 5481(14) ..........................................................................6

12 U.S.C. § 5491(a) ............................................................................5

12 U.S.C. § 5491(b) ............................................................................5

12 U.S.C. § 5491(c) ............................................................................5

12 U.S.C. § 5491(c)(3) ................................................................................ 5, 50

12 U.S.C. § 5492 ...........................................................................................5

12 U.S.C. § 5493(a)(1) ..................................................................................5

12 U.S.C. § 5497 ..........................................................................................49

12 U.S.C. § 5497(a)(1) ..................................................................................6

12 U.S.C. § 5497(e) .......................................................................................6

12 U.S.C. § 5511(a) .......................................................................................6

12 U.S.C. § 5512(b)(1) ..................................................................................6

12 U.S.C. § 5512(b)(4)(B) ...........................................................................52

12 U.S.C. § 5514(a) .......................................................................................7

12 U.S.C. § 5514(b) .......................................................................................7

12 U.S.C. § 5514(c) .......................................................................................8

12 U.S.C. § 5515(a) .......................................................................................7

12 U.S.C. § 5515(b) .......................................................................................7

12 U.S.C. § 5562(c) .......................................................................................7

12 U.S.C. § 5562(c)(1) ................................................................................34

12 U.S.C. § 5562(d) .......................................................................................7

12 U.S.C. § 5562(e) ................................................................................ 8, 33

12 U.S.C. § 5562(f) .......................................................................................7

12 U.S.C. § 5563 ...........................................................................................8

12 U.S.C. § 5563 ...................................................................................8

12 U.S.C. § 5564 ...................................................................................8

12 U.S.C. § 5564(d) ..............................................................................8

15 U.S.C. § 6105(d) ..............................................................................8

28 U.S.C. § 1291 ............................................................................ 19, 46

28 U.S.C. § 1292(a)(1) ........................................................................15

28 U.S.C. § 1294 .................................................................................19

28 U.S.C. § 1331 ...................................................................................3

28 U.S.C. § 2201 .................................................................................20

28 U.S.C. § 2201(a) .............................................................................27

28 U.S.C. § 2202 .................................................................................22

5 U.S.C. § 553 .......................................................................................6

5 U.S.C. § 706(2)(A) .............................................................................7

5 U.S.C. §§ 801-808 .............................................................................6

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ...................................................................5

## Rules

Fed. R. App. P. 4(a)(1)(B) .....................................................................3

Fed. R. Civ. P. 12(a)(4) ........................................................................39

Fed. R. Civ. P. 8(b)(6) .........................................................................39

**Regulations**

12 C.F.R. § 1080.8 ...................................................................................33

12 C.F.R. § 1080.8(a)...............................................................................8

12 C.F.R. pt. 1081 ....................................................................................8

16 C.F.R. pt. 310 ......................................................................................9

**Treatises**

18A Charles A. Wright et al., Fed. Prac. & Proc. Juris. § 4446 (2d ed.).......... 20, 21

Restatement (Second) Judgments § 13 .......................................... 21, 46

**Legislative Materials**

S. Rep. No. 111-176 (2010) ......................................................................5

**Other Authorities**

Memorandum of Understanding Between the Consumer Financial Protection
    Bureau and the Department of Justice....................................................8

Memorandum of Understanding Between the Consumer Financial Protection
    Bureau and the Federal Trade Commission ..........................................8

## GLOSSARY

**CFPB**                    **Consumer Financial Protection Bureau**

**APA**                     **Administrative Procedure Act**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

No. 13-5342

———————————

MORGAN DREXEN, INC,; KIMBERLY A. PISINSKI,

Plaintiffs-Appellants,

v.

CONSUMER FINANCIAL PROTECTION BUREAU,

Defendant-Appellee.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————

BRIEF FOR APPELLEE

———————————

## INTRODUCTION

This case concerns attempts by Plaintiffs Morgan Drexen, Inc. and Kimberly

Pisinski to determine the timing and forum for the adjudication of Morgan

Drexen's affirmative defense to an enforcement action brought against it by the

Consumer Financial Protection Bureau.  When Plaintiffs filed this suit, Morgan

Drexen was under investigation by the Bureau and was aware that the Bureau was

likely to sue it for deceiving debt-saddled consumers and charging them illegal

fees.  But Morgan Drexen acted first.  It sued the Bureau, seeking a declaration that

1

the Bureau's organic statute is unconstitutional and an injunction preventing the Bureau from bringing its enforcement action.  Soon thereafter, the Bureau filed its enforcement action in the United States District Court for the Central District of California, naming Morgan Drexen and its Chief Executive Officer, Walter Ledda.

Pisinski claims to have a "keen interest" in this constitutional challenge. The record, however, does not disclose the basis of her interest.  She is not the subject of any Bureau investigation, and has not been sued, or threatened with suit, by the Bureau.  Indeed, the record discloses only that she contracts with Morgan Drexen to provide her with "non-attorney/paralegal services," but there is nothing in the record describing the scope of those services, or how Pisinski might otherwise be affected by the Bureau's lawsuit against Morgan Drexen.

Given these circumstances, the district court below properly declined Plaintiffs' invitation to decide the constitutional question.  The district court found that Morgan Drexen would not suffer irreparable injury if required to raise its constitutional claim as a defense in the California district court, and chose not to reward Morgan Drexen's inequitable behavior by exercising its discretion under the Declaratory Judgment Act to reach the merits of the constitutional claim.  It found that Pisinski lacked standing, and dismissed the case.  Both Morgan Drexen and Pisinski appealed that decision to this Court, but have provided no ground for reversing the district court's well-reasoned decision.

2

## JURISDICTIONAL STATEMENT

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. On October 17, 2013, the district court dismissed the case without prejudice. JA 690. Plaintiffs timely appealed on November 15, 2013. *See* Fed. R. App. P. 4(a)(1)(B). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    After the district court below declined to exercise its authority under the Declaratory Judgment Act to rule on Plaintiffs' constitutional claim, the California district court presiding over the Bureau's enforcement action against Morgan Drexen rejected the very same constitutional arguments raised here. As a result, the declaratory relief sought by Plaintiffs could no longer be res judicata in that action and therefore could no longer serve any purpose. The first issue presented is whether, in light of this subsequent development, this appeal should be dismissed under the doctrine of prudential mootness.

2.    Aware that the Bureau was poised to bring an action against it for engaging in deceptive and unlawful debt relief practices, Morgan Drexen brought this facial challenge to the constitutionality of the portions of the Dodd-Frank Act that created the Bureau. The Bureau's enforcement action was filed three weeks after Morgan Drexen initiated this case, and it is being actively litigated in the

3

California district court. The second issue presented is whether the district court below abused its discretion when it held that, because Morgan Drexen could raise its constitutional claim as a defense in the Bureau's enforcement action, and in light of Morgan Drexen's inequitable conduct, injunctive and declaratory relief was unwarranted.

3.     Pisinski has never been subject to any Bureau action, but premises her alleged harm on the Bureau's regulation of her contractual counter-party, Morgan Drexen. The third issue presented is whether the district court properly found that Pisinski lacked standing.

4.     If the Court reverses the district court's judgment, the fourth issue presented is whether this Court should remand the case to the district court for further proceedings or decide in the first instance whether Plaintiffs are entitled to declaratory or injunctive relief.

5.     If the Court reaches the merits of Plaintiffs' constitutional claim, the fifth issue presented is whether Congress violated constitutional separation-of-powers principles when it created the Bureau.

## PERTINENT STATUTES AND REGULATIONS

Except for pertinent statutes and regulations reproduced in the addendum to this brief, all applicable statutes and regulations are contained in the Addendum to the Brief for the Appellant.

4

## STATEMENT OF THE CASE

### A.    The Consumer Financial Protection Bureau

The Bureau is the principal federal agency charged with "regulat[ing] the offering and provision of consumer financial products or services under the Federal consumer financial laws."  12 U.S.C. § 5491(a).  Before the Bureau's creation, these laws were administered by "seven different federal regulators," a situation that Congress believed "undermine[d] accountability" and produced regulatory gaps that contributed to the 2008 financial crisis.  S. Rep. No. 111-176, at 9-10 (2010).  To address that problem, Congress passed and the President signed the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) (Dodd-Frank Act).  Title X of that Act establishes the Bureau as an "independent bureau" within the Federal Reserve System. 12 U.S.C. § 5491(a).

### 1.    The Bureau's Structure and Funding

The Bureau is headed by a Director, who is appointed for a five-year term by the President with the advice and consent of the Senate.  *Id.* § 5491(b), (c).  The President has the authority to remove the Director for "inefficiency, neglect of duty, or malfeasance in office."  *Id.* § 5491(c)(3).  The Director is responsible for conducting the Bureau's affairs and managing its employees.  *Id.* §§ 5492, 5493(a)(1).

5

The Dodd-Frank Act funds the Bureau's operations by authorizing the Bureau to receive an allocation from the Federal Reserve System's earnings, subject to an annual statutory cap. *Id.* § 5497(a)(1). If funds above the cap are needed "to carry out the authorities of the Bureau," the Director may seek additional funds from Congress. 12 U.S.C. § 5497(e).

### 2.    The Bureau's Authority

The Bureau is responsible for implementing "Federal consumer financial law." *See Id.* § 5511(a). This body of law includes 18 pre-existing statutes, collectively known as "enumerated consumer laws," as well as Title X of the Dodd-Frank Act itself. *Id.* § 5481(12), (14). To enable the Bureau to carry out its responsibility for "ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive," *id.* § 5511(a), Title X grants the Bureau certain rulemaking, supervision, and enforcement authorities.

Rulemaking. The Bureau has the authority to adopt regulations to administer Federal consumer financial law. 12 U.S.C. § 5512(b)(1). In issuing rules, the Bureau must comply with the same rulemaking procedures that generally apply to federal agencies under the Administrative Procedure Act (APA), *see* 5 U.S.C. § 553, as well as other statutes governing agency rulemaking activities, such as the Congressional Review Act, *id*. §§ 801-808. The Bureau's rules are

6

subject to APA review in federal district courts, and may be set aside if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

    <u>Supervision</u>.  Supervision, a common tool in financial regulation, refers generally to a "sovereign's supervisory powers over corporations" and includes "any form of administrative oversight that allows a sovereign to inspect books and records on demand." *Cuomo v. The Clearing House Ass'n, LLC*, 557 U.S. 519, 535 (2009).  The Bureau has "exclusive authority" to supervise very large depository institutions and credit unions (*i.e.*, those with assets of over $10 billion), as well as their affiliates, for compliance with Federal consumer financial law and for related purposes.  12 U.S.C. § 5515(a), (b).  The Bureau also has authority to supervise certain nondepository institutions.  *Id.* § 5514(a), (b).

    <u>Enforcement</u>.  The Bureau also may conduct investigations and bring enforcement actions.  When conducting investigations, the Bureau may issue civil investigative demands, a form of administrative subpoena that may direct the recipient to produce documents or other materials or to provide information or oral testimony.  *Id.* § 5562(c).  A demand recipient may petition the Director to modify or set aside the demand, and the demand is unenforceable while such a petition is pending.  *Id.* § 5562(f).  Materials submitted in response to a demand are considered confidential, *id.* § 5562(d), and a recipient may withhold responsive

material based on a "claim of privilege," 12 C.F.R. § 1080.8(a). Title X does not

impose a fine or penalty for failure to comply with a civil investigative demand.

Rather, in the event of noncompliance, the Bureau may file a petition in federal

district court seeking enforcement of the demand. 12 U.S.C. § 5562(e).

The Bureau may bring an enforcement action in either of two forums. First,

the Bureau may bring an administrative proceeding before an administrative law

judge. *Id.* § 5563; *see also* 12 C.F.R. pt. 1081. The administrative law judge's

recommended decision in the proceeding is subject to review by the Director,

whose final decision is subject to judicial review. 12 U.S.C. § 5563. Second, the

Bureau may bring an enforcement action by filing a civil action in federal district

court. *Id.* § 5564; *see also* 15 U.S.C. § 6105(d). Before bringing any such action,

the Bureau consults, as appropriate, with other federal agencies, including the

Department of Justice and the Federal Trade Commission.[1]

---

[1] *See* 12 U.S.C. §§ 5564(d); 5514(c); *see also* Memorandum of Understanding
Between the Consumer Financial Protection Bureau and the Department of Justice,
*available at* http://files.consumerfinance.gov/f/2012/01/CFPB-DOJ-MOU.pdf;
Memorandum of Understanding Between the Consumer Financial Protection
Bureau and the Federal Trade Commission, *available at*
http://files.consumerfinance.gov/f/2012/01/FTC.MOUwSig.1.20.pdf.

**B.     Facts and Prior Proceedings**

## 1.     The Bureau's Investigation of Morgan Drexen

In early 2012, the Bureau initiated an investigation to determine whether Morgan Drexen or others were engaged in "unlawful acts or practices in the advertising, marketing, or sale of debt relief services or products."  Shaheen Decl. Ex. 1 [JA 86].  More than one year later, in April 2013, attorneys within the Bureau's Office of Enforcement informed counsel for Morgan Drexen that they intended to recommend legal action against Morgan Drexen and its CEO, Walter Ledda, for violations of the Dodd-Frank Act's prohibition on unfair, deceptive, or abusive acts or practices and the Telemarketing Sales Rule, 16 C.F.R. pt. 310. Shaheen Decl. Ex. 32 [JA 314].  In accordance with its "Notice and Opportunity to Respond and Advise" process, the Bureau invited Morgan Drexen to offer its views on why the Bureau should not file such an action.  *See id.*  Morgan Drexen took advantage of that opportunity by submitting a written response to the Bureau on May 8, 2013.  Shaheen Decl. Ex. 33 [JA 318-325].

## 2.     Proceedings in the District Court Below

On July 22, 2013, before the Bureau had taken any further public action, Morgan Drexen (joined by Pisinski) brought this lawsuit, claiming that "Title X of the Dodd-Frank Act violates the Constitution's separation of powers," and seeking

declaratory and preliminary and permanent injunctive relief.  [JA 6-25, 28-29].  At

a subsequent telephonic hearing with the district judge, the Plaintiffs agreed to

withdraw their request for a preliminary injunction, and the parties agreed to

resolve the case through cross-motions for summary judgment.  *See* Order dated

July 25, 2013 [JA 332-336].  Counsel for the Bureau advised both the district court

and the Plaintiffs that the Bureau may bring its enforcement action during briefing

on those cross-motions.  *See* Mem. Op. at 6 [JA 696].

On August 20, 2013, the Bureau brought its lawsuit against Morgan Drexen

and Ledda in the United States District Court for the Central District of California

(hereinafter "California district court").  *See* Complaint, *Consumer Financial

Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal. Aug. 20,

2013) [JA 401-420].  The Bureau's complaint alleges that Morgan Drexen and

Ledda violated the Telemarketing Sales Rule and the Dodd-Frank Act's

prohibition on deceptive acts and practices by charging consumers illegal up-front

fees for debt-relief services and deceiving consumers about the likelihood that they

would become debt free by working with Morgan Drexen.  *Id.*  The Plaintiffs in

this action, Morgan Drexen and Pisinski, immediately moved for a temporary

restraining order and preliminary injunction restraining the Bureau from

prosecuting its action.  *See* Motion for a Temporary Restraining Order and

Preliminary Injunction Enjoining CFPB From Prosecuting Its Second-Filed Action [JA 421].

On October 17, 2013, the district court below granted the Bureau's motion to dismiss or, in the alternative, for summary judgment without reaching the merits of Plaintiffs' constitutional claim. *See* Order dated October 17, 2013 [JA 690]. It denied Plaintiffs' cross-motion for summary judgment without prejudice, and denied Plaintiffs' motion for a temporary restraining order and preliminary injunction as moot. *Id.*

First, the district court concluded that "because Morgan Drexen can obtain complete relief on its constitutional claim in the currently pending enforcement action in the Central District of California, injunctive and declaratory relief in this Court would be inappropriate." Mem. Op. at 10 [JA 700]. The district court declined injunctive relief based on the "basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party [1] has an adequate remedy at law and [2] will not suffer irreparable injury if denied injunctive relief." *Id.* at 11 [JA 701]. It found that Morgan Drexen's ability to move to dismiss the Bureau's pending enforcement action provided it with "an adequate remedy to address its claims of the Bureau's unconstitutionality." *Id.* It also explained that the "'mere litigation expense'" associated with Morgan Drexen raising its

11

constitutional claim in the California district court would "'not constitute irreparable injury.'"  *Id.* at 12 [JA 702].

In this respect, the district court found "controlling" "the parallel case of *Deaver v. Seymour*, 822 F.2d 66, 71 (D.C. Cir. 1987), [in which] the D.C. Circuit reached the identical conclusion, declining to adjudicate a constitutional challenge based on separation of powers when such a claim could be raised as a defense in a pending enforcement action."  *Id*.  As in *Deaver*, ruling on the merits of Morgan Drexen's constitutional claim would "frustrate the final judgment rule" by permitting immediate appellate review of any adverse decision, which would not be available if Morgan Drexen presented the issue as a defense to the enforcement action.  *Id.* at 13 [JA 703].  Likewise, reaching the merits of the constitutional issue in the declaratory action would, as this Court observed in *Deaver*, "contravene long-standing principles of constitutional avoidance."  *Id.*  The district court rejected Morgan Drexen's attempt to distinguish *Deaver* as applicable to the criminal context only, observing that "the equitable considerations underlying the *Deaver* decision apply equally in the civil enforcement context."  *Id.* at 14 [JA 704].  Finally, the district court "reject[ed] Morgan Drexen's argument that facial constitutional challenges represent an exception to general principles of equity[,]" noting that, to the contrary, "principles of constitutional avoidance . . . *undermined* the argument for injunctive relief" in such challenges.  *Id.* at 17 [JA 707].

12

Next, after considering the relevant factors, the district court determined that it would not exercise its permissive jurisdiction under the Declaratory Judgment Act. *Id.* at 18-23 [JA 708-713]. Specifically, the district court found that adjudication of Morgan Drexen's constitutional claim would result in piecemeal litigation of the parties' dispute, and that permitting Morgan Drexen to bring its anticipatory defense as a separate declaratory judgment action would reward Morgan Drexen's "procedural fencing" and "forum shopping." *Id.* at 21-22 [JA 711-712]. In light of the "numerous factors counseling dismissal" and the absence of any significant countervailing considerations, the district court declined Morgan Drexen's request for declaratory relief. *Id.* at 23 [JA 713].

Finally, the district court held that Pisinski lacked standing to bring her constitutional claim. First, it found Pisinski's claimed concern that the Bureau's investigation of Morgan Drexen could require disclosure of her clients' privileged information and thereby "interfere with her confidential relationships with her clients" to be "illusory." *Id.* at 25 [JA 715]. The district court observed that the Bureau never sought information protected by the attorney-client privilege, but "informed Morgan Drexen of its right to assert any applicable privilege in response to a [civil investigative demand]." *Id.* It also noted that any threat to Pisinski from the Bureau's investigation of Morgan Drexen could not give rise to standing to seek declaratory and injunctive relief because the Bureau's investigation was over

13

and Pisiniski had made "no effort to show a substantial probability of an imminent [civil investigative demand] which would force her to turn over privileged information and thus interfere with her attorney-client relationships." *Id.* at 25-26 [JA 715-716].

The district court also rejected Pisinski's attempt to base her standing on the Bureau's regulation of either her or her contractual counterparty, Morgan Drexen. *Id.* at 26-29 [JA 716-719]. The district court began its analysis by noting that because the Bureau sought summary judgment, Pisinski could not rely on "general factual allegations," but was required to "set forth by affidavit or other evidence specific facts" to demonstrate her standing. *Id.* at 26 [JA 716]. The "specific facts" contained in Pisinski's declaration, however, were not sufficient to support Pisinski's standing. According to the district court, the only evidence Pisinski proffered in support of the possibility that the Bureau may seek to regulate her — the statement of Morgan Drexen's lawyer that staff of the Bureau had expressed "concern" regarding the conduct of attorneys who "charge their clients hourly fees for the preparation of bankruptcy pleadings"— was insufficient to establish any "imminent" threat of harm. *Id.* at 27 n. 8 [JA 717]. Likewise, the district court found that Pisinski had not established a cognizable injury based on the Bureau's regulation of Morgan Drexen. *Id.* at 28-29 [JA 718-719].

14

### 3.     Subsequent Proceedings in the California District Court

As the district court suggested was appropriate, Morgan Drexen raised its

constitutional claim in a motion to dismiss the Bureau's enforcement action.  The

California district court denied that motion on January 10, 2014, finding that the

Bureau's structure does not impermissibly interfere with the powers reserved by

the Constitution to the President, the Congress, or the Courts.  *See* Order Denying

Defendants' Motion to Dismiss, *Consumer Financial Protection Bureau v. Morgan*

*Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal. Jan. 10, 2014).  The California district

court also denied Morgan Drexen's subsequent request to certify its ruling on the

Bureau's constitutionality for interlocutory appeal, concluding that Morgan Drexen

had not established that there were "substantial grounds for a difference of opinion

as to the constitutionality of the CFPB."  *See* Order, *Consumer Financial*

*Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal. Feb. 24,

2014).[2]

---

[2] Before the California district court ruled on the constitutional issue, Morgan
Drexen moved to stay proceedings and to preliminarily enjoin the Bureau from
prosecuting its action until both the district court and the Ninth Circuit had ruled.
After denying Morgan Drexen's motion to dismiss, the California district court
denied as moot the motion to stay and the motion for a preliminary injunction.  *See*
*id*.  Morgan Drexen attempted to appeal the denial of its preliminary injunction
motion pursuant to 28 U.S.C. § 1292(a)(1), but the Ninth Circuit recently
dismissed that appeal for lack of jurisdiction.  *See* Order, *Consumer Financial*
*Protection Bureau v. Morgan Drexen, Inc.*, 14-55333 (9th Cir. April 11, 2014).

15

Pisinski, who was not sued by the Bureau, sought to intervene in the

Bureau's enforcement action.  The district court denied that motion on March 10,

2014.  *See* Order Denying Pisinski's Motion to Intervene, *Consumer Financial*

*Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal. Mar. 10,

2014).  The parties are currently engaged in discovery, and a trial before a jury is

scheduled to commence in December of this year.  *See* Scheduling Order,

*Consumer Financial Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-

01267 (C.D. Cal. Jan. 10, 2014).[3]

## SUMMARY OF ARGUMENT

I.     The Court should dismiss the appeal as prudentially moot.  After the

district court issued the decision on review, the California district court rejected

Morgan Drexen's argument that the provisions creating and empowering the

Bureau are inconsistent with constitutional separation-of-powers principles.  As a

result, Plaintiffs' requested declaratory judgment would no longer serve any

purpose because it would not be res judicata in the California district court.  It

therefore would not redress the sole source of Plaintiffs' alleged harm—the

Bureau's enforcement action.  There is simply no reason for this litigation to

continue in this circuit.

---

[3] The Orders of the California district court are included in the addendum to this
brief pursuant to D.C. Circuit Rule 32.1.

II.     Should the Court nonetheless review the decision below, it should affirm.  The district court did not abuse its discretion by declining to grant Morgan Drexen equitable or declaratory relief.  The district court properly found that Morgan Drexen would not suffer irreparable injury in the absence of injunctive relief because it could raise its constitutional argument as a defense to the Bureau's enforcement action.  The district court's decision to decline to exercise its permissive jurisdiction under the Declaratory Judgment Act was also an appropriate exercise of its discretion.  As the district court recognized, adjudicating a single affirmative defense in Washington, D.C. makes little sense when the entire matter, including the constitutional issue and the issues relating to Morgan Drexen's liability, can be resolved in California.  Likewise, the district court did not abuse its discretion by finding that equitable considerations—in particular, Morgan Drexen's attempt to bring its anticipatory defense in a forum of its choice—favored dismissal of the action.  Accordingly, the Court should affirm the district court's decision to dismiss Morgan Drexen's constitutional claim without reaching the merits.

III.    The district court also properly dismissed Pisinski's claim due to her lack of standing.  Pisinski has not demonstrated how the Bureau's enforcement action against Morgan Drexen causes her imminent injury, nor has she explained how a ruling from this Court will redress the injury she contends (but does not

17

establish) she might suffer if the Bureau is successful.  Accordingly, the Court

should affirm this jurisdictional holding as well.

      IV.    If the Court declines to dismiss this appeal on prudential mootness

grounds, or affirm the decision below, it should remand to the district court for a

determination, in the first instance, regarding the res judicata effect of the

California district court's order denying Morgan Drexen's motion to dismiss,

and/or Pisinski's entitlement to declaratory or injunctive relief.

      V.    Finally, if the Court reaches the merits of the constitutional issue, it

should find that Congress did not violate the Constitution when it created the

Bureau.

## STANDARD OF REVIEW

A district court's "decision to grant or deny permanent injunctive relief is an

act of equitable discretion by the district court, reviewable on appeal for abuse of

discretion." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citing

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982)).  Likewise, "district

courts' decisions about the propriety of hearing declaratory judgment actions,

which are necessarily bound up with their decisions about the propriety of granting

declaratory relief, should be reviewed for abuse of discretion." *Wilton v. Seven*

*Falls Co.*, 515 U.S. 277, 289-90 (1995).  Finally, a district court's decision to

dismiss a complaint for lack of standing is reviewed *de novo*. *See In re Navy*

*Chaplaincy*, 697 F.3d 1171, 1175 (D.C. Cir. 2012).

## ARGUMENT

### I. The Court should dismiss this appeal on grounds of prudential mootness because the declaratory and injunctive relief sought by Plaintiffs could not relieve their alleged injury

As noted, after the district court below dismissed this action, the California

district court denied Morgan Drexen's motion to dismiss the Bureau's enforcement

action, rejecting the very same constitutional arguments that Morgan Drexen and

Pisinski raise here. *See* Order Denying Defendants' Motion to Dismiss, *Consumer*

*Financial Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D.

Cal. Jan. 10, 2014). Morgan Drexen may seek review of that ruling in only one

court, the United States Court of Appeals for the Ninth Circuit. 28 U.S.C. §§ 1291,

1294.

In light of this subsequent development, this Court should dismiss this case

as prudentially moot. Under the doctrine of prudential mootness, the Court may

"decline to hear an appeal for declaratory or injunctive relief '[w]here it is . . .

unlikely that the court's grant of declaratory judgment will actually relieve the

injury.'" *Foretich v. United States*, 351 F.3d 1198, 1216 (D.C. Cir. 2003) (quoting

*Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1020 (D.C. Cir. 1991)); *see also*

*Deutsche Bank Nat'l Trust Co. v. FDIC*, —F.3d—, 2014 WL 931238, at *9 (9th

Cir. Mar. 11, 2014) ("The doctrine of prudential mootness permits a court to

'dismiss an appeal not technically moot if circumstances have changed since the

beginning of litigation that forestall any occasion for meaningful relief.'") (quoting

*Hunt v. Imperial Merch. Services, Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009)).  This

doctrine has particular force "where the court can avoid adjudication of difficult or

novel constitutional questions."  *Foretich*, 351 F.3d at 1216 (citing *Penthouse*, 939

F.2d at 1020).

     The declaratory judgment sought here will not provide meaningful relief.

The entire purpose of the declaratory judgment procedure is to allow a litigant

under a cloud of legal uncertainty—*i.e.*, the natural defendant—to obtain in

advance of the natural plaintiff's lawsuit "a final judgment" regarding its "rights

and legal obligations," 28 U.S.C. § 2201, so that it may claim that judgment as res

judicata in any later proceeding brought by the natural plaintiff.  *See Green v.*

*Mansour*, 474 U.S. 64, 73 & n.2 (1985) ("If, of course, petitioners would make no

claim that the federal declaratory judgment was res judicata in later . . .

proceedings, the declaratory judgment would serve no purpose whatsoever in

resolving the remaining dispute between the parties, and is unavailable for that

reason.") (citing *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 247

(1952)); *see also* 18A Charles A. Wright et al., Fed. Prac. & Proc. Juris. § 4446 (2d

ed.) ("The very purpose of [the declaratory] remedy is to establish a binding

adjudication that enables the parties to enjoy the benefits of reliance and repose

secured by res judicata.").

The declaratory judgment that Morgan Drexen seeks here could not serve

that purpose.  It could not "preclude relitigation" of the constitutional claim in the

California district court because *the issue has already been decided there*.

*Nextwave Pers. Communications v. FCC*, 254 F.3d 130, 147 (D.C. Cir. 2001)

(discussing the issue preclusion aspect of the doctrine of res judicata).  And,

issuing a declaratory judgment where it would not have "any preclusive effect . . .

would leave [the] procedure difficult to distinguish from the mere advisory

opinions prohibited by Article III."  18A Charles A. Wright et al., Fed. Prac. &

Proc. Juris. § 4446 (2d ed.).

In effect, Morgan Drexen is asking this court to review the decision of the

California district court.  But Morgan Drexen may not seek a declaration here in

order "to relitigate a claim already adjudicated, or to evade the effects of

preclusion with respect to issues already determined." Restatement (Second) of

Judgments § 33, comment a; *see also CIBA Corp. v. Weinberger*, 412 U.S. 640,

644 (1973) (denying an attempt to use the declaratory judgment procedure to seek

review of an issue already decided and subject to review in the court of appeals

pursuant to a specific statutory review mechanism); *Clark v. Memolo*, 174 F.2d

978, 981 (D.C. Cir. 1949) ("[T]he primary purpose of the [Declaratory Judgment Act is] to have a declaration of rights not therefore determined, and not to determine whether rights theretofore adjudicated have been properly adjudicated.").

Likewise, Morgan Drexen has not provided a basis for this Court to enjoin the proceedings in the California district court, especially in light of that district court's rejection of Morgan Drexen's constitutional defense. *See, e.g., Hill v. Traxler*, —Fed. Appx.—, 2013 WL 7022180, at *1 (D.C. Cir. Dec. 27, 2013) (affirming denial of request for declaratory and injunctive relief regarding plaintiff's conviction in another federal court on the ground that normal appellate procedures provide an adequate remedy).  Although injunctive relief may, at times, be necessary in order to effectuate the grant of a declaratory judgment, 28 U.S.C. § 2202, where there is no basis for the issuance of a declaratory judgment, there can be no basis for any associated injunctive relief.  Accordingly, Morgan Drexen's request for injunctive relief is prudentially moot as well.

Pisinski's arguments in support of her alleged injury are based entirely on the Bureau's enforcement action against Morgan Drexen. *See* Br. 20-29.  But any declaratory relief awarded to Pisinski here would not be res judicata in that forum and therefore would not prevent that litigation from proceeding.  This Court is

therefore also unable to provide Pisinski meaningful relief from her alleged injury.[4]

Accordingly, because the declaratory and injunctive relief sought by Plaintiffs

would not actually relieve their alleged injury, this appeal should be dismissed on

grounds of prudential mootness.

## II.    The district court did not abuse its discretion by refusing to grant Morgan Drexen's request for declaratory and injunctive relief

### A.    The district court did not abuse its discretion when it found that Morgan Drexen would not suffer irreparable harm in the absence of an injunction

 "An injunction is a drastic and extraordinary remedy, which should not be

granted as a matter of course."  *Monsanto v. Geertson Seed Farms*, 561 U.S. 139,

130 S. Ct. 2743, 2761 (2010) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305,

311-312 (1982)).  "It is a 'basic doctrine of equity jurisprudence that courts of

equity should not act . . . when the moving party has an adequate remedy at law

and will not suffer irreparable injury if denied equitable relief.'"  *Morales v. Trans*

*World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (quoting *O'Shea v. Littleton*, 414

U.S. 488, 499 (1974)) (internal alteration omitted); *see also JMM Corp. v. District*

*of Columbia*, 378 F.3d 1117, 1121 (D.C. Cir. 2004).

---

[4] Of course, Pisinski has not established her standing for purposes of Article III's case or controversy requirement, *see infra* Part III, but the Court need not address Pisinski's standing before dismissing this case on prudential mootness grounds, as it is clear that a federal court may dismiss a case on any other non-merits grounds prior to determining its jurisdiction.  *See Public Citizen v. U.S. Dist. Court for Dist. of Columbia*, 486 F.3d 1342, 1347-48 (D.C. Cir. 2007) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007)).

The district court held that Morgan Drexen's ability to raise its constitutional claim as a defense to the Bureau's enforcement action provided Morgan Drexen an adequate remedy, and that the expense associated with raising its defense in that venue did not constitute irreparable harm.  Mem. Op. at 11-12 [JA 701-702]. Morgan Drexen provides no basis for reversing the district court's determination that a motion to dismiss the Bureau's enforcement action would provide it with an adequate remedy.  Indeed, after the district court's ruling, Morgan Drexen did move to dismiss the Bureau's complaint in the enforcement action, and it received an adjudication of its constitutional claim.

Likewise, Morgan Drexen provides no basis for reversing the district court's finding that Morgan Drexen would not suffer irreparable harm in the absence of an injunction.  Though Morgan Drexen has incurred the marginal additional expense associated with briefing the constitutional issue before the California district court, "mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."  *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974); *see also I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 25 (D.C. Cir. 1986) ("Formidable as it is, the cost and delay associated with modern-day litigation simply does not establish irreparable harm.").  Morgan Drexen thus provides no basis for reversing the district court's ruling.

24

Rather than attempt to demonstrate that the district court abused its discretion, Morgan Drexen rests on the bare assertion that "the district court should have considered the strength of Morgan Drexen's showing on the merits of its constitutional challenge" before denying its request for equitable relief. Br. 29. This unsupported assertion is wrong. The failure to demonstrate irreparable harm in the absence of an injunction is, by itself, a sufficient ground to deny a request for equitable relief. *See Monsanto*, 130 S.Ct. at 2760; *see also Reisman v. Caplin*, 375 U.S. 440, 441 (1964) ("We . . . have concluded that petitioners have an adequate remedy at law and that the complaint is therefore subject to dismissal for want of equity. This obviates our passing upon any of the other questions presented."); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").[5]

---

[5] Contrary to Plaintiffs' contention, Br. 17, 26, nothing in the Supreme Court's decision in *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S.Ct. 3138 (2010), gives plaintiffs a "right" to bring facial constitutional challenges irrespective of Article III's case or controversy requirement or the well-established principles governing the availability of declaratory or injunctive relief. Rather, as the district court noted below, that case considered whether plaintiffs had to utilize a statutory review mechanism in order to bring their constitutional claim. *See* Mem. Op. at 15-16 (citing *Free Enter. Fund*, 130 S.Ct. at 3150-3151) [JA 705-706]. Here, as in the district court, "[p]laintiffs' extensive citation to *Free Enterprise Fund* is therefore unpersuasive." Mem. Op. at 16 [JA 706].

Finally, the district court was also correct to find this Court's decision in

*Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987), controlling. *Deaver* involved a

similar attempt by the subject of an investigation to enjoin his potential prosecution

under the Ethics in Government Act, on the ground that the special counsel

provisions of that Act violated constitutional separations-of-powers principles. *Id.*

at 66. This Court denied that attempt on the ground that Deaver would have an

adequate opportunity to present his defense if he were ever indicted. *Id.* at 68-70.

The Court also based its decision on the concern that adjudicating his affirmative

defense as a stand-alone declaratory judgment action would undermine the final

judgment rule and contravene the rule of constitutional avoidance. *Id.* at 70-71.

Morgan Drexen's attempt to distinguish *Deaver* on the ground that it was

decided in the criminal context (Br. 46-47) should be rejected for the reasons cited

by the district court. "[T]he equitable considerations underlying the *Deaver*

decision apply equally in the civil enforcement context." Mem. Op. at 14 [JA

704]. For example, "[j]ust as the *Deaver* court concluded that Federal Rule of

Criminal Procedure 12(b) provided Mr. Deaver an opportunity to raise his

constitutional argument as a preliminary defense, so too here Federal Rule of Civil

Procedure 12(b)(6) provide[d] Morgan Drexen an adequate remedy for

adjudication of its separation of powers challenge." *Id.* (citing *Deaver*, 822 F.2d at

70). "Similarly, the principles of constitutional avoidance and respect for the final

26

judgment rule animating the *Deaver* decision carry equal weight in the civil

context." *Id.*  Finally, the *Younger* abstention doctrine, which rests (at least in part)

on the same equitable principles underlying both the district court's decision and

*Deaver*, have long been held to apply in the civil enforcement context.  *See id.* at

14-15 (citing *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977)) [JA704-705].

Accordingly, the district court did not abuse its discretion in denying Morgan

Drexen's request for a permanent injunction without considering the merits of its

constitutional claim.

### B.     The district court did not abuse its discretion by withholding declaratory relief

"The Declaratory Judgment Act provides that a court '*may* declare the rights

and other legal relations of any interested party,' not that it *must* do so."

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting 28 U.S.C.

§ 2201(a)) (emphasis in original).  "This text has long been understood 'to confer

on federal courts unique and substantial discretion in deciding whether to declare

the rights of litigants.'"  *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286

(1995)).  The district court did not abuse this discretion here.

As an initial matter, the district court's decision to deny declaratory relief in

this context can be upheld on the same ground that supported the court's decision

to deny injunctive relief.  "[T]he discretionary relief of declaratory judgment is, in

a context such as this where federal officers are defendants, the practical equivalent of specific relief such as injunction or mandamus, since it must be presumed that federal officers will adhere to the law as declared by the court." *See Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 n.8 (D.C. Cir. 1985). "Such equivalence of effect dictates an equivalence of criteria for issuance." *Id.* (citing *Samuels v. Mackell*, 401 U.S. 66, 73 (1971)). Accordingly, in the context of this matter, the district court would have acted well within the bounds of its discretion by denying declaratory relief for the same reasons that it denied injunctive relief: Morgan Drexen had an adequate remedy at law and had not demonstrated that it would suffer irreparable harm in the absence of relief. *See, e.g., Samuels*, 401 U.S. at 73; *Deaver*, 822 F.2d at 71.

The district court went further, however, and analyzed all the factors this Court set forth in *Hanes Corp. v. Millard*, 531 F.2d 585, 591 n. 4 (D.C. Cir. 1976), as "relevant to the propriety of granting a declaratory judgment." Mem. Op. at 19-23 [JA 709-713]. Thus, the district court found that issuing a declaratory judgment regarding the constitutionality of the Bureau would not "finally settle the controversy between the parties," *Hanes*, 531 F.2d at 591 n. 4, because "if the Court were to decide against Morgan Drexen, then nothing in the California litigation would be settled." Mem. Op. at 20 [JA 710]. The district recognized, however, that if it "declined jurisdiction here, then *both* the enforcement action and

28

the constitutional claim could be adjudicated in a single proceeding in the Central District of California." *Id.*

Likewise, in applying the second *Hanes* factor, the district court recognized that the "other proceeding[] pending" in the California district court would provide an adequate forum for Morgan Drexen to raise its constitutional claim.  As the district court explained, "[w]here a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified."  Mem. Op. at 20 (quoting *Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72, 80 (D.D.C. 2009)) [JA 710].  Accordingly, it appropriately viewed the second *Hanes* factor as providing "strong weight" in favor of dismissal.  *Id.*

Although the district court found that the third factor—the convenience of the parties—did not clearly favor either side, it found that "the next two factors— the equity of the conduct of the declaratory judgment plaintiff and the prevention of 'procedural fencing'—favor dismissal."  Mem. Op. at 21 [JA 711].  It noted that Morgan Drexen was well aware, when it filed suit, that the Bureau's enforcement action was imminent.  *Id.* at 21-22 [JA 711-712].  Indeed, attorneys from the Bureau's Office of Enforcement had recently told counsel for Morgan Drexen that they would likely recommend bringing suit on the very claims that were ultimately

included in the Bureau's complaint.  *Id.* at 21-22 (citing Shaheen Decl. ¶ 38, Ex. 32 (Letter from Wendy Weinberg to Randal Shaheen)) [JA 711-712].  The district court did not abuse its discretion by refusing to reward Morgan Drexen's "procedural fencing."  *Id.* at 22 [JA 712].  After all, "courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum."  Mem. Op. at 21 (quoting *Swish Mktg*., 669 F. Supp. 2d at 78) [JA 711].

Nor did the district court abuse its discretion by finding declaratory relief inappropriate "because Morgan Drexen [was] essentially asking for adjudication of an anticipatory defense."  Mem. Op. at 22 [JA 712].  As this Court has noted, "[t]he anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure.  It deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse."  *Hanes*, 531 F.2d at 592-93.  The district court rejected Morgan Drexen's argument that its constitutional claim was not properly considered a defense to the Bureau's enforcement action.  Mem. Op. at 22-23 [JA 712-713].  This was not error. Indeed, after the district court issued its opinion, Morgan Drexen moved to dismiss

the Bureau's complaint on this ground and has pled the Bureau's alleged

unconstitutionality as an affirmative defense.[6]

Finally, the district court found that the "state of the record" supported the

exercise of its permissive jurisdiction under the Declaratory Judgment Act because

the constitutional issue was fully briefed.  Mem. Op. at 23 [JA 713].  It recognized

at the time, however, that "Morgan Drexen can file a motion to dismiss in the

California action, asserting its constitutional challenge to the CFPB under Federal

Rule of Civil Procedure 12(b)."  *Id.*  Of course, this is exactly what Moran Drexen

did.  It lost.  It can seek review of that holding in the Ninth Circuit, but it is not

entitled to a second bite at the apple here.[7]

---

[6] *See* Answer at p. 34, *Consumer Financial Protection Bureau v. Morgan Drexen,
Inc.*, No. 8:13-cv-01267 (C.D. Cal. Jan. 24, 2014) ("For their Eleventh Affirmative
Defense, Answering Defendants allege that CFPB lacks constitutionally required
checks, balances and oversight and therefore lacks power and standing to bring this
case, and the Court lacks jurisdiction over the matter.").

[7] In addition, Morgan Drexen was not entitled to declaratory and injunctive relief
simply because it won the race to the courthouse by filing its lawsuit first.  *See* Br.
47-49. Courts have consistently rejected the proposition that "an injunction
favoring [a] first-filed action [is] a mandatory step," *Columbia Plaza Corp. v. Sec.
Nat'l Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975), particularly when, as here, "one of
the [plaintiff's] motives is to . . . preempt an imminent . . . enforcement action,"
*EEOC v. Univ. of Penn.*, 850 F.2d 969, 978 (3d Cir. 1988).  The district court's
ruling was an appropriate response to the prospect of potentially duplicative
litigation, and there is no basis—particularly now—to find that its response to this
prospect was an abuse of discretion.

## III.    The district court properly held that Pisinski lacks standing

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l U.S.A.*, —U.S.—, 133 S. Ct. 1138, 1146 (2013).  "One element of the case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue." *Id.* (citations and quotations omitted).  "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* (citations omitted).  Consistent with this purpose, the "standing inquiry" is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Id.*

In order to demonstrate standing, Pisinski must "prove that [s]he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, —U.S.—, 133 S. Ct. 2652, 2661 (2013).  Because Pisinski seeks only forward-looking declaratory and injunctive relief, "past injuries alone are insufficient." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).  "Rather, [Pisinski] must show that [s]he is suffering an ongoing injury or faces an immediate threat of injury." *Id.*  Thus, Pisinski must demonstrate that future injury

32

is "imminent," and "to shift injury from conjectural to imminent [she] must show that there is a substantial probability of injury." *Chamber of Commerce v. E.P.A.*, 642 F.3d 192, 201 (D.C. Cir. 2011) (internal quotations and alterations omitted). Finally, Pisinski "bears the burden of establishing her standing—and, at the summary judgment stage, [she] can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts" to carry this burden. *Clapper*, 133 S. Ct. at 1148-49 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

The evidence upon which Pisinski relies does not establish her Article III standing. Pisinski's declaration largely focuses on the possibility that the Bureau's investigation of Morgan Drexen could result in the unauthorized disclosure of her confidential attorney-client communications. *See* Pisinski Decl. ¶¶ 4-10 [JA 71-72]. As the district court correctly recognized, however, this concern was always "illusory." *See* Mem. Op. at 25 [JA 715]. Morgan Drexen was expressly advised that it was not required to produce privileged documents in response to the Bureau's civil investigative demand. *See* 12 C.F.R. § 1080.8; *see also* Shaheen Decl., Ex. 1 at 3, Ex. 2 at 2 [JA 90, 109]. Moreover, because the Bureau's civil investigative demands are not self-enforcing, 12 U.S.C. § 5562(e), there was never a danger that Morgan Drexen would be compelled to produce information subject to a claim of privilege without an adjudication of that claim. Finally, the Bureau's

33

initiation of its lawsuit against Morgan Drexen prevents it from issuing any further

civil investigative demands to Morgan Drexen.  *See* 12 U.S.C. § 5562(c)(1)

(authorizing the Bureau to issue civil investigative demands "*before* the institution

of any proceedings under Federal law" (emphasis added)).  Accordingly, the

district court was correct to hold that Pisinski cannot rely on the Bureau's now-

completed investigation to establish the "ongoing injury or . . . immediate threat of

injury" necessary to seek declaratory and injunctive relief.  *Dearth*, 641 F.3d at

501; s*ee also* Mem. Op. at 25-26 [JA 715-716].

   Not surprisingly, Pisinski no longer presses this argument,[8] but seeks instead

to base her standing on the potential impact to her law practice should the Bureau

prevail in its enforcement action against Morgan Drexen.  *See* Br. 24-28.  She thus

takes on a heavy burden, for when "the plaintiff is not [her]self the object of the

government action or inaction [s]he challenges, standing is not precluded, but it is

ordinarily 'substantially more difficult' to establish."  *Chamber of Commerce*, 642

F.3d at 201 (quoting *Lujan*, 504 U.S. at 562).

---

[8] Indeed, Pisinski appears to have abandoned any argument based on the Bureau's now completed investigation of Morgan Drexen.  Br. 24-25 ("[T]he district court mischaracterized Pisinski's injury by focusing almost exclusively on the threat that CFPB's pre-lawsuit investigation, including CFPB's [civil investigative demand], posed to the attorney-client privilege that protects Pisinski's communications with her clients."). The argument is, therefore, waived.  *See World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1160 (D.C. Cir. 2002) ("As we have said many times before, a party waives its right to challenge a ruling of the district court if it fails to make that challenge in its opening brief.").

Thus, for example, in *Chamber of Commerce*, a trade association of automobile dealers sought to challenge the Environmental Protection Agency's decision to grant California a waiver from federal preemption under the Clean Air Act. *Id.* at 197. The effect of the waiver was to require automobile manufacturers to meet California's more stringent emissions standards when they sold automobiles in that state. *Id.* As here, the dealers themselves were not directly subject to the challenged government action, but asserted an indirect injury based on the governments' regulation of their contractual counterparties—automobile manufacturers. *Id.* at 200-201. This Court held that automobile dealers had failed to "show [the] substantial probability" of injury needed to support their trade association's standing. *Id.*

Like Pisinski, the dealers were required to demonstrate standing through actual evidence, and submitted declarations in an attempt to do so. One dealer's declaration claimed that the effect of the waiver "'*could* limit [the dealer's] ability to deliver certain models to California dealers,' '*may* force [the dealer] to compensate for delivering high-emitting vehicles by delivering more light-weight, low-emission models than the market demands,' and as a consequence '*may* limit [his] ability to obtain and keep in stock a sufficient quantity of the vehicles of the vehicles that [his] customers want or need to buy.'" *Id.* at 201 (emphasis in original). Another dealer submitted a similar declaration stating that the

35

government waiver "'*could* limit [his] ability to maintain the stock that [his]

customers want and expect [him] to have' and 'may limit the ability [of the

manufacturer] to supply [his] dealership with the vehicle stock necessary to meet

consumer demand.'" *Id.* at 202 (emphasis in original). The court found that these

equivocal statements about injury that "'may' occur at some point in the future"

did not establish the kind of "actual, imminent, or 'certainly impending' injury

required to establish standing." *Id*. (quoting *Ctr. for Biological Diversity v. U.S.

Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009)).

Pisinski's averments in support of her standing are not nearly as specific or

concrete as those found insufficient in *Chamber of Commerce*. She states only that

she "contract[s] with Morgan Drexen to provide non-attorney/paralegal services

that support [her] law practice," and that she "supervise[s] Morgan Drexen and

remain[s] responsible for all services delegated to Morgan Drexen." Pisinski Decl.

¶ 3 [JA 71]. She also states that she "depend[s] on Morgan Drexen to assist [her]

in providing [her] clients with high quality and relatively low cost legal services."

*Id.* ¶ 10 [JA 73]. These statements fail to demonstrate a "substantial probability"

that the Bureau's lawsuit against Morgan Drexen will injure her.

As an initial matter, she does not state that the services on which she relies

are the allegedly unlawful up-front fees and deceptive statements at issue in the

Bureau's enforcement action. *See* Complaint, *Consumer Financial Protection*

36

*Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal. Aug. 20, 2013) [JA

415-19].  This omission alone is sufficient to defeat her standing.  *Cf.* Order

Denying Pisinski's Motion to Intervene, *Consumer Financial Protection Bureau v.*

*Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal. Mar. 10, 2014) (denying

Pisinski's motion to intervene to protect her contractual relationship because

"Pisinski's declaration does not assert that she is a party to either type of contract"

at issue in the Bureau's enforcement action).  But, even if she had demonstrated

this predicate fact, her standing would still founder because she has "provided no

evidence that she will be unable to find a substitute for Morgan Drexen's services"

if the Bureau prevails in its enforcement action and is awarded injunctive relief.

Mem. Op. at 28 [JA 718].[9]  Accordingly, "Pisinski has not even made the most

basic allegation that her business will suffer or her costs will increase in the

absence of Morgan Drexen's services."  *Id.*

      Pisinski has also failed to demonstrate that the Bureau is the cause of her

harm, or that the extraordinary relief she requests, if granted, would remedy her

alleged injury.  As is generally the case when a plaintiff seeks to base its standing

on the government's regulation of a third party, Pisinski must "carry 'the burden of

adducing facts showing that those third-part[ies'] choices . . . will be made in such

---

[9] Indeed, as the district court noted, the evidence suggests that there are other
companies providing services that compete with those provided by Morgan
Drexen.  *See id.* (citing Ledda Decl. ¶ 10(a) [JA 67]).

37

manner to produce causation and permit redressability.'" *Chamber of Commerce*, 642 F.3d at 201 (quoting *Ctr. for Biological Diversity*, 563 F.3d at 477). But Pisinski has not shown that the existence of the Bureau—as opposed to the independent existence of the Telemarketing Sales Rule, or the law's prohibition on deceptive acts or practices—is likely to cause Morgan Drexen (and all of its competitors) to act in a manner that harms Pisinski's business. *See, e.g., Clapper*, 133 S.Ct. at 1149 (denying standing to challenge the constitutionality of a statute, in part, because the alleged future harm could also be caused by some other unchallenged statutory authority).[10]

For similar reasons, Pisinski has not demonstrated a substantial probability that the extraordinary relief she requests—an injunction preventing the Bureau from prosecuting its case—will redress her concern that she might be deprived of Morgan Drexen's services. Such an injunction would not prevent some other law enforcement agency from seeking to enjoin Morgan Drexen's allegedly unlawful behavior, nor would it prevent Morgan Drexen from choosing to stop the practices that the Bureau alleges are unlawful. *See Chamber of Commerce*, 642 F.3d at 205 ("[P]etitioners have offered . . . no evidence that, if the waiver were vacated, Ford

---

[10] The Telemarketing Sales Rule was issued by the Federal Trade Commission on August 10, 2010, and is also enforceable by the both the FTC and State Attorneys General. *See* 75 Fed. Reg. 48458 (Aug. 10, 2010); 15 U.S.C. §§ 6103, 6105. Further, deceptive acts in or affecting commerce have long been illegal. *See* 15 U.S.C. 45(a).

would proceed on a different course more favorable to the petitioners.").
Accordingly, for all these reasons, the district court did not err when it held that
Pisinski lacks standing.

Pisinski's attempts to find fault with the district court's opinion are
meritless.  First, there is no basis for her argument that the district court failed to
consider the relevant evidence.  Br. at 20-22.  The district court carefully
considered the statements contained in Pisinski's declaration, as well as other
relevant statements contained in the declarations of Walter Ledda and Randal
Shaheen, and considered them within the context of the Bureau's enforcement
action against Morgan Drexen.  Mem. Op. at 25-29 [JA 715-719].  Further, none of
the additional evidence cited by Pisinski for the first time in this Court addresses
the deficiencies in her standing identified by the district court, nor does Pisinski
argue otherwise. S*ee* Br. at 21 (citing JA 114-17, 120, 143-48, 318-35).[11]

---

[11] Pisinski's argument that the allegations of the complaint should be deemed
admitted, Br. 21, has no basis in the law.  The Bureau was not required to answer
the complaint, *see* Fed. R. Civ. P. 12(a)(4), and therefore its failure to do so cannot
be deemed an admission of any of the complaint's allegations.  *See* Fed. R. Civ. P.
8(b)(6) ("If a responsive pleading is not required, an allegation is considered
denied or avoided.").  Further, Pisinski lacks standing because she has failed to
point to "specific facts" in the evidence demonstrating injury, causation, and
redressability.  Had she done so, they would be "taken as true."  *Lujan*, 504 U.S. at
561.  As a result, whether the Bureau disputed any fact contained in plaintiffs'
statement of undisputed facts, Br. 21, is irrelevant.

Second, the district court did not err by "appl[ying] an impermissible legal test" to determine Pisinski's standing.  Br. 22.  In fact, in holding that the statements in Pisinski's declaration were "far too speculative to support standing," Mem. Op. at 28 [JA 718], the Court expressly relied on the well-established proposition that a "'substantial probability' of injury [is] required to establish [plaintiffs'] standing."  *Id.* (quoting *Chamber of Commerce*, 642 F.3d at 201).  This was not error.  *See, e.g., Americans for Safe Access v. Drug Enforcement Agency*, 706 F.3d 438, 443 (D.C. Cir. 2013) ("'[Plaintiff's] burden of proof is to show a 'substantial probability' that it has been injured, that the defendant caused its injury, and that the court could redress that injury.'") (quoting *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002)); *LaRoque v. Holder*, 650 F.3d 777, 788 (D.C. Cir. 2011) (same).

Pisinski does not cite any relevant cases to support her assertion that the district court erred.  Instead, she cites a number of this Court's precedents that, aside from being about standing generally, bear little similarity to the facts of this case.  For example, in *Natural Resources Def. Council v. E.P.A.*, 464 F.3d 1 (D.C. Cir. 2006), this Court held that a "statistical analysis" showing that "two to four of NRDC's nearly half a million members will develop cancer as a result of the [challenged] rule" was sufficient to demonstrate standing.  *Id.*  In *Dynalantic Corp. v. Dept. of Defense*, 115 F.3d 1012 (D.C. Cir. 1997), the Court permitted the

40

plaintiff, who was prevented from bidding on certain government contracts by a program that set aside contracting opportunities for socially and economically disadvantaged groups, to challenge the constitutionality of the program. *Id.* at 1018. Likewise, in *Sherley v. Sebelius*, 610 F.3d 69 (D.C. Cir. 2010), the Court addressed (at the pleading stage) the doctrine of competitor standing, which permits a plaintiff to challenge government action if he can show that it caused "an actual or imminent increase in competition." *Id.* at 71-74. And, in *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798 (D.C. Cir. 1985), the Court found that the union had standing to challenge the allegedly unlawful issuance of visas to foreign laborers on the basis of specific allegations that foreign laborers had been admitted to perform work that would otherwise have gone to union members. *Id.* at 802-803.[12] None of these cases support, or even concern, the proposition that an individual has standing to challenge the constitutionality of an agency simply because that agency is engaged in litigation with their contractual counterparty. Accordingly, the district court did not err by declining to "premise a drastic expansion of standing doctrine on three unelaborated sentences in Pisinski's declaration." Mem. Op. at 28 [JA 718].

---

[12] The Seventh Circuit's decision in *Abbott v. Lockhead Martin Corp.*, 725 F.3d 803 (7th Cir. 2013), which concerned a plan participant's standing to challenge the alleged mismanagement of a retirement fund in which he was invested, is equally inapposite.

Third, Pisinski's argument that "the district court mischaracterized [her] injury" by focusing on the impact of the Bureau's investigation simply ignores a significant portion of the district court's decision.  Br. 24-25.  The district court did address Pisinski's argument based on the Bureau's investigation, finding (as noted above) that such injury was "illusory."  Mem. Op. at 25 [JA 715].  But it also addressed at length her argument for an "additional, much broader basis for standing"—that the Bureau was "'threatening her client confidentiality, regulating her practice, investigating (and now suing) her paralegal, and alleging that what her paralegal (Morgan Drexen) is doing to assist her in the practice of law is somehow unlawful.'"  Mem. Op. at 26 [JA 716] (quoting Pls.' MTD Opp'n at 15 [JA 575]).  As explained above, the district court properly found that these assertions in "Pisinski's declaration provide[] an inadequate basis" to establish standing.  *See* Mem. Op. at 26-29 [JA 716-719].

Further, that Pisinski's motion to intervene was denied in the California district court hardly supports her standing in this Court.  Br. 26.  Indeed, although based on a different record, the California district court denied Pisinski's motion to intervene for reasons similar to those underlying the district court's ruling on standing at issue here: that "Pisinski's bare statement that she contracts" with Morgan Drexen did not demonstrate that she had a contractual right that might be impaired by the Bureau's enforcement action, and that Pisinski failed to

"establish[] a relationship between her [economic] interest and [the Bureau's] lawsuit."  *See* Order Denying Pisinski's Motion to Intervene, *Consumer Financial Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal. Mar. 10, 2014).  Pisinski's concern that this ruling has left her "without a federal courtroom to raise fundamental and serious constitutional issues in which she has a direct and keen interest," Br. 26, even if true, is not a basis for reversing the district court: "For there to be . . .  a case or controversy, it is not enough that the party invoking the power of the court have a keen interest in the issue. That party must also have 'standing.'"  *Hollingsworth*, 133 S.Ct. at 2659.

Fourth, the district court did not fail to consider Pisinski's status as a lawyer, or the *evidence* concerning the nature of her relationship with Morgan Drexen.  In fact, the district court correctly observed that "*nothing* in the record beyond the conclusory statements contained in Plaintiffs' declarations even establishes that the relationship between Morgan Drexen and the attorneys it contracts with is akin to that between a paralegal and an attorney."  Mem. Op. at 29 [JA 719].  Thus, as the district court noted, "[a]side from the mere invocation of the term 'paralegal,' Pisinski never even describes the services for which she relies on Morgan Drexen for assistance, much less the injury that would be inflicted upon her from the deprivation of these services."  *Id.*

43

Fifth, and finally, the district court did not "side[] with [the] CFPB on the merits by finding that [the] CFPB was not really regulating Pisinski."  Br. at 28 (citing Mem. Op. at 27 n.8 [JA 717]).  In the cited footnote, the district court addressed the statement contained in Randall Shaheen's declaration that the Bureau's attorneys had "informed [him] that their concern is that the attorneys supported by Morgan Drexen are in violation of the amended Telemarketing Sales Rule because the attorneys charge their clients hourly fees for the preparation of bankruptcy pleadings."  Mem. Op. at 27 n. 8 [JA 717] (citing Shaheen Decl. ¶ 43 [JA 83]).  The district court noted that the statement was unsupported by any factual evidence, and that the Bureau's past expression of "concern," even if true, did not demonstrate "certainly impending" injury to Pisinski.  *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  The district court did not decide (or even address) the merits of the constitutional issue (or any other merits issue) in the footnote.  Pisinski's straw man argument is, therefore, beside the point.

Accordingly, for all of these reasons, the Court should affirm the district court's holding that Kimberly Pisinski has not established her standing to invoke the jurisdiction of a federal court.

**IV.    If the Court finds that the district court committed reversible error, it should remand to the district court**

As explained above, the district court properly dismissed the complaint without reaching the merits.  If, however, the Court finds that the district court erred in any respect, it should follow its "general rule" and remand this matter to the district court for further proceedings without reaching the merits of the constitutional issue.  *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 (2008) (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)).  Although the Court has discretion to reach issues not passed upon by the district court, *id.*, reaching the constitutional issue here would be premature, particularly in light of the well-established principle that courts should avoid the adjudication of difficult constitutional questions when doing so is potentially unnecessary.  *See generally Ashwander v. TVA*, 297 U.S. 288, 341-56 (1936) (Brandeis, J., concurring).

If, for example, this Court determines that the district court abused its discretion by finding that Morgan Drexen was not entitled to declaratory or injunctive relief, it should nonetheless remand to the district court to determine whether the decision of the California district court is res judicata.  "The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues."  *I.A.M. Nat'l Pension Fund Benefit Plan A v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1982).  "Under the issue preclusion aspect of res

judicata, a final judgment on the merits in a prior suit precludes subsequent relitigation of issues actually litigated and determined in the prior suit, regardless of whether the subsequent suit is based on the same cause of action." *Id.* at 947 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)); *see also Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 334 (D.C. Cir. 2011). In ruling on Morgan Drexen's motion to dismiss, the California district court squarely rejected the same constitutional issue presented here.

Although that case has not yet been finally resolved, the question whether a decision is final for purposes of issue preclusion is not the same as whether a decision is final for purposes of appeal under 28 U.S.C. § 1291. *See, e.g.,* Restatement (Second) Judgments § 13 ("[F]or purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."). Accordingly, courts have held that another district court's denial of a motion to dismiss is sufficiently final to be given preclusive effect. *See, e.g., Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 393-94 (7th Cir. 1986). Although this Court has discretion to affirm the district court's dismissal on this alternative ground, the most appropriate course of action is to remand to the district court for a ruling in the first instance. *See Doe v.*

46

*DiGenova*, 779 F.2d 74, 89 (D.C. Cir. 1985) (discussing the general rule that an issue not fully briefed should be presented in the first instance to the district court).

Likewise, if the Court determines that the district court erred by finding that Pisinski lacks Article III standing, it should remand to the district court to determine "in the first instance" whether Pisinski is entitled to declaratory or injunctive relief. *See Medimmune*, 549 U.S. at 136 ("'[F]acts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within [the district court's] grasp.'") (quoting *Wilton*, 515 U.S. at 289); *Salazar v. Buono*, 559 U.S. 700, 722 (2010) (noting that the "highly fact-specific" inquiry into whether equitable relief is justified "is best left to the District Court . . . in the first instance."). Because the district court found that Pisinski lacked standing, it did not reach this issue. If necessary, the district court should resolve that issue in the first instance. If, however, the Court finds that the district court committed reversible error and declines to remand, the district court's opinion should be affirmed on the alternative ground that Pisinski has not demonstrated the irreparable injury or other prerequisites for obtaining declaratory or injunctive relief.

## V.    In Any Event, the Bureau's Structure is Constitutional

If, despite all of these reasons for affirming the district court's decision (or, at a minimum, remanding the case to the district court), the Court reaches the

47

merits of the constitutional question, it should find that Congress did not violate

separation-of-powers principles when it created the Bureau.[13]

As the Supreme Court has explained, separation of powers' "basic principle"

is that "one branch of the Government may not intrude upon the central

prerogatives of another." *Loving v. United States*, 517 U.S. 748, 757 (1996).  A

branch may not "arrogate power to itself" or "impair another in the performance of

its constitutional duties." *Id.*  The Bureau's structural features—alone and in

combination—comply with these basic principles:  The legislative, executive, and

judicial branches all remain able to perform their constitutional duties.  *See* Order

Denying Defendants' Motion to Dismiss, *Consumer Financial Protection Bureau*

*v. Morgan Drexen*, No. 8:13-cv-01267 (C.D. Cal. Jan. 10, 2014).

### A.    Congress Has Not Unconstitutionally Abdicated Its Authority

The Appropriations Clause provides that "No Money shall be drawn from

the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const.

art. I, § 9, cl. 7.  Plaintiffs contend, without citation to any supporting authority,

---

[13] Plaintiffs also contend for the first time on appeal that the provisions creating the Bureau also violate the Due Process Clause of the Fifth and Fourteenth Amendments.  Br. at 44-45.  Because they did not raise this claim in the district court, it is waived.  *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984) ("It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal.").  And, in any event, Plaintiffs' claim that the Bureau's lack of a multimember commission violates due process finds no support in any precedent.

that Congress violated this provision by funding the Bureau outside of the annual

appropriations process.  Br. 39-41; *see also* 12 U.S.C. § 5497 (providing funding

for the Bureau outside of the annual appropriations process).  This argument is

untenable.  The Appropriations Clause is meant simply "to assure that public funds

will be spent according to the letter of the difficult judgments reached by Congress

as to the common good and not according to the individual favor of Government

agents."  *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 428 (1990).  It is

accordingly "not a restriction on Congress, but on the Executive Branch."  *AINS,*

*Inc. v. United States*, 56 Fed. Cl. 522, 539 (Fed. Cl. 2003) (citing *Cincinnati Soap*

*Co. v. United States*, 301 U.S. 308, 321 (1937)).

  As a result, the Appropriations "[C]lause is not self-defining and Congress

has *plenary power* to give meaning to the provision."  *Harrington v. Bush*, 553

F.2d 190, 194 (D.C. Cir. 1977) (emphasis added) (citing *Hart's Case*, 16 Ct. Cl.

459, 484 (1880), *aff'd* 118 U.S. 62 (1886)); *see also U.S. Dep't of Navy v. Fed.*

*Labor Relations Auth.*, 665 F.3d 1339, 1348 (D.C. Cir. 2012) ("Congress's control

over federal expenditures is absolute.").  Nothing in the Constitution requires

Congress to fund agencies through annual appropriations bills.  Courts accordingly

have recognized that Congress may exercise its appropriations power as it sees

fit—including by authorizing an agency to obtain and use funds from a specified

source "without first appropriating the funds as it does in typical appropriation and

49

supplemental appropriation acts.  *AINS*, 56 Fed. Cl. at 539; *see also Am. Fed'n of Gov't Employees, AFL-CIO v. Fed. Labor Relations Auth.*, 388 F.3d 405, 409 (3d Cir. 2004) (explaining that "Congress may . . . decide not to finance a federal entity with appropriations," but rather through some other funding mechanism); *cf. Cincinnati Soap*, 301 U.S. at 313 (approving statute directing particular revenues to be used for a particular purpose, without annual appropriations).  Accordingly, Plaintiffs' Appropriations Clause challenge is meritless.

### B. Congress Has Not Encroached Upon the Authority of the President

The Constitution vests the Executive Power in the President and requires that he "take care that the Laws be faithfully executed."  U.S. Const. art. II, §§ 1, 3. Plaintiffs contend that the provision of the Dodd-Frank Act that provides that the "President may remove the Director for inefficiency, neglect of duty, or malfeasance in office," 12 U.S.C. § 5491(c)(3), violates these constitutional commands.  Br. 38.  Supreme Court precedent forecloses this contention.  The Supreme Court has long recognized, and recently reaffirmed, that Congress may create independent agencies run by officers "whom the President may not remove at will but only for good cause."  *Free Enter. Fund*, 130 S. Ct. at 3143 (citing *Humphrey's Executor v. United States*, 295 U.S. 602 (1935)).  Indeed, in *Humphrey's Executor*, the Supreme Court upheld an identical provision restricting

the President's ability to remove Federal Trade Commission commissioners.  295

U.S. at 620.

Morgan Drexen suggests that *Myers v. United States*, 272 U.S. 52 (1926),

rather than these precedents, controls here, because the Bureau is not headed by a

multimember commission.  This falls wide of the mark.  As an initial matter, the

Supreme Court has emphasized that "the only issue actually decided in *Myers*" was

that the particular removal restriction for a postmaster was unconstitutional—and

has "expressly disapproved" that case to the extent that it is "'out of harmony'"

with *Humphrey's Executor*.  *Morrison v. Olson*, 487 U.S. 654, 687 n.24 (1988)

(quoting *Humphrey's Executor*, 295 U.S. at 626).  And *Humphrey's Executor*

demonstrates that the Bureau Director's for-cause removal protection is

constitutional.  Nothing in *Humphrey's Executor* makes the FTC's leadership

structure a relevant factor in the constitutional analysis.  *See Humphrey's Executor*,

295 U.S. at 626-32.  Instead, the Court approved the removal protections in light of

the functions that the commissioners performed.  *Id.* at 628; *see also Morrison*, 487

U.S. at 691.  The Bureau Director exercises the same kinds of functions as the FTC

commissioners:  He "carr[ies] into effect legislative policies embodied in the

statute in accordance with the legislative standard therein prescribed," including by

"making investigations and reports" and adjudicating enforcement actions.  *See*

51

*Humphrey's Executor*, 295 U.S. at 628.  The Court's approval of for-cause removal restrictions in *Humphrey's Executor* therefore applies with full force here.

Moreover, Plaintiffs never articulate how the Bureau's single-Director leadership has any effect on the President's ability to perform his constitutional duties.  Indeed, as the California district court recently recognized, given that the President can just as easily remove a single agency head for "inefficiency, neglect of duty, or malfeasance" as he could members of a commission, there is no reason a commission structure would better protect the President's ability to perform his constitutional functions.  *See* Order Denying Defendants' Motion to Dismiss at 7-8, *Consumer Financial Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal. Jan. 10, 2014).  Accordingly, Congress has not unconstitutionally encroached upon the President's authority by making the Director of the Bureau removable for cause.

### C.      Congress Has Not Encroached on the Judicial Power

Finally, contrary to Plaintiffs' contention, Br. 39, the Dodd-Frank Act does not intrude on the power of the courts.  Morgan Drexen objects to a Dodd-Frank Act provision directing courts to apply deference to Bureau interpretations of Federal consumer financial law "as if the Bureau were the only agency authorized to apply, enforce, interpret, or administer" that law, 12 U.S.C. § 5512(b)(4)(B).  According to Morgan Drexen, this impermissibly overrides courts' ordinary

52

practice of declining to apply *Chevron* deference to a single agency's interpretation
of a statute that multiple agencies share responsibility for administering.  Br. 39.

This objection turns *Chevron* on its head.  *Chevron*'s premise is that
Congress—not the courts—controls who has authority to interpret a statute.
Courts thus apply *Chevron* deference to an agency's interpretations when it
appears that Congress intended to delegate interpretative authority to that agency.
*Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 740-41 (1996) (explaining
that courts apply *Chevron* "because of a presumption that Congress, when it left
ambiguity in a statute meant for implementation by an agency, understood that the
ambiguity would be resolved, first and foremost, by the agency, and desired the
agency (rather than the courts) to possess whatever degree of discretion the
ambiguity allows."  (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837, 843-44 (1984)).  When multiple agencies share authority to
administer a statute, courts generally decline to apply *Chevron* not because
deference is somehow constitutionally inappropriate, but because they presume
that Congress did not intend to grant interpretive authority to any one agency.  *See
Salleh v. Christopher*, 85 F.3d 689, 692 (D.C. Cir. 1996) ("In such cases, it cannot
be said that Congress implicitly delegated to one agency authority to reconcile
ambiguities or to fill gaps, because more than one agency will independently
interpret the statute.").  Here, Congress simply replaced that general presumption

53

with an express statement that it intended to vest interpretive authority over

Federal consumer financial law in the Bureau.

Morgan Drexen's contention that, in so doing, Congress impermissibly

prescribed a "rule of decision" to the courts, in violation of the principles set forth

in *United States v. Klein*, 80 U.S. 128 (1871), is baseless.  Br. at 39.  As this Court

has recently explained, "*Klein* applies where Congress prescribes the outcome of the

pending litigation, by means other than amending the applicable law."  *Janko v.*

*Gates*, 741 F.3d 136, 146 (D.C. Cir. 2014) (internal citations and emphasis

omitted).  The Dodd-Frank Act's provision on deference does not prescribe the

outcome of any case, affect any pending litigation, or have any effect by means

other than amending applicable law.  It therefore does not violate this precedent or

otherwise impede the judiciary's powers.

### D.    Plaintiffs' Policy Arguments Should be Directed to the Political Branches

The remainder of Plaintiffs' "constitutional" arguments are entirely divorced

from the actual text of the Constitution or the precedent governing its

interpretation.  *Cf.* Order Denying Defendants' Motion to Dismiss at 13, *Consumer*

*Financial Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D.

Cal. Jan. 10, 2014) ("Defendants raise other concerns with the structure of the

CFPB, but their concerns are not tied to any particular constitutional provision.").

For example, Plaintiffs argue that the Bureau's rules should be subject to pre-

promulgation review by the Office of Information and Regulatory Affairs under

Executive Order 12866, and that Congress erred when it decided to provide the

Bureau with a measure of independent litigating authority (like most independent

agencies), and to put one person rather than a commission at the head of the

Bureau.  *See* Br. at 35-38, 42-45.  These are not legal arguments; they are policy

arguments.  But the separation of powers doctrine is not a basis for courts to

second-guess the policy judgments of Congress or of the President.  Indeed, it

forbids doing so.  *See, e.g., 14 Penn. Plaza LLC v. Pyett*, 556 U.S. 247, 270 (2009)

("Absent a constitutional barrier, it is not for us to substitute our view of . . . policy

for the legislation which has been passed by Congress.").

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be

affirmed.

Respectfully submitted,

 s/ John Coleman
MEREDITH FUCHS
*General Counsel*
TO-QUYEN TRUONG
*Deputy General Counsel*
JOHN COLEMAN
*Senior Litigation Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552

55

202-435-7254

April 16, 2014                          john.coleman@cfpb.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman style and font size 14. This brief contains 12,825 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Date: 04/16/2014                                        s/ John Coleman

                                                        John Coleman

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2014, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.  I further certify that I caused the required copies of the Brief of Appellees brief to be hand filed with the Clerk of the Court.

s/ John Coleman

John Coleman

# ADDENDUM

Pertinent Statutes and Regulations............................................................... 1

Order Denying Defendants' Motion to Dismiss, *Consumer Financial Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal. Jan. 10, 2014) .... 2

Scheduling Order, *Consumer Financial Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal. Jan. 10, 2014)........................................................ 21

Order, *Consumer Financial Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal. Feb. 24, 2014)................................................................... 23

Order Denying Pisinski's Motion to Intervene, *Consumer Financial Protection Bureau v. Morgan Drexen, Inc.*, No. 8:13-cv-01267 (C.D. Cal. Mar. 10, 2014) . 29

Except for the following, all pertinent statutes and regulations are contained in the Addendum to the Brief for the Appellants:

**28 U.S.C. 2201**

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

(b) For limitations on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act, or section 351 of the Public Health Service Act.

1

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10

11   CONSUMER FINANCIAL PROTECTION          CASE NO. SACV 13-1267-JLS (JEMx)
     BUREAU,
12

13              Plaintiff,                  **ORDER DENYING DEFENDANTS'**
                                            **MOTION TO DISMISS**
14         vs.

15

16   MORGAN DREXEN, INC., ET AL.,

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

1    Before the Court is a Motion to Dismiss ("Motion") filed by Defendants Morgan

2    Drexen, Inc. ("Morgan Drexen") and Walter Ledda.  (Doc. 22.)  Plaintiff Consumer

3    Financial Protection Bureau ("CFPB") filed an Opposition, and Defendants replied.

4    (Opp'n, Doc. 25; Reply, Doc. 27.)  Having considered the papers and supporting

5    documentation submitted by the parties, heard oral argument, and taken the matter under

6    submission, the Court DENIES Defendants' Motion.

7

8    **I.    BACKGROUND**

9         **A. The CFPB**

10        In 2010, Congress passed and the President signed into law the Dodd-Frank Wall

11   Street Reform and Consumer Protection Act ("Dodd-Frank Act").  Pub. L. No. 111-203,

12   July 21, 2010.  The Dodd-Frank Act created the CFPB as an independent agency in the

13   Federal Reserve System, and tasked the agency with "regulat[ing] the offering and

14   provision of consumer financial products or services under the Federal consumer financial

15   laws."  12 U.S.C. § 5491(a).  Those laws include 18 pre-existing consumer-protection

16   statutes and Title X of the Dodd-Frank Act.  *Id.* § 5481(14), (12).  Title X prohibits a

17   "covered person" or "service provider" from engaging in any "unfair, deceptive, or abusive

18   act or practice."  *Id.* §§ 5531(a), 5536(a)(1).

19        The CFPB is led by a Director, who is appointed to a five-year term by the

20   President with the advice and consent of the Senate.  *Id.* § 5491(a)-(b).  The President may

21   remove the Director only "for inefficiency, neglect of duty, or malfeasance in office."  *Id.*

22   § 5491(c)(3).  The CFPB receives its funding from the earnings of the Federal Reserve

23   System.  *Id.* § 5497(a)(1).  Each year, the CFPB receives the amount the Director

24   determines to be reasonably necessary to carry out the responsibilities of the CFPB.  *Id.* §

25   5497(a)(1).  The allocation is capped at a percentage of the total operating expenses of the

26   Federal Reserve in 2009—12% for 2013 and thereafter, adjusted for inflation.  *Id.* §

27   5497(a)(2).

28

1   The CFPB is empowered to promulgate rules to implement the federal consumer

2   financial laws, and to enforce those laws through investigation, adjudication, and the

3   commencement of civil litigation.  *Id.* §§ 5512, 5531(b), 5561-5565.  Pursuant to its

4   enforcement powers, the CFPB commenced the present action against Defendants on

5   August 20, 2013.  (Compl., Doc. 1.)

6

7        **B.  The Complaint**

8   Defendant Morgan Drexen is a Nevada corporation offering debt relief services.

9   (*Id.* ¶ 5.)[1]  Defendant Walter Ledda is the President and CEO of Morgan Drexen.  (Compl.

10  ¶ 6.)  Morgan Drexen employs the "Attorney Model" of debt relief services.  (*Id.* ¶ 8.)

11  Under this model, a consumer contracts with an attorney affiliated with Morgan Drexen for

12  debt relief services, but Morgan Drexen, not the attorney, actually performs the debt relief

13  work and receives the majority of the fees.  (*Id.*)

14  Morgan Drexen advertises debt relief services through television commercials,

15  radio advertisements, and the internet.  (*Id.* ¶ 15.)  In its commercials, Morgan Drexen

16  claims it can help consumers eliminate their debt through debt relief programs supported

17  by attorneys.  (*Id.* ¶ 17.)  Morgan Drexen's commercials also claim that the advertised

18  services require no up-front fees, and are a way for consumers to avoid bankruptcy.  (*Id.* ¶¶

19  19-20.)

20  When a consumer calls Morgan Drexen, the consumer often hears a recorded

21  testimonial that emphasizes the benefits of avoiding bankruptcy.  (*Id.* ¶ 27.)  One

22  testimonial recites, "I thought I was going to have to claim bankruptcy, but I really didn't

23  want to do that, so I decided to take a chance on the program I saw advertised. . . . I'm debt

24  free now."  (*Id.* ¶ 27.)  After Morgan Drexen obtains information about a consumer's

25  income and debt, the consumer is transferred to a "Legal Intake Specialist."  (*Id.* ¶ 29.)

26  _____

27  [1] When ruling on a motion to dismiss, the Court accepts as true the factual allegations in the
    complaint.  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 5 (2010).

28

**4**

1   The Legal Intake Specialist follows a script when speaking with the consumer.  (*Id.* ¶ 29.)

2   The script states that Morgan Drexen will work with an attorney to allow the consumer "to

3   pay back the debt at a reduced amount, without the scar of filing for bankruptcy."  (*Id.*)

4            As the final step of an intake call, a Morgan Drexen employee asks the consumer to

5   access a web portal and electronically sign two contracts, an Attorney/Client Agreement –

6   Debt Resolution Representation ("Debt Relief Contract") and an Attorney/Client

7   Bankruptcy Fee Agreement ("Bankruptcy Contract").  (*Id.* ¶ 34.)  Most consumers contact

8   Morgan Drexen to inquire about debt relief services, not bankruptcy related services.  (*Id.*

9   ¶ 55.)  Nevertheless, the vast majority of customers seeking debt relief services sign both

10  the Debt Relief Contract and the Bankruptcy Contract.  (*Id.* ¶ 37.)

11           These contracts are four or five pages long, contain many legal terms, and are

12  written in small, single spaced font.  (*Id.* ¶ 35.)  The Debt Relief Contract does not require

13  the payment of up-front fees, but the Bankruptcy Contract requires an engagement fee of

14  between $1,000 and $1,500, a $450 bankruptcy filing fee, and a flat monthly servicing fee

15  of $50.  (*Id.* ¶¶ 41, 48.)  The Debt Relief Contract commits an attorney affiliated with

16  Morgan Drexen to represent the consumer in attempting to settle the consumer's debt.

17  However, Morgan Drexen, not an attorney, "performs virtually all of the debt resolution

18  work."  (*Id.* ¶ 42.)  When Morgan Drexen reaches a settlement with a creditor, it emails an

19  attorney, who must choose one of four options, "cancel," "accept," "accept without

20  comments," or "deny."  (*Id.* ¶ 45.)  If the attorney does not respond within 24 hours, the

21  proposal is automatically deemed approved.  (*Id.* ¶ 45.)

22           The Bankruptcy Contract limits an attorney affiliated with Morgan Drexen to

23  counseling the consumer with respect to preparation for possibly filing a bankruptcy

24  petition, and with respect to pre- and post-filing claims by creditors.  (*Id.* ¶ 50.)  Morgan

25  Drexen and affiliated attorneys rarely perform any bankruptcy-related work for consumers.

26  (*Id.* ¶ 60.)

27           Based on these and other allegations, the Complaint asserts six counts, four for

28  violations of both the Telemarketing Sales Rule ("TSR"), 16. C.F.R. § 310, and the

**5**

Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5531, 5536(a)(1) (counts 1-4), and two solely for violations of the CFPA (counts 5-6).  (Compl. at 15-19.)

## II.   DISCUSSION

### A. Whether the CFPB is Constitutional

Defendants argue that the Complaint must be dismissed because the CFPB is unconstitutional.  (Defs' Mem. at 3-4, Doc. 22-1.)  Specifically, Defendants argue that five structural features of the CFPB, in combination, render the agency unconstitutional under the separation of powers principles of Articles I, II, and III:

(1) The President may remove the Director of the CFPB only for cause (12 U.S.C. § 5491(c)(3));

(2) The CFPB is led by a Director, not a multi-member commission (*id.* § 5491(b)(1));

(3) The CFPB is funded from the earnings of the Federal Reserve System, and not by regular congressional appropriations (*id.* § 5497(a)(1));

(4) The CFPB may take action to prevent "unfair, deceptive, or abusive act[s] or practice[s] under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service" (*id.* § 5531(a)); and

(5) The CFPB's interpretations of federal consumer financial laws are afforded deference as if the CFPB were the only agency authorized to interpret those laws (*id.* § 5512(b)(4)(B)).  (*See* Defs' Mem. at 6-21.)

 "Our Constitution divided the 'powers of the new Federal Government into three defined categories, Legislative, Executive, and Judicial.'" *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 3146 (2010) (quoting *I.N.S. v. Chadha*, 462 U.S. 919, 951 (1983)).  The Court addresses the structure of the CFPB in relation to each of these categories of constitutionally defined powers.

**1. Executive Power**

Article II provides that "executive Power shall be vested in a President," who "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1, § 3. "[T]he Constitution provides for executive officers to 'assist the supreme Magistrate in discharging the duties of his trust,'" and also "empower[s] the President to keep these officers accountable—by removing them from office, if necessary." *Free Enter. Fund*, 130 S. Ct. at 3146 (quoting 30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939)). This authority is not unlimited, however, and "Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause." *Free Enter. Fund*, 130 S. Ct. at 3146-47.

Defendants assert that the Dodd-Frank Act impermissibly restricts the President's executive power by providing for removal of the Director of the CFPB only for cause. (Defs' Mem. at 8.) Defendants rely principally on *Myers v. United States*, 272 U.S. 52 (1926). (Defs' Mem. at 8.) In *Myers*, the Supreme Court invalidated a statutory provision that provided for removal of a postmaster only with the advice and consent of the Senate. 272 U.S. at 107, 176.

Not long after *Myers*, however, the Court revisited congressional restrictions on the President's removal power in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). There, the Court held that a provision allowing for removal of a commissioner of the Federal Trade Commission ("FTC") only for "inefficiency, neglect of duty, or malfeasance" did not unconstitutionally interfere with the executive power of the President. *Id.* at 619, 632. *Humphrey's Executor* is controlling in this case. Then as now, the FTC was empowered to prevent "unfair methods of competition in commerce." *Id.* at 620. In order to carry out this responsibility, the FTC had the power to investigate, adjudicate, and enforce the prohibition on unfair competition. *Id.* at 620-21. Despite these powers over commercial activity, the Court upheld a provision allowing for removal of commissioners only for "inefficiency, neglect of duty, or malfeasance." *Id.* at 619, 632.

1   Similarly, here, the Director of the CFPB may be removed by the President "for

2   inefficiency, neglect of duty, or malfeasance," 12 U.S.C. § 5491(c)(3), and the President

3   therefore retains ample authority to assure the Director is competently leading the CFPB in

4   its mission to enforce federal consumer financial laws.

5        Defendants argue that *Humphrey's Executor* is distinguishable because the case

6   concerned removal of FTC commissioners.  (Reply at 13.)  Courts, Defendants contend,

7   "only tolerate[] the incursion on the President's removal power . . . where there is a

8   multimember commission."  (Defs' Mem. at 17.)[2]  Defendants' contention, however, finds

9   no support in *Humphrey's Executor*.  Significantly, *Humphrey's Executor* did not

10  distinguish *Myers* on the basis that *Myers* involved an officer, not a commission.  *See*

11  *Humphrey's Executor*, 295 U.S. at 627-28.  Instead, the Court distinguished *Myers* on the

12  basis that the postmaster there was performing "executive functions," while the FTC "is an

13  administrative body created by Congress to carry into effect legislative policies embodied

14  in the statute in accordance with the legislative standard therein prescribed, and to perform

15  other specified duties as a legislative or as a judicial aid."  *Id.* at 628.   The CFPB

16  Director's responsibilities and powers are far more similar to an FTC commissioner's than

17  to a postmaster's.  Moreover, "the real question is whether the removal restrictions are of

18  such a nature that they impede the President's ability to perform his constitutional duty."

19  *Morrison v. Olson*, 487 U.S. 654, 691 (1988).  It is no more difficult for the President to

20  assure that the Director of the CFPB is "competently performing his or her statutory

21  responsibilities," *id.* at 692, than it was for the President to oversee the leadership of the

22  _____

23  [2] Defendants also argue that it is historically unprecedented for an agency with as much
    responsibility as the CFPB to be led by a director removable only for cause.  (Defs' Mem. at 11.)
24  The CFPB, however, is not the first instance in which Congress has placed an agency with
    substantial responsibilities under the leadership of a single individual removable only for cause.
25  *See* 42 U.S.C. § 902(a) (Commissioner of Social Security Administration removable only for
    cause); 12 U.S.C. § 4512(a)-(b) (Director of Federal Housing Finance Agency removable only for
26  cause).  Moreover, even if no direct analogue of the CFPB has existed before, "[o]ur constitutional
    principles of separated powers are not violated . . . by mere anomaly or innovation."  *Mistretta v.*
27  *United States*, 488 U.S. 361, 385 (1989).

28

1   FTC at the time of *Humphrey's Executor*.  In fact, if the President had needed to fully

2   revamp the leadership of the FTC at that time, he would have been required to affect five

3   separate for cause removals, while only one is required in order to change the leadership of

4   the CFPB.[3]  Accordingly, the for cause removal provision of the CFPB, when considered

5   as a part of the CFPB's overall structure and mission, does not impermissibly interfere

6   with the President's power to assure that the laws be faithfully executed.

7        In a footnote, Defendants argue that two other other provisions of the Dodd-Frank

8   Act interfere with the President's executive power.  (Defs' Mem. at 8-9.)  First, Defendants

9   argue that Section 1012(b) allows the Director to "simply delegate all of his massive

10  powers to any one he chooses," and thereby "undermines the President's power to appoint

11  and remove executive officials."  (*Id.*)  Defendants, however, fail to identify any actual

12  delegation by the Director that purportedly interferes with the President's executive power.

13  Section 1012(b), moreover, does not allow the Director to delegate his leadership role, but

14  only allows the Director to "delegate . . . any power vested *in the Bureau* by law."  12

15  U.S.C. § 5492(b) (emphasis added).  This section neither alters the Director's role as head

16  the CFPB, nor lessens the President's authority to assure, by removing the Director for

17  cause if necessary, that the CFPB is competently accomplishing its statutory mission.

18       Second, Defendants argue that Congress has improperly appointed officers to the

19  Financial Stability Oversight Council ("FSOC") by providing that certain existing

20  executive branch officers are members of the FSOC.  (Defs' Mem. at 9 (citing 12 U.S.C. §

21  5321).)  The FSOC and the CFPB are separate entities with distinct missions.  *Compare* 12

22  U.S.C. §§ 5321-22 (FSOC tasked with, among other things, "identifying risks to the

23  financial stability of the United States."), *with* 12 U.S.C. § 5491.  Even if this Court were

24  to find that the FSOC is unconstitutional, it would not prevent the CFPB from bringing the

25

26  [3] Then as now, the FTC was led by five members, each of which could be removed only for good
    cause.  *Humphrey's Executor,* 295 U.S. at 619-620.  The FTC commissioners, moreover, served
27  staggered, seven year terms, while the Director of the CFPB serves only a five year term.
    *Compare id.*, *with* 12 U.S.C. § 5491(c).
28

1    present action against Defendants.  *See Free Enterprise Fund*, 130 S. Ct. at 3161

2    ("Because [t]he unconstitutionality of a part of an Act does not necessarily defeat or affect

3    the validity of its remaining provisions, the normal rule is that partial, rather than facial,

4    invalidation is the required course." (internal citations and quotation marks omitted)).  The

5    Court therefore need not, and does not, consider the constitutionality of the FSOC.

6           In sum, the Court concludes that the structure of the CFPB, considered as a whole,

7    does not impermissibly interfere with the President's executive power.

8                              **2.  Congressional Power**

9                         **i.  Appropriations Power**

10          The Constitution provides that "[n]o Money shall be drawn from the Treasury, but

11   in Consequence of Appropriations made by Law."  U.S. Const. art. I, § 9, cl. 7.  According

12   to Defendants, the Dodd-Frank Act impermissibly "exempts CFPB from the congressional

13   appropriations power."  (Defs' Mem. at 9.)  Defendants are mistaken.  The Supreme Court

14   has "underscore[d] the straightforward and explicit command of the Appropriations

15   Clause. 'It means simply that no money can be paid out of the Treasury unless it has been

16   appropriated by an act of Congress.'"  *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414,

17   424 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)).

18          Here, no funds have been appropriated from the Treasury, as the CFPB is funded

19   from the earnings of the Federal Reserve System.  *See* 12 U.S.C. § 5497.  The

20   Appropriations Clause "does not in any way circumscribe Congress from creating self-

21   financing programs . . . without first appropriating the funds as it does in typical

22   appropriation and supplement appropriation acts."  *AINS, Inc. v. United States*, 56 Fed. Cl.

23   522, 539 (Fed. Cl. 2003), *aff'd*, 365 F.3d 1333 (Fed. Cir. 2004), *abrogated on other*

24   *grounds by Slattery v. United States*, 635 F.3d 1298 (Fed. Cir. 2011).  *See also Am. Fed'n*

25   *of Gov't Employees, AFL-CIO, Local 1647 v. Fed. Labor Relations Auth.*, 388 F.3d 405,

26   409 (3d Cir. 2004) (Congress itself may choose . . . to loosen its own reins on public

27   expenditure. . . . Congress may also decide not to finance a federal entity with

28

**10**

1    appropriations.").  The Court therefore concludes that the structure of the CFPB does not

2    violate the Appropriations Clause.

3                              **ii.   Legislative Power**

4        "Article I, § 1, of the Constitution vests '[a]ll legislative Powers herein granted  . . .

5    in a Congress of the United States.'  This text permits no delegation of those powers."

6    *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 472 (2001) (quoting U.S. Const. art.

7    I, § 9, cl. 7).  As a result, "when Congress confers decisionmaking authority upon agencies

8    *Congress* must 'lay down by legislative act an intelligible principle to which the person or

9    body authorized to [act] is directed to conform.'"  *Id.* at 472 (quoting *J.W. Hampton, Jr., &*

10   *Co. v. United States*, 276 U.S. 394, 409 (1928)).

11       Defendants raise concerns with the CFPB's authority to enforce the prohibition on

12   "abusive" practices.  (Defs' Mem. at 19.)   The Dodd-Frank Act, however, contains an

13   intelligible principle to guide the CFPB's power to prevent "abusive" practices.  The

14   Dodd-Frank Act defines "abusive" as either "materially interfer[ing] with the ability of a

15   consumer to understand a term or condition of a consumer financial product or service" or

16   "tak[ing] unreasonable advantage of -- (A) a lack of understanding on the part of the

17   consumer of the material risks, costs, or conditions of the product or service; (B) the

18   inability of the consumer to protect the interests of the consumer in selecting or using a

19   consumer financial product or service; or (C) the reasonable reliance by the consumer on a

20   covered person to act in the interests of the consumer."  12 U.S.C. § 5531(d).  This

21   standard is at least as specific as other provisions held to constitute "intelligible

22   principles."  *See, e.g., Yakus v. United States*, 321 U.S. 414, 420, 426-27 (1944) (approving

23   agency's power to fix maximum commodity prices that "will be generally fair and

24   equitable and will effectuate the purposes of th[e] Act" (quotation marks omitted)); *Am.*

25   *Power & Light Co. v. S.E.C.*, 329 U.S. 90, 104-06 (1946) (approving the Securities and

26   Exchange Commission's power to "ensure that the corporate structure or continued

27   existence of any company in a particular holding company system does not 'unduly or

28

10

**11**

1   unnecessarily complicate the structure' or 'unfairly or inequitably distribute voting power
2   among security holders.'").

3          Defendants contend that the "CFPB's lack of structural protection cannot be
4   reconciled with its broad delegation of power."  (Defs' Mem. at 20.)  It is true that "the
5   degree of agency discretion that is acceptable varies according to the scope of the power
6   congressionally conferred."  *Whitman*, 531 U.S. at 474.  In *Whitman*, the Supreme Court
7   noted that Congress was required to "provide [the Environmental Protection Agency]
8   substantial guidance on setting air standards that affect the entire national economy."  *Id.* at
9   475.  "*But even in sweeping regulatory schemes* [the Supreme Court] ha[s] never
10  demanded . . . that statutes provide a 'determinate criterion' for saying 'how much [of the
11  regulated harm] is too much.'"  *Id.* at 475 (emphasis added) (final alteration in original)
12  (quoting Court of Appeals decision in *American Trucking Associations, Inc. v. E.P.A.*, 175
13  F.3d 1027, 1034 (D.C. Cir. 1999), which the Supreme Court reversed in *Whitman*).  Here,
14  the Dodd-Frank Act provides an intelligible principle suitable to the CFPB's power to
15  enforce the prohibition on "abusive" practices.  As described above, an "abusive" practice
16  is specifically limited to four circumstances, each of which specifies the type of harm to be
17  prevented.  *See* 12 U.S.C. § 5531(d).  No more "determinate criterion" is required.
18  Consequently, the CFPB's power to regulate "abusive" practices does not violate the
19  Constitution's prohibition on the delegation of legislative power.[4]

20                    **3.  Judicial Power**

21         "The judicial Power of the United States, shall be vested in one supreme Court, and
22  in such inferior Courts as the Congress may from time to time ordain and establish."  U.S.
23  Const. art. III, § 1.  Defendants contend that the Dodd-Frank Act intrudes on the power of
24  the courts by improperly limiting judicial review of CFPB actions.  (Defs' Mem. at 18-19.)

25  _____

26  [4] In their Reply, Defendants contend that the "novel structure" of the CFPB requires a "renewed
    analysis" of the principle of non-delegation.  (Reply at 19.)  To the extent Defendants are arguing
27  that more than an "intelligible principle" is required with respect to the CFPB, the Court simply
    notes that it is bound to apply the standard articulated by the Supreme Court in *Whitman*.
28

**12**

1    The Dodd-Frank Act provides that where the authority of the CFPB and another

2    agency to prescribe rules under the federal consumer financial laws overlap, the CFPB

3    "shall have the exclusive authority to prescribe rules."  12 U.S.C. § 5512(b)(4)(A).  The

4    Dodd-Frank Act further provides that "the deference that a court affords to the [CFPB]

5    with respect to a determination by the [CFPB] regarding the meaning or interpretation of

6    any provision of a Federal consumer financial law shall be applied as if the [CFPB] were

7    the only agency authorized to apply, enforce, interpret, or administer the provisions of such

8    Federal consumer financial law."  *Id.* § 5512(b)(4)(B).  Defendants argue that the latter

9    provision impermissibly provides a rule of decision to the federal courts by requiring

10   *Chevron* deference to CFPB rulemaking even where the CFPB is not entitled to such

11   deference.  (Defs' Mem. at 19.)

12   Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc*, "[i]f

13   Congress has explicitly left a gap for the agency to fill, there is an express delegation of

14   authority to the agency to elucidate a specific provision of the statute by regulation.  Such

15   legislative regulations are given controlling weight unless they are arbitrary, capricious, or

16   manifestly contrary to the statute."  467 U.S. 837, 843-44 (1984).  However, an agency's

17   interpretation of a statute may not be entitled to deference where multiple agencies

18   "share[] responsibility for the administration of the statute."  *Rapaport v. U.S. Dep't of

19   Treasury, Office of Thrift Supervision*, 59 F.3d 212, 216 (D.C. Cir. 1995).  According to

20   Defendants, the Dodd-Frank Act treads on judicial power by overriding this rule with

21   respect to the CFPB's interpretations.

22   Defendants are mistaken.  There is no contradiction between *Rapaport* and the

23   Dodd-Frank Act's requirement that CFPB interpretations of federal consumer financial

24   laws be granted deference as if the CFPB was the only agency authorized to interpret those

25   laws.  As noted above, the CFPB's rulemaking authority under the federal consumer

26   financial laws is exclusive, and therefore there is no interagency responsibility.  Moreover,

27   *Chevron* deference is inappropriate in cases of interagency responsibility only because

28   there is no "reason to believe that the congressional delegation of administrative authority

**13**

1   contemplates" the sort of contradictory results that could arise if *Chevron* deference were

2   accorded in such cases.  *Id.* at 217.  In other words, deference is not owed in such cases

3   only because Congress did not "explicitly le[ave] a gap for the agency to fill."  *Chevron*,

4   467 U.S. at 843.  Where Congress has explicitly granted an agency rulemaking authority,

5   that agency's rules are entitled to deference.  *Id.*  Here, Congress' intent to grant the CFPB

6   exclusive authority to interpret the federal consumer financial laws is clear, and it is

7   entirely consistent with Article III for courts to defer to CFPB interpretations in the manner

8   contemplated by *Chevron*.[5]

9                              **4.  Other Considerations**

10         Defendants raise other concerns with the structure of the CFPB, but their concerns

11  are not tied to any particular constitutional provision.  Defendants, for example, contend

12  that Congress' decision to put one person rather than a multi-member commission at the

13  head of the CFPB places too much power in the hands of single individual.  (Defs' Mem.

14  at 14.)  In support, Defendants cite to *Hamdan v. Rumsfeld* for the proposition that "'[t]he

15  accumulation of all powers legislative, executive and judiciary in the same hands . . . may

16  justly be pronounced the very definition of tyranny.'"  548 U.S. 557, 602 (2006) (quoting

17  The Federalist No. 47, p. 324 (J. Cooke ed. 1961) (J. Madison)).  The quotation appears in

18  a section of Justice Stevens' decision that was not joined by a majority of the Court and

19  that concerned whether a military commission could charge "conspiracy" under the

20  common law of war even though Congress had not positively identified "conspiracy" as a

21  war crime.  *Id.* at 600-02.  Justice Stevens determined that "[w]hen . . . neither the

22  _____

23  [5] Defendants also contend that Congress' decision to place a director, rather than a multi-member
    commission, at the head of the CFPB impedes judicial review.  (Defs' Mem. at 15.)
24  Commissions, Defendants contend, allow for minority viewpoints, which aid in the process of
    judicial review.  (*Id.*)  Defendants, however, have no authority for the proposition that Congress
25  was required to place a commission at the head of the CFPB in order to facilitate judicial review,
    particularly since Congress has the authority to entirely preclude judicial review of agency actions,
26  at least where there is no constitutional challenge at issue.  *See Campbell v. Office of Pers. Mgmt.*,
27  694 F.2d 305, 307 (3d Cir. 1982) ("Congress does have the power to preclude judicial review of
    non-constitutional challenges to agency actions.").

28

**14**

1    elements of the offense nor the range of permissible punishments is defined by statute or

2    treaty, the precedent must be plain and unambiguous.  To demand any less would be to risk

3    concentrating in military hands a degree of adjudicative and punitive power in excess of

4    that contemplated either by statute or by the Constitution."  *Id.*  The quotation upon which

5    Defendants rely appears in a parenthetical in support of this conclusion.  The quotation,

6    however, provides no support for Defendants' claim that Congress acted impermissibly in

7    placing a director at the head of the CFPB.  Congress has not granted to the CFPB or its

8    Director authority to manufacture charges without authorization from a statute or

9    precedent.  Rather, Congress has provided that the Director will lead the CFPB in

10   enforcing the federal consumer financial laws, and will do so under the authority of the

11   President to remove the Director for cause.

12        Defendants also argue that multi-member commissions allow for "collegial

13   decisionmaking," open public meetings, and "expert" decisions, and are therefore better

14   equipped to head agencies with substantial responsibilities such as the CFPB.  (Defs'

15   Mem. at 14-18.)  However, absent some constitutional basis, this Court simply does not

16   have the authority to second guess Congress' policy determination that a single director,

17   rather than a commission, is the best choice to head the CFPB.

18        Finally, Defendants point out, correctly, that "'[j]ust because two structural features

19   raise no constitutional concerns independently does not mean Congress may combine them

20   in a single statute.'"  (Defs' Mem. at 5 (quoting *Ass'n of Am. Railroads v. U.S. Dep't of

21   Transp.,* 721 F.3d 666, 673 (D.C. Cir. 2013)).  This principle does not, however, mandate a

22   conclusion that the CFPB is unconstitutional.  Having considered the combined features of

23   the CFPB, and for the reasons described above, the Court concludes that the CFPB

24   complies with the separation of powers principles contained in Articles I, II, and III of the

25   Constitution.

26

27

28

**B.  Whether the CFPB Has Stated a Claim**

**1.  Legal Standard**

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all allegations of material facts that are in the complaint and must construe all inferences in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [it] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

In considering a motion to dismiss, the Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable, and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds in Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

**2.  Counts I and III for Violation of the TSR**

The TSR prohibits a seller or telemarketer from "[r]equesting or receiving payment of any fee or consideration for any debt relief service until . . . [t]he seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer" and "[t]he customer has made at least one payment"

**16**

pursuant to such agreement, plan, or contract.  16 C.F.R. § 310.4(a)(5)(i).  The TSR also prohibits a seller or telemarketer from "[m]isrepresenting, directly or by implication, in the sale of goods or services . . . [a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer" or "[a]ny material aspect of any debt relief service."  *Id.* § 310.3(a)(2).

Count I of the Complaint asserts that Defendants requested and received payment for debt relief services before renegotiating, settling, reducing, or otherwise altering the terms of a consumer's debt.  (Compl. ¶ 75.)  Count III asserts that Defendants represented that consumers are not charged any advance fee for debt relief services, but in fact charged advance fees.  (Compl. ¶¶ 81-82.)  Defendants move to dismiss both counts for violation of the TSR on the basis that the Debt Relief Contract does not require the payment of up-front fees.  (Defs' Mem. at 22.)

In its Complaint, Plaintiff does allege that consumers are not obligated to pay any up-front fees under the Debt Relief Contract.  (Compl. ¶ 41.)  Consumers are, however, obligated to pay up-front fees under the Bankruptcy Contract.  (*Id.* ¶ 48.)  According to the Complaint, by using both contracts, Defendants "disguise consumers' up-front payments for debt relief services provided by Morgan Drexen as payments for bankruptcy-related work purportedly performed by . . . [a]ttorneys."  (*Id.* ¶ 14.)

The FTC, which promulgated the Telemarketing Sales Rule, justified the ban on advance fees for debt relief services in part on the context in which debt relief services are often offered.  *See* 75 FR 48458.  The FTC noted that debt relief services "frequently take place in the context of high pressure sales tactics, contracts of adhesion, and deception." *Id.*  Moreover, some "telemarketers of debt relief services have exhorted consumers to fill out the enrollment documents and return the papers as quickly as possible," despite the inclusion of contractual provisions that were potentially detrimental to the interests of consumers.  *Id.*  Given these concerns, the TSR cannot be so narrowly construed as to allow a debt relief service to disguise up-front fees using deceptive sales techniques and complicated contractual arrangements.  The Court, therefore, will look at the transactions

alleged in the Complaint in their entirety in determining whether the Complaint plausibly suggests that Defendants requested and received up-front fees for debt relief work.

According to the Complaint, Morgan Drexen advertises debt relief services, and specifically touts its services as a method for avoiding filing for bankruptcy.  (Compl. ¶¶ 15-22.)  When consumers call Morgan Drexen, they are again told of the benefits of debt relief services over bankruptcy.  (*Id.* ¶¶ 23-30.)  Nevertheless, when consumers sign up for debt relief services, they are asked to access a web portal and sign the Debt Relief Contract and the Bankruptcy Contract, both of which are four or five pages long, written in small font, and single spaced.  (*Id.* ¶¶ 34-35.)  The vast majority of consumers sign both contracts.  (*Id.* ¶ 37.)  Though Morgan Drexen performs debt relief work for consumers, little or no bankruptcy work is performed.  (*Id.* ¶¶ 42, 49-50.)  Nevertheless, the Bankruptcy Contract requires an engagement fee of between $1,000 and $1,500 and a flat monthly servicing charge of $50.  (*Id.* ¶ 48.)  Drawing all inferences in Plaintiff's favor, these allegations plausibly suggest that Defendants request and receive up-front payments not for bankruptcy work, but for debt relief work.  Defendants' challenge to counts I and III for violation of the TSR must therefore be rejected.

### 3.  Counts I, III, IV, V, and VI for Violation of the CFPA

The CFPB is not authorized, subject to certain exceptions, to "exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law."  12 U.S.C. § 5517(e)(1).  This limitation does not apply to the "offering or provision of a consumer financial product or service . . . that is not offered or provided as part of, or incidental to, the practice of law, occurring exclusively within the scope of the attorney-client relationship" or "that is otherwise offered or provided by the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or service."  *Id.* § 5517(e)(2).  An exception also exists "with respect to any attorney, to the extent that such attorney is otherwise subject to any of the enumerated consumer laws or the authorities transferred

1  under subtitle F or H." *Id.* § 5517(e)(3).  Defendants admit that Plaintiff's alleged TSR

2  violations fit under this last exception.  (Defs' Mem. at 23.)

3       Defendants contend that the CFPB has no authority to assert counts I, III, IV, V,

4  and VI to the extent they are based on the CFPA because Morgan Drexen offers services as

5  an "attorney support professional."  (*Id*. at 23-25.)  The Complaint, however, alleges facts

6  which plausibly suggest that Morgan Drexen is not engaged in activities in support of an

7  attorney as part of the practice of law.

8       According to the Complaint, "Morgan Drexen, not [an attorney], performs virtually

9  all of the debt resolution work" for a consumer.  (Compl. ¶ 42.)  Morgan Drexen,

10  moreover, directs creditors not to communicate with those attorneys associated with

11  Morgan Drexen.  (*Id.*)  When Morgan Drexen has negotiated a settlement on behalf of a

12  consumer, an attorney need not even respond to the settlement proposal before it is

13  automatically deemed approved.  (*Id.* ¶ 45.)  Construing all inferences in Plaintiff's favor,

14  these allegations plausibly suggest that Morgan Drexen does not actually support attorneys

15  in the practice of law.  At the very least, these allegations plausibly suggest that Morgan

16  Drexen's services are not offered as part of, or incidental to, the practice of law.  The Court

17  therefore concludes that the CFPB has the authority to assert counts I, III, IV, V, and VI.

         **4.   Tenth Amendment**

18

19       Defendants contend that this action should be dismissed because the CFPB is

20  attempting to intrude upon the practice of law in violation of the Tenth Amendment.

21  (Reply at 25.)

22       The Tenth Amendment provides that "[t]he powers not delegated to the United

23  States by the Constitution, nor prohibited by it to the States, are reserved to the States

24  respectively, or to the people."  U.S. Const. amend. X.  As the Supreme Court has

25  explained, "the Tenth Amendment 'states but a truism that all is retained which has not

26  been surrendered.'"  *New York v. United States*, 505 U.S. 144, 156 (1992) (quoting *United*

27  *States v. Darby*, 312 U.S. 100, 124 (1941)).  As a result, a violation of the Tenth

28  Amendment cannot be derived from the text of the Tenth Amendment itself:

**19**

1        The Tenth Amendment . . . restrains the power of Congress, but this limit is

2        not derived from the text of the Tenth Amendment itself, which . . . is

3        essentially a tautology.  Instead, the Tenth Amendment confirms that the

4        power of the Federal Government is subject to limits that may, in a given

5        instance, reserve power to the States.  The Tenth Amendment thus directs [a

6        court] to determine . . . whether an incident of state sovereignty is protected

7        by a limitation on an Article I power.

8  *Id.* 156-57.  Because Defendants do not contend that the Dodd-Frank Act exceeds

9  Congress' power under the Commerce Clause of Article I, their Tenth Amendment

10  challenge fails.

11

12  **III.**    **CONCLUSION**

13        For the reasons discussed above, the Court DENIES Defendants' Motion.

14

15

16

17  DATED: January 10, 2014       _____
                                     JOSEPHINE L. STATON

18                                   JOSEPHINE L. STATON
                           UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.  SACV 13-01267-JLS (JEMx)                    Date:  January 10, 2014
Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

Present: **The Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

   Terry Guerrero                                           N/A
Deputy Clerk                                          Court Reporter

Attorneys Present for Plaintiff:                 Attorneys Present for Defendant:

Not Present                                           Not Present

**Proceedings:**          **(In Chambers) SCHEDULING ORDER**

On the Court's own motion, the Scheduling Conference set for hearing on January 17, 2014, is VACATED and taken off calendar, and the following dates are set.  Counsel's attention is directed to the Court's Civil Trial Order filed concurrently with this Minute Order.  Generally, motions should be set for hearing on the Court's first available date.  Counsel is advised that the Court does not stay discovery pending a ruling on a motion to dismiss.

| | |
|---|---|
| Last Day to File a Motion to Add Parties and Amend Pleadings: | March 18, 2014 |
| Fact Discovery Cut-off: | August 1, 2014 |
| Last Day to Serve Initial Expert Reports: | August 15, 2014 |
| Last Day to File Motions (including *Daubert* motions; excluding Motions in Limine): | August 15, 2014 |
| Last Day to File Rebuttal Expert Reports: | September 12, 2014 |
| Last Day to Conduct Settlement Proceedings: | October 3, 2014 |
| Expert Discovery Cut-off: | October 10, 2014 |
| Last Day to File Motions in Limine (excluding *Daubert* motions): | October 24, 2014 |
| Final Pretrial Conference (1:30 p.m.): | November 21, 2014 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-01267-JLS (JEMx)                    Date:  January 10, 2014

Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

Last Day to File Proposed Findings of
Fact and Conclusions of Law:                          December 5, 2014

Exhibit Conference (3:30 p.m.):                       December 5, 2014

Bench Trial (9:00 a.m.):                              December 9, 2014

Trial Estimate:                                       10 days


                                                     Initials of Preparer:   JR

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                       Date:  February 24, 2014
Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

  Terry Guerrero                                              N/A
     Deputy Clerk                                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                         Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER DENYING (1) DEFENDANTS'
MOTION TO CERTIFY ORDER FOR INTERLOCUTORY
APPEAL; (2) DEFENDANTS' MOTION TO STAY CASE
PENDING APPEAL; AND (3) DEFENDANTS' MOTION FOR
PRELIMINARY INJUNCTION (Docs. 32, 33, 44)**

Before the Court are three Motions filed by Defendants Morgan Drexen, Inc. and
Walter Ledda: (1) a Motion to Certify Order for Interlocutory Appeal (MTC, Doc. 44);
(2) a Motion to Stay Case Pending Appeal (MTS, Doc. 32); and (3) a Motion for
Preliminary Injunction (MPI, Doc. 33).[1]  The Court finds these matters appropriate for
decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. The hearing on
the Motions, scheduled for February 28, 2014, at 2:30 p.m., is therefore VACATED.  For
the reasons stated below, the Court DENIES Defendants' Motions.

## I.      Background

On August 20, 2013, Plaintiff Consumer Financial Protection Bureau ("CFPB")
filed this action against Defendants asserting six counts, four for violations of both the
Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310, and the Consumer Financial
Protection Act ("CFPA"), 12 U.S.C. §§ 5531, 5536(a)(1) (counts 1-4), and two solely for
violations of the CFPA (counts 5-6).  (Compl. at 15-19, Doc. 1.)

---

[1] Plaintiff Consumer Financial Protection Bureau filed an Opposition to each of the Motions, and
Defendants replied.  (MTC Opp'n, Doc. 56; MTS Opp'n, Doc. 46; MPI Opp'n, Doc. 48; MTC
Reply, Doc. 57; MTS Reply, Doc. 52; MPI Reply, Doc. 53.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                          Date:  February 24, 2014
Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

On October 25, 2013, Defendants filed a Motion to Dismiss arguing, among other
things, that the CFPB is unconstitutional.  (Defs' MTD Mem. at 3-4, Doc. 22-1.)
Specifically, Defendants argued that five structural features of the CFPB render the
agency unconstitutional under the separation of powers principles of Articles I, II, and
III:

(1) The President may remove the Director of the CFPB only for cause (12 U.S.C.  §
    5491(c)(3));

(2) The CFPB is led by a Director, not a multi-member commission (*id.*
    § 5491(b)(1));

(3) The CFPB is funded from the earnings of the Federal Reserve System, and not
    by regular congressional appropriations (*id.* § 5497(a)(1));

(4) The CFPB may take action to prevent "unfair, deceptive, or abusive act[s] or
    practice[s] under Federal law in connection with any transaction with a
    consumer for a consumer financial product or service, or the offering of a
    consumer financial product or service" (*id.* § 5531(a)); and

(5) The CFPB's interpretations of federal consumer financial laws are afforded
    deference as if the CFPB were the only agency authorized to interpret those laws
    (*id.* § 5512(b)(4)(B)).  (*See* Defs' MTD Mem. at 6-21.)

On January 3, 2014, while the Motion to Dismiss was under submission,
Defendants filed their Motion to Stay and Motion for Preliminary Injunction.  The
Motion to Stay asks the Court to stay this action pending the Court's ruling on the
CFPB's constitutionality and the conclusion of any appeals from that ruling.  (MTS at 1.)
The Motion for Preliminary Injunction asks the Court to enjoin the CFPB from
prosecuting this action pending the Court's ruling on the CFPB's constitutionality and the
conclusion of any appeals from that ruling.  (MPI at 1.)

On January 10, 2014, the Court issued an Order denying Defendants' Motion to
Dismiss.  (Order, Doc. 40.)  In the Order, the Court considered the features of the CFPB
identified by Defendants, and concluded that they were consistent with the Constitution's
vesting of executive power in the President, appropriations and legislative powers in the
Congress, and judicial power in the federal courts.  (Order at 6-13.)  On January 21,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                    Date:  February 24, 2014
Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

2014, Defendants filed their Motion to Certify asking the Court to certify the Order for
interlocutory appeal pursuant to 28 U.S.C. § 1292.  (MTC at 1.)

## II.      Legal Standard — Motion to Certify Order for Interlocutory Appeal

28 U.S.C. § 1292(b) "provides a mechanism by which litigants can bring an
immediate appeal of a non-final order upon the consent of both the district court and the
court of appeals."  *In re Cement Antitrust Litig*., 673 F.2d 1020, 1025-26 (9th Cir. 1982).
A district court may certify such an interlocutory appeal where the order (1) "involves a
controlling question of law," (2) "as to which there is substantial ground for difference of
opinion," and (3) "an immediate appeal from the order may materially advance the
ultimate termination of the litigation."  28 U.S.C. § 1292(b).   Each of the three
certification requirements must be met for an order to be appropriate for interlocutory
review.  *See Couch v. Telescope Inc*., 611 F.3d 629, 633 (9th Cir. 2010) (denying
certification under §1292(b) where defendant failed to establish substantial ground for
difference of opinion); *In re Cement Antitrust Litig*., 673 F.2d at 1026.
"The party seeking review bears the burden of showing that 'exceptional
circumstances justify a departure from the basic policy of postponing appellate review
until after the entry of a final judgment.'"  *Ass'n of Irritated Residents v. Fred Schakel
Dairy*, 634 F. Supp. 2d 1081, 1087 (E.D. Cal. 2008) (quotation marks omitted) (quoting
*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

## III.     Discussion — Motion to Certify Order for Interlocutory Appeal

Defendants argue that the Court's determination in the Order that the CFPB is
constitutional satisfies each of the requirements of § 1292(b).  (Defs' MTC Mem. at 1,
Doc. 44-1.)  However, for the reasons discussed below, the Court concludes that
Defendants have failed to carry their burden as to the second prong of § 1292(b) by
establishing substantial grounds for a difference of opinion as to the constitutionality of
the CFPB.[2]

---
[2] As a result, the Court will not address the other prongs of § 1292(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                          Date:  February 24, 2014

Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

        "A substantial ground for difference of opinion exists . . . . when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions . . . ." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  However, a substantial ground for difference of opinion that will support interlocutory review does not exist "just because a court is the first to rule on a particular question," "a party[] strong[ly] disagree[s] with the Court's ruling," or "settled law might be applied differently."  *Couch*, 611 F.3d at 633 (quotation marks omitted).  "It is well settled that the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion."  *Id.* at 634 (quotation marks omitted).

        Defendants argue that the issue of the CFPB's constitutionality presents novel legal questions on which reasonable judges could disagree.  (Defs' MTC Mem. at 10.)  In support, Defendants assert that "11 state attorneys general, Members of Congress, organizations such as the Chamber of Commerce, and scholars have advanced the same concerns and challenges to the constitutionality of the CFPB's novel structure."  (*Id.*)  The question is not, however, whether a contrary argument has been advanced; it is whether the substance of that argument raises a substantial ground for difference of opinion.  That question depends on "to what extent the controlling law is unclear."  *Couch*, 611 F.3d at 633.

         In the Order, the Court analyzed the structure of the CFPB under Supreme Court precedent.  (*See* Order at 6-14 (citing, *e.g., Humphrey's Executor v. United States*, 295 U.S. 602 (1935); *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990); *Whitman v. Am. Trucking Associa*tions, 531 U.S. 457 (2001)).)  Defendants assert that these cases "do not justify [the] CFPB's unique structure."  (MTC Reply at 6.)  Defendants have not, however, demonstrated that the structure of the CFPB is unique in a way that raises a substantial ground for disagreement as to its constitutionality under these Supreme Court decisions.

        For example, in the Order, the Court relied on *Humphrey's Executor* in finding constitutional a provision allowing removal of the CFPB's director by the President only for cause.  (Order at 6-8.)  In *Humphrey's Executor*, the Supreme Court held that a provision allowing for removal of a commissioner of the Federal Trade Commission

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                          Date:  February 24, 2014
Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

("FTC") only for cause did not unconstitutionally interfere with the executive power of
the President.  295 U.S. at 619, 632.  Defendants assert that *Humphrey's Executor* is
distinguishable because the case "involve[d] the FTC, a federal agency that is (a) subject
to appropriations oversight; and (b) makes decisions according to the deliberation and
vote of a five-member bipartisan commission."  (MTC Reply at 6.)  Defendants,
however, have not carried their burden of demonstrating that these differences give rise to
a substantial ground for disagreement as to the applicability of *Humphrey's Executor* to
the CFPB.  First, Supreme Court precedent makes clear that the lack of appropriations
oversight is permissible.  (*See* Order at 9-10 (citing *Office of Pers. Mgmt.*, 496 U.S. at
424).)  Second, Defendants have not explained how a reasonable jurist could find that a
single director removable only for cause is less accountable to the President than a
commission with each commissioner removable only for cause.

    In sum, the Court concludes that Defendants have failed to demonstrate how the
Supreme Court decisions the Court applied in the Order leave room for a "*substantial
ground for difference of opinion*," 28 U.S.C. § 1292(b) (emphasis added), as to the
constitutionality of the CFPB.[3]  Defendants' Motion to Certify is therefore DENIED.

**IV.   Motion to Stay and Motion for Preliminary Injunction**

    Defendants' Motion to Stay and Motion for Preliminary Injunction both ask the
Court to suspend further prosecution of this action pending the resolution of Defendants'
Motion to Dismiss, including any available appeals.  Because the Court has issued its
Order on Defendants' Motion to Dismiss and denied Defendants' Motion to Certify the
Order for interlocutory appeal, the Motion to Stay and Motion for Preliminary Injunction
are both DENIED as MOOT.

---

[3] Defendants also argue that "[t]here is an independent basis for the second [prong of § 1292(b)],
namely recent Supreme Court decisions signaling that the structure of new and novel federal
agencies will receive increased judicial scrutiny."  (Defs' MTC Mem. at 10.)  In support,
Defendants cite to *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 130 S.
Ct. 3138 (2010) and Justice Robert's dissent in *City of Arlington v. F.C.C.*, 133 S. Ct. 1863
(2013).  Neither *Free Enterprise Fund* nor *City of Arlington*, however, call into question the
Supreme Court cases the Court relied upon in the Order.

---

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                    Date:  February 24, 2014

Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

**V.      Conclusion**

For the foregoing reasons, Defendants' Motions are DENIED.

Initials of Preparer:  tg

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                    Date:  March 10, 2014
Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

　　Terry Guerrero　                                        　　N/A　
　　Deputy Clerk                                            Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                        Not Present

**PROCEEDINGS:  (IN CHAMBERS)  ORDER DENYING KIMBERLY
                    PISINSKI'S MOTION TO INTERVENE (Doc. 31)**

Before the Court is a Motion to Intervene filed by Kimberly Pisinski.  (Mot., Doc. 31.)  Plaintiff Consumer Financial Protection Bureau ("CFPB") filed an Opposition, and Pisinski replied.  (Opp'n, Doc. 47; Reply, Doc. 51.)  After Pisinski and Defendants waived their appearance at oral argument, the Court vacated the hearing and took the matter under submission.  (Doc. 62.)  Having read and considered the arguments made in the papers, the Court DENIES Pisinski's Motion.

## I.      Background

On August 20, 2013, Plaintiff CFPB filed a Complaint against Defendants Morgan Drexen, Inc. and Walter Ledda.  (Compl., Doc. 1.)  According to the Complaint, Morgan Drexen is a Nevada corporation offering debt relief services, and Walter Ledda is the President and CEO of Morgan Drexen.  (Compl. ¶¶ 5, 6.)  Morgan Drexen advertises its debt relief services through television commercials, radio advertisements, and the internet.  (*Id.* ¶¶ 15-20.)  When a consumer calls Morgan Drexen seeking debt relief services, he or she is asked to electronically sign two contracts, an Attorney/Client Agreement – Debt Resolution Representation ("Debt Relief Contract") and an Attorney/Client Bankruptcy Fee Agreement ("Bankruptcy Contract").  (*Id.* ¶ 34.)  Most consumers contact Morgan Drexen to inquire about debt relief services, not bankruptcy-related services.  (*Id.* ¶ 55.)  Nevertheless, the vast majority of customers seeking debt

_____
**CIVIL MINUTES – GENERAL**                                               1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                         Date:  March 10, 2014

Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

relief services sign both the Debt Relief Contract and the Bankruptcy Contract.  (*Id.*
¶ 37.)

      The Debt Relief Contract does not require the payment of up-front fees, but the
Bankruptcy Contract requires an engagement fee of between $1,000 and $1,500, a $450
bankruptcy filing fee, and a flat monthly servicing fee of $50.  (*Id.* ¶¶ 41, 48.)  The Debt
Relief Contract commits an attorney affiliated with Morgan Drexen to represent the
consumer in attempting to settle the consumer's debt.  (*Id.* ¶ 42.)  However, Morgan
Drexen, not an attorney, "performs virtually all of the debt resolution work."  (*Id.*)  The
Bankruptcy Contract limits an attorney affiliated with Morgan Drexen to counseling the
consumer with respect to preparation for possibly filing a bankruptcy petition, and with
respect to pre- and post-filing claims by creditors.  (*Id.* ¶ 50.)  Morgan Drexen and
affiliated attorneys rarely perform any bankruptcy-related work for consumers.  (*Id.*
¶ 60.)

      Based on these and other allegations, the Complaint asserts six counts against
Defendants, four for violations of both the Telemarketing Sales Rule ("TSR"), 16 C.F.R.
§ 310, and the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5531,
5536(a)(1) (counts 1-4), and two solely for violations of the CFPA (counts 5-6).  (Compl.
at 15-19.)  Defendants are alleged to have violated these statutes by

      (1) requesting or receiving up-front fees for debt relief services (count 1);

      (2) requiring consumers to pay up-front fees into accounts, but failing to hold
         payments in the accounts such that consumers own the funds or allow
         consumers to withdraw from the debt relief program without penalty and
         receive all funds held in the accounts (count 2);

      (3) representing to consumers that they will not be charged advance fees for debt
         relief services, but in fact charging such fees (counts 3 and 5); and

      (4) representing that consumers who enroll in Morgan Drexen's program will
         become debt free in months, when in fact consumers do not become debt free
         in months (counts 4 and 6).  (*Id.*)

      Kimberly Pisinski is an attorney who assists her clients and their families with
their financial struggles by providing bankruptcy and debt settlement counseling.
(Pisinski Decl. ¶¶ 3-4, Doc. 31-3.)  Pisinski contracts with Morgan Drexen to provide

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                    Date:  March 10, 2014

Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

paralegal services and other non-attorney services that support her practice.  (*Id.* ¶ 5.)
According to Pisinski, "[o]utsourcing certain routine nonlegal tasks to Morgan Drexen
permits [her] to provide clients with high quality but affordable legal services."  (*Id.*)

## II.      Legal Standard — Intervention as a Matter of Right

     "[I]ntervention is the requisite method for a nonparty to become a party to a
lawsuit."  *U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 933
(2009).  Intervention as a matter of right is governed by Federal Rule of Civil Procedure
24(a).  Under the Rule, unless an applicant has an unconditional right to intervene under a
federal statute, the applicant must satisfy each of the following requirements of Rule
24(a)(2):

     "(1) [T]he [applicant's] motion must be timely; (2) the applicant must have
     a significantly protectable interest relating to the property or transaction
     which is the subject of the action; (3) the applicant must be so situated that
     the disposition of the action may as a practical matter impair or impede its
     ability to protect that interest; and (4) the applicant's interest must be
     inadequately represented by the parties to the action."

*Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011)
(alterations in original) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d
436, 440 (9th Cir. 2006) (quotation marks omitted)).  *See also* Fed. R. Civ. P. 24(a)(2).
Rule 24(a)(2) is construed "broadly in favor of proposed intervenors."  *Wilderness Soc'y
v. United States Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quotation marks
omitted).  However, "the applicant bears the burden of showing that each of the four
elements is met."  *Freedom from Religion Found., Inc.*, 644 F.3d at 841. "Failure to
satisfy any one of the requirements is fatal to the application, and [the Court] need not
reach the remaining elements if one of the elements is not satisfied."  *Perry v.
Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                    Date:  March 10, 2014
Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

## III.   Discussion — Intervention as a Matter of Right

In her Motion, Pisinski identifies three interests she asserts are implicated by this action.  (Mot. at 4-5.)  Pisinski argues that (1) she "has a contractual relationship with Morgan Drexen;" (2) if the Court were to grant the remedy CFPB seeks, it "would have a direct adverse economic effect on Pisinski's business;" and (3) the CFPB's allegations "implicate the conduct of attorneys supported by Morgan Drexen," such as Pisinski.  (Mot at 5.)  Additionally, in her declaration, Pisinski expresses concern that Morgan Drexen will seek discovery of documents she received from her clients that are protected by attorney-client privilege.  (Pisinski Decl. ¶¶ 9-10.)  The Court considers each of the interests identified by Pisinski in turn to determine whether Pisinski has satisfied Rule 24(a)(2).

### A.  Contractual Relationship

In her declaration, Pisinski states that "[she] contract[s] with Morgan Drexen to provide non-attorney / paralegal services that support [her] law practice."  (Pisinski Decl. ¶ 5.)  While "[c]ontract rights are traditionally protectable interests," *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001), Pisinski's bare statement that she contracts with a Defendant in this action is insufficient to satisfy Rule 24(a)(2).  Plaintiff's Complaint concerns only two contracts used by Morgan Drexen in connection with debt relief services, the Debt Relief Contract and the Bankruptcy Contract, and the Complaint relies on the specific features of those contracts in pleading violations of the TSR and CFPA.  (*See* Compl. ¶¶ 41-50.)  Pisinski's declaration does not assert that she is a party to either type of contract.  (*See* Pisinski Decl. ¶ 5.)[1]  Indeed, Pisinski's declaration

---

[1] For this reason, *Southwest Center for Biological Diversity*, on which Pisinski relies, is distinguishable.  (Mot. at 5.)  There, the applicants for intervention were third-party beneficiaries of a land management plan, the validity of which was specifically challenged in the action.  *Sw. Ctr. for Biological Diversity*, 268 F.3d at 820-22.  Here, to the contrary, Pisinski has not established a connection between her contract or contracts with Morgan Drexen and the contracts that are the subject of this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                         Date:  March 10, 2014
Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

provides no details concerning her contractual relationship with Morgan Drexen other than that it concerns "non-attorney / paralegal services."  (Pisinski Decl. ¶ 5.)  Without information concerning the nature and duration of Pisinski's contractual rights and obligations, the Court cannot conclude that this action will impair Pisinski's contractual interests.

Pisinski has also failed to demonstrate that Morgan Drexen will not adequately protect her contractual interests in this action.  Pisinski argues that this action may impair her interests because, "[i]f [the] CFPB is successful, it will shut down Morgan Drexen's business."  (Mot. at 7.)  Morgan Drexen, however, clearly shares the goal of continuing to operate.  "Where the party and the proposed intervenor share the same ultimate objective, a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a compelling showing to the contrary."  *Perry*, 587 F.3d at 951 (quotation marks omitted).  Here, Pisinski has failed to make a "compelling showing" that Morgan Drexen will not adequately represent Pisinski's interest in Morgan Drexen's continued operation.

Accordingly, the Court concludes that Pisinski has failed to show that she has a contractual interest justifying her intervention as a matter of right in this action.

**B.  Economic Interest**

In her declaration, Pisinski states that her practice requires, and Morgan Drexen provides, "high quality non-legal assistants" and "a high level of quality assurance and . . . accountability with [her] non-legal assistants."  (Pisinski Decl. ¶ 5.)

"To determine whether putative interveners demonstrate the significantly protectable interest necessary for intervention of right  . . . , the operative inquiry should be whether the interest is protectable under some law and whether there is a relationship between the legally protected interest and the claims at issue."  *Wilderness Soc'y*, 630 F.3d at 1180 (quotation marks omitted).  Plaintiff has not identified any law that would entitle her to receive support services from Morgan Drexen rather than any other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                          Date:  March 10, 2014
Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

provider.[2]  Nor has Plaintiff established a relationship between her interest and this lawsuit.  In the Complaint, Plaintiff alleges that Defendants violated the TSR and CFPA by charging up-front fees for debt settlement services through their use of the Debt Relief Contract and Bankruptcy Contract.  (Compl. ¶¶ 14, 34, 75, 78, 82, 93.)[3]  Accordingly, it is only Morgan Drexen's services and those of affiliated attorneys under those contracts that are implicated in this action.  As noted above, Pisinski has not demonstrated an association with either type of contract.  Pisinski's economic interest, even if protected under some law, is therefore insufficient to justify intervention as a matter of right.  *See Alisal Water Corp.*, 370 F.3d at 920 (holding that judgment debtor with an interest in the property of a defendant in the action did not have a right to intervene because its economic interest was not "related to the underlying subject matter of the litigation").

## C.  Attorney Conduct

Pisinski contends that this action "implicate[s] the conduct of attorneys supported by Morgan Drexen" (Mot at 5.), and that Pisinski therefore "has a vital interest to protect here that goes to the core of her professional reputation."  (Reply at 3.)  The Complaint, however, concerns only the work performed by Morgan Drexen and affiliated attorneys under the Bankruptcy Contract and Debt Relief Contract.  (*See* Compl. ¶¶ 42-50.)  Because Pisinski has not established a connection between her work and these contracts, Pisinski's conduct is not implicated in this action.  Moreover, even assuming this lawsuit implicates Pisinski's professional conduct, Pisinski has failed to identify a law that protects her interest in defending her professional reputation under these circumstances.

---

[2] Pisinski relies on *United States v. Alisal Water Corp*. for the proposition that "[a] non-speculative, economic interest may be sufficient to support a right to intervention."  (Mot. at 5 (citing *United States v. Alisal Water Corp*., 370 F.3d 915, 919 (9th Cir. 2004).)  *Alisal* does not, however, justify intervention based on an economic interest that is not protected under some law.  The court in *Alisal Water Corp*. specifically noted that a significantly protectable interest is one "protectable under any statute."  370 F.3d at 919.

[3] Plaintiff also alleges that Defendants violated the TSR and CFPA by failing to follow through on promises made in the course of advertising debt relief services.  (*Id.* ¶¶ 85-86, 96-97.)  Pisinski does not contend, however, that she has any relationship with Morgan Drexen's advertising.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                    Date:  March 10, 2014
Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

### D.  Attorney-Client Privilege

Pisinski argues that she is "concerned that CFPB will seek documents maintained by Morgan Drexen that Pisinski received from her clients under attorney-client privilege."  (Mot. at 2.)  However, a client, not the client's attorney, is the holder of the attorney-client privilege.  *See United States v. Layton,* 855 F.2d 1388, 1406 (9th Cir. 1988) (overruled on other grounds) ("The attorney-client privilege applies only if the party claiming the privilege is or sought to become a client.  In addition, the privilege can be invoked only at the instance of the client." (quotation marks and citations omitted)); *Avago Technologies Gen. IP Pte. Ltd. v. Elan Microelectronics Corp.,* No. C04-05385RMWHRL, 2007 WL 841785, *2 (N.D. Cal. Mar. 20, 2007) ("[T]he attorney-client privilege is personal and can only be asserted by the holder of the privilege, which is the client.").  Pisinski therefore has no protectable interest in preventing the disclosure of documents protected by attorney-client privilege.  Additionally, Pisinski has not explained why whatever interest Pisinski may have in preventing the disclosure of attorney-client communications will not be adequately protected by Defendants in this action.

For the reasons stated above, the Court concludes that Pisinski has not identified an interest which justifies her intervention as a matter of right under Rule 24(a)(2).

### IV.    Legal Standard — Permissive Intervention

On a "timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  "Generally, permissive intervention under Rule 24(b) requires '(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action."  *Blum v. Merrill Lynch Pierce Fenner & Smith Inc*., 712 F.3d 1349, 1353 (9th Cir. 2013) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co*., 966 F.2d 470, 473 (9th Cir. 1992)).  However, "[w]here the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  SACV 13-1267 JLS (JEMx)                                Date:  March 10, 2014

Title:  Consumer Financial Protection Bureau v. Morgan Drexen, Inc., et al.

proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away."  *Freedom from Religion Found., Inc.*, 644 F.3d at 844.

In exercising its discretion, the Court should consider (1) "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3); (2) "whether the movant's interests are adequately represented by existing parties," *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989) (quotation marks omitted); and (3) "judicial economy." *Id.* at 531.

## V.  Discussion — Permissive Intervention

Pisinski argues that the Court should allow her to intervene in this action because she has a defense that shares a common question of law or fact with this action.  (Mot. at 8.)  This action, however, concerns the services offered by Morgan Drexen and affiliated attorneys under the Bankruptcy Contract and Debt Relief Contract, and Pisinski has failed to establish a connection to either.[4]  Pisinski has, therefore, failed to demonstrate a common question of law or fact between her defense and this action.

Even assuming that Pisinski had satisfied the elements for permissive intervention though, this Court would still exercise its discretion to deny her request to permissively intervene.  As discussed above, Pisinski has identified, at best, only a tenuous connection to this action, and allowing her to intervene would serve only to unnecessarily delay and complicate these proceedings.

## VI.  Conclusion

For the foregoing reasons, Pisinski's Motion is DENIED.

Initials of Preparer:  tg

---

[4] Pisinski also argues that she shares with Morgan Drexen an attack on the CFPB's constitutionality.  (*Id.*)  The Court, however, has already rejected that defense.  (*See* Doc. 40.)