RECORD NO. 13-5342

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals
### For The District of Columbia Circuit

# MORGAN DREXEN, INC.; KIMBERLY A. PISINSKI,

*Plaintiffs – Appellants*,

**v.**

# CONSUMER FINANCIAL PROTECTION BUREAU,

*Defendant – Appellee.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

──────────────

## REPLY BRIEF OF APPELLANTS

──────────────

Randall K. Miller
Nicholas M. DePalma
Randal M. Shaheen
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons Corner, Virginia  22182
(703) 905-1449
rkmiller@venable.com
nmdepalma@venable.com
rmshaheen@venable.com

*Counsel for Appellants*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

SUMMARY OF THE ARGUMENT ...................................................... 1

ARGUMENT ..................................................................................... 3

    I.    Pisinski Has Standing to Challenge the CFPB ...................................... 3

        Pisinski Is More Than A Mere "Contractual Counterparty" ................ 4

        CFPB's Suit is Impacting Lawyer Privilege ......................................... 5

        CFPB's Case Impacts Pisinski's Law Practice and the Dodd-
        Frank Exemption ............................................................................... 5

        CFPB's Decision to Sue Rather Than Continue its Investigation
        Enhances Standing ............................................................................ 8

        CFPB's Attempt to Distinguish Controlling Case Law Fails .............. 8

        CFPB's Speculation About Other Possible Law Enforcement
        Action Does Not Defeat Standing ...................................................... 9

    II.    CFPB's Defense of Its Constitutionality Fails ..................................... 9

        A.    CFPB Does Not Dispute That Its Insulated Structure Is
              Entirely Unprecedented ........................................................... 9

        B.    CFPB's Arguments About the Lack of Presidential And
              Congressional Oversight Fail to Evaluate the Context ............. 12

              Presidential At-Will Removal ................................................... 13

              Congressional Appropriations Oversight ................................. 15

C.     CFPB's Argument About The Curtailment Of Judicial
       Review Suggests That Congress's Consolidation Of
       Power From Other Agencies Is Unreviewable ........................16

D.     CFPB Does Not Address Other Structural Arguments.............17

III.   CFPB Fails To Justify The District Court's Failure To Exercise
       Pre-Enforcement Injunctive And Declaratory Power ........................18

IV.    CFPB's Single Footnote Argument Fails to Address the District
       Court's Refusal to Enjoin the Second-Filed Action............................25

CONCLUSION ....................................................................................................28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abney v. United States*,
  431 U.S. 651 (1977)..........................................................................22

*Allen v. Wright*,
  468 U.S. 737 (1984)...................................................................19, 20

*Am. Historical Ass'n v. Peterson*,
  876 F. Supp. 1300 (D. D.C. 1995)................................................21

*Ass'n of Am. Railroads v. U.S. Dep't. of Transp.*,
  721 F.3d 666 (D.C. Cir. 2013)......................................................12

*Chamber of Commerce of the United States v.
Environmental Protection Agency*,
  642 F.3d 192 (D.C. Cir. 2011)...................................................4, 5

*Cincinnati Soap Co. v. United States*,
  301 U.S. 308 (1937)........................................................................15

*City of Arlington, Texas v. FCC*,
  133 S. Ct. 1863 (2013)...................................................................10

*City of Mount Clemes v. EPA*,
  917 F.2d 908 (6th Cir. 1990) .......................................................18

*Columbia Plaza Corp. v. Security National Bank*,
  525 F.2d 620 (D.C. Cir. 1975) ...................................... 25, 26, 27

*Deaver v. Seymour*,
  822 F.2d 66 (D.C. Cir. 1987)..................................................23, 24

*Chief Authorities are Designated by an Asterisk*

iii

*Defenders of Wildlife v. Jackson*,
    791 F. Supp. 2d 96 (D. D.C. 2011) .......................................................... 20-21

*Dep't of the Air Force, Scott Air Force Base, Illinois v.*
*Federal Labor Relations Authority*,
    104 F.3d 1396 (D.C. Cir. 1997) ....................................................................20

*Dynalantic Corp. v. Dep't of Defense*,
    115 F.3d 1012 (D.C. Cir. 1997) ......................................................................8

*Edmond v. United States*,
    520 U.S. 651 (1997) .....................................................................................12

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
    905 F.2d 438 (D.C. Cir. 1990) .....................................................................22

*Foretich v. United States*,
    351 F.3d 1198 (D.C. Cir. 2003) ...................................................................20

\*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
    130 S. Ct. 3138 (2010) ............................................. 1, 13, 16, 21, 23, 25, 26

*Freytag v. Comm'r*,
    501 U.S. 868 (1991) .....................................................................................12

*Honeywell Int'l, Inc. v. NRC*,
    628 F.3d 568 (D.C. Cir. 2010) .....................................................................20

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) ...............................................................................13, 15

*In re Aiken Cnty.*,
    645 F.3d 428 (D.C. Cir. 2011) .....................................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    – U.S. –, 134 S. Ct. 1377 (2014) .........................................................1, 19, 20

*Mercantile Nat'l Bank v. Langdeau*,
    371 U.S. 555 (1963) .....................................................................................18

*Morrison v. Olson*,
    487 U.S. 654 (1988)......................................................13, 14, 15, 24

*\*Myers v. United States*,
    272 U.S. 52 (1926)......................................................................13

*Proffitt v. FDIC*,
    200 F.3d 855 (D.C. Cir. 2000).................................................16

*\*Sherley v. Sebelius*,
    610 F.3d 69 (D.C. Cir. 2010).....................................................8

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. –, 134 S. Ct. 584 (2013) ..........................................19

*State Nat'l Bank of Big Spring v. Lew*,
    No. 1:12-cv-01032-ESH,
    2013 WL 3945027 (D. D.C. Aug. 1, 2013)........................26, 27

*Swish Mktg., Inc. v. FTC*,
    669 F. Supp. 2d 72 (D.D.C. 2009)............................................18

*Wabtec Corp. v. Faiveley Transp. Malmo AB*,
    525 F.3d 135 (2d Cir. 2008) .....................................................18

## **CONSTITUTIONAL PROVISIONS**

U.S. CONST., art. II, § 2 ...............................................................14

U.S. CONST., art. III.........................................................3, 19, 20

## **STATUTES**

12 U.S.C. § 5512(b)(4)(B) .........................................................16

12 U.S.C. § 5517(e) .....................................................................6

## **RULE**

ABA Model Rules Prof. Conduct 5.3 .....................................3, 5, 27

## OTHER AUTHORITIES

*Addressing the Justice Gap*, N.Y. TIMES, Aug. 23, 2011, *available at* http://www.nytimes.com/2011/08/24/opinion/addressing-the-justice-gap.html?_r=0 ......................................................................................6

Daniel C.W. Lang, *Utilizing Nonlawyer Advocates to Bridge the Justice Gap in America*, 17 WIDENER L. REV. 289 (2011) ...........................................6

Don J. DeBenedictis, *Legal Services Unaffordable for Most, Reformers Tell Bar*, L.A. DAILY JOURNAL, Mar. 28, 2014...........................................6

H.R. 2446 ..............................................................................................11

H.R. 3519 ..............................................................................................11

Jenna Greene, *CFPB Puts Lawyers in Cross Hairs:  Number of suits rivals actions against banks*, LEGAL TIMES, Nov. 11, 2013 ............................................11

*Lawmakers Fume Over Unanswered Questions to CFPB*, AMERICAN BANKER, Sept. 13, 2013 .........................................................................10

November 21, 2013 Statement from the House Committee on Financial Services (http://financialservices.house.gov/news/documentsingle.aspx?DocumentID=362475) .....................................................................11

## SUMMARY OF THE ARGUMENT

As American citizens, Morgan Drexen and Kim Pisinski have the right to be free from an enforcement action by a new and entirely unprecedented agency that lacks constitutionally required checks, balances, oversight and accountability.  The Supreme Court's decision in *Free Enterprise Fund*, 130 S. Ct. 3138 (2010), establishes that Morgan Drexen and Kim Pisinski may petition a federal court for injunctive relief, where equitable factors, including the public interest, must be considered.  As in *Free Enterprise Fund*, such challenge, which was made in this case, is entirely collateral to the merits of the enforcement proceeding and should have been considered first and prior to the enforcement case proceeding.

In CFPB's zeal to avoid equitable review as *Free Enterprise Fund* envisioned, CFPB has fully utilized the playbook of avoidance doctrines, including "prudential" avoidance doctrines that the Supreme Court last month criticized in the *Lexmark* case.  In urging no standing for lawyer Kim Pisinski, CFPB is forced to ignore Pisinski's ethical duties of supervision and responsibility for her paralegal, Morgan Drexen, which sets this case apart from those CFPB cites, which involve a mere "contractual counterparty" to a regulated entity.  In its enforcement lawsuit, CFPB leaves no doubt that lawyers like Pisinski are in the agency's crosshairs.  CFPB accuses the lawyers supported by Morgan Drexen as perpetrating a fraud; if proven, such allegations impugn Kim Pisinski's reputation

1

and indicate non-compliance with her ethics rules.  CFPB attempts to downplay its

own California complaint, which it filed with the Court below, and which attacks

what is called the "attorney model," alleges that the lawyers bill for services not

rendered, and demands that attorney fees be disgorged.  CFPB's case is a direct

threat to Pisinski's ability to practice law, and CFPB should not be permitted to

avoid these facts because of CFPB's concern that its lawsuit may be criticized for

violating the provision in the Dodd-Frank Act prohibiting CFPB from regulating

the practice of law (a state function).

    CFPB's arguments on the merits do not confront the facts of this case, where

CFPB is endowed with greater power than any other federal agency in history – yet

at the same time the agency also sets the record for the least elements of checks,

balances, and oversight, such as congressional appropriations oversight and

presidential removal of the lone agency head at will.  CFPB's opposition brief

demonstrates that it simply cannot cite any case, or agency, that can serve as an

exemplar, and instead evaluates each element of insulation one at a time,

ignoring the accumulated effect that CFPB is exercising unconstitutional power.

There is a limit – accumulation of such enormous and unchecked power in the

hands of a single person (the CFPB Director) violates the constitutional design

and threatens the liberty of American citizens.  The Court should consider

CFPB's structural power and absence of restraints in its totality and declare it unconstitutional.

## ARGUMENT

### I.    Pisinski Has Standing to Challenge the CFPB

The facts in the record below supporting Pisinski's standing must be viewed in her favor, and "taken as true", as CFPB concedes.  CFPB Br. at 39, n.11. That record provides ample and uncontroverted evidence showing that she satisfies the Article III criteria.

In our opening brief, we cited the portions of the record demonstrating these facts, including: (1) that Pisinski has contracted with Morgan Drexen for paraprofessional support for her law practice, which contract was reviewed by the Connecticut State Bar, the entity that governs Connecticut lawyers like Pisinski; (2) Pisinski has an ethical duty to supervise Morgan Drexen and is responsible for Morgan Drexen's performance of those duties under Rule 5.3 of the Rules of Professional Conduct; and (3) CFPB's enforcement lawsuit alleges that lawyers who use Morgan Drexen in this manner are participating in a ruse – specifically, CFPB's complaint alleges that Morgan Drexen uses lawyers like Pisinski in order to "disguise" upfront debt settlement fees as fees for legal services.  This is a fraudulent business model, according to CFPB, because the lawyers like Pisinski actually perform "little to no work."  Plfs. Br. at 10-11; 13-15; 21-29.

Pisinski thus has established facts which satisfy the standing requirements of "injury, causation, and redressability." CFPB Br. at 39 n.11.  The enforcement action against Pisinski's support company (Morgan Drexen) accuses lawyers in her position of participating in a ruse and seeks an injunction that would enjoin Pisinski's law practice and require "disgorgement" of fees paid to lawyers in her position (injury); CFPB is causing this injury through its actions (causation); and, if the Court granted Pisinski's request for an injunction declaring the structure of the CFPB unconstitutional, the agency would be precluded from proceeding with that case or taking any further adverse action against her or her legal support personnel at Morgan Drexen (redressability).

   ***Pisinski Is More Than A Mere "Contractual Counterparty"***.  CFPB's central argument against standing is that under *Chamber of Commerce of the United States v. Environmental Protection Agency*, 642 F.3d 192 (D.C. Cir. 2011), Pisinski is a mere "contractual counterparty" to the agency's target, Morgan Drexen, and as such, the alleged harm is attenuated and subject to additional burdens that Pisinski cannot satisfy.  CFPB Br. at 34-35; *see also* CFPB Br. at 41 (arguing against "standing to challenge the constitutionality of an agency simply because that agency is engaged in litigation with their contractual counterparty"); CFPB Br. at 37 (arguing that Pisinski's standing is based "on the government's regulation of a third party.").  CFPB concedes that standing in such circumstances

4

"is not precluded" but is "substantially more difficult to establish."  CFPB Br. at 34 (quoting *Chamber of Commerce* at 201).  However, CFPB's analysis and heavy reliance on *Chamber of Commerce* fails to account for the ethics obligation that makes Pisinski legally responsible for Morgan Drexen's legal support services, gives her a much closer relationship than exists with third party purveyors of office supplies and accounting services, and distinguishes this case from *Chamber of Commerce* and the other precedents which CFPB cites.

 *CFPB's Suit is Impacting Lawyer Privilege*.  CFPB downplays Pisinski's claim that she is harmed because the agency's actions threaten to invade the confidentiality of her communications with her clients. CFPB Br. at 33-34.  CFPB's only response to that claim is a factual assertion in the California action that the lawyers like Pisinski bill for services yet perform "little if any work."  This creates a dispute of fact – the resolution of which is not a proper basis for granting a motion to dismiss.  Litigation of that core CFPB allegation will require a scrupulous examination of what the lawyers actually did on a daily basis.

 *CFPB's Case Impacts Pisinski's Law Practice and the Dodd-Frank Exemption*.  Pisinski cited her ethical duty to supervise Morgan Drexen under Rule 5.3, but CFPB does not address or even mention this duty.  It is understandable that, from a tactical perspective, CFPB seeks to avoid addressing the consequences of the supervisory relationship between Pisinski and Morgan Drexen.  If CFPB

were to acknowledge that relationship, the agency risks that its case could run afoul of the exemption from CFPB enforcement against lawyers practicing law. Section 1027(e) of the Dodd-Frank Act provides that "the Bureau may not exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law." 12 U.S.C. § 5517(e).

Beyond the exemption for lawyers in the Dodd-Frank Act, the case also implicates the "justice gap" currently debated in the legal profession,[1] and the increasing call for the use of nonprofessional support services such as those offered by Morgan Drexen. In the United States, there are two systems of justice – one for those that can afford legal representation – and a greatly diminished system for those who cannot afford a lawyer. Sophisticated support services such as those

---

[1] Don J. DeBenedictis, *Legal Services Unaffordable for Most, Reformers Tell Bar*, L.A. DAILY JOURNAL, Mar. 28, 2014, at 1 ("Even at a rate of $200 an hour, the vast majority of people cannot afford lawyers"; "[T]o expand access to legal help, the legal profession must allow corporate ownership of law firms, the sharing of fees with nonlawyers and licensing of nonlawyers to provide legal services."). *See also Addressing the Justice Gap*, N.Y. TIMES, Aug. 23, 2011, *available at* http://www.nytimes.com/2011/08/24/opinion/addressing-the-justice-gap.html?_r=0 ("Another step is to allow nonlawyers into the mix. The American Bar Association has insisted that only lawyers can provide legal services, but there are many things nonlawyers should be able to handle, like processing uncontested divorces."); Daniel C.W. Lang, *Utilizing Nonlawyer Advocates to Bridge the Justice Gap in America*, 17 WIDENER L. REV. 289, 305 (2011) ("Paralegals improve profitability because they work under the supervision of an attorney, perform the same substantive legal work as the attorney, and receive significantly lower pay than the attorney.").

offered by Morgan Drexen help to even this playing field.  The CFPB contends that legal services are not being provided here and, thus, the lawyer exemption is not triggered because the manner in which the services are being provided does not mirror that of the many large and costly blue chip law firms that surround the CFPB in Washington, DC and in other large cities.  The services of those firms, of course, are beyond the means of most ordinary consumers, particularly those facing a seemingly insurmountable mountain of debt.  However, the contractual arrangement that many smaller practitioners enter into with Morgan Drexen so that they can provide legal representation to individuals who might otherwise have to face off against attorneys retained by much more sophisticated and well-financed debt holders, does not render these services "non-legal" simply because they are different.

For purposes of standing, the Court must assume that Pisinski will win this debate and prevail on the merits.  Plfs. Br. at 28-29 (citing authority).  Pisinski is entitled to her day in court to argue the constitutionality of this new and novel federal agency, which erroneously is portraying her as having entered into a contract with a paralegal provider in a way that does not constitute the practice of law and violates her ethical obligations.

***CFPB's Decision to Sue Rather Than Continue its Investigation***

***Enhances Standing***.  CFPB's brief argues that it elected to end its investigation after this case was filed, so that there will be no more civil investigative demands issued, and therefore the adverse effects of those demands on Pisinski do not demonstrate standing.  However, the fact that CFPB massively escalated this matter by transforming its administrative investigation into a federal lawsuit, for which the CFPB Director issued a press release stating that lawyers supported by Morgan Drexen are involved in a ruse, has the effect of enhancing, not diminishing, Pisinski's standing to sue.

***CFPB's Attempt to Distinguish Controlling Case Law Fails***.  In our opening brief, we demonstrated that case law neither requires Pisinski to demonstrate a "certain," "consummated" injury, nor that she be correct on the merits of her case, citing cases that upheld standing in the face of objections similar to those the CFPB advances here.  Plfs. Br. at 19-29.  Although CFPB attempts to distinguish these precedents, these cases show why CFPB's positions should be rejected and that Pisinski has standing.  *See Sherley v. Sebelius*, 610 F.3d 69, 74 (D.C. Cir. 2010) (adverse impact need not be certain); *Dynalantic Corp. v. Dep't of Defense*, 115 F.3d 1012, 1016 (D.C. Cir. 1997) (plaintiff's "constitutional claim is not logically distinct from its injury" and therefore that it had standing).

8

***CFPB's Speculation About Other Possible Law Enforcement Action Does Not Defeat Standing***.  CFPB contends that an injunction cannot redress Pisinski's injury because other law enforcement entities may seek to enjoin Pisinski's or Morgan Drexen's conduct. CFPB Br. at 38.  This claim is speculative and cannot defeat Pisinski's threshold challenge to the constitutionality of the CFPB.  If the Court grants Pisinski the relief she seeks, and enters an injunction on the basis that the CFPB is unconstitutional, the agency would be precluded from proceeding with this case or taking any further action against her or her legal support company. This relief would fully redress the constitutional injury from which she is currently suffering.  Hypothetical further actions by some other, unnamed agency cannot defeat Appellants' claims that the CPFB is harming them "here and now."

## II.    CFPB's Defense of Its Constitutionality Fails

CFPB's constitutional analysis (CFPB Br. at 47-55) does not dispute its massive power and unprecedented insulation from control by the Legislative and Executive Branches.  CFPB's analysis of prior separation of powers cases fails to address the dangers posed by CFPB's highly unusual structure.

### A.    CFPB Does Not Dispute That Its Insulated Structure Is Entirely Unprecedented

CFPB does not dispute that its degree of structural insulation from normal constitutional checks and balances is unprecedented.  CFPB does not – and cannot – cite any case approving, or even considering, an agency with such similar

extraordinary power yet such extreme insulation from oversight and control by Congress and the President.  CFPB's novel structure confirms Justice Robert's recent warning about the constitutional dangers posed by an increasingly more powerful administrative state.[2]

CFPB can regulate virtually every aspect of the U.S. economy, but lacks core structural protections that are necessary to prevent abuse of its regulatory enforcement power.  The CFPB's Director:

1.   is not subject to presidential removal at will;

2.   can spend $597.6 million annually without congressional appropriations oversight;

3.   does not have to answer any congressional questions to justify its budget because the Dodd-Frank Act forbids any "review" of the money by the Appropriations Committee;

4.   perhaps as a consequence, CFPB has declined to answer congressional questions about CFPB's enforcement methods;[3]

---

[2] *City of Arlington, Texas v. FCC*, 133 S. Ct. 1863, 1879 (2013) (Roberts, J., dissenting).

[3] *See Lawmakers Fume Over Unanswered Questions to CFPB*, AMERICAN BANKER, September 13, 2013.

5.    commences enforcement actions at will – without the restraining effect of Department of Justice involvement and vetting – because CFPB has "independent litigating authority";

6.    can, and has, targeted lawyers practicing law such as Pisinski despite the prohibition on its regulating the legal profession in the Dodd-Frank Act;[4]

7.    can act unilaterally without securing the consent of a bipartisan panel of commissioners; and

8.    is immune from any budget curtailment through sequestration, shutdown, or a lapse in appropriations.[5]

CFPB's brief offers a conclusory assertion that the elements of insulation and autonomy do not pose any constitutional problem, but it cites no case that supports or even considers the constitutionality of these accumulated elements of

---

[4] Jenna Greene, *CFPB Puts Lawyers in Cross Hairs:  Number of suits rivals actions against banks*, LEGAL TIMES, November 11, 2013.

[5] CFPB's structural deficiencies dominate discussion in Congress, and have led to proposals for reform.  *See* November 21, 2013 Statement from the House Committee on Financial Services (http://financialservices.house.gov/news/ documentsingle.aspx?DocumentID=362475), announcing the passage by the Committee of proposed legislation including (1) H.R. 2446 to reform the CFPB's leadership structure with a bipartisan, five-member commission appointed by the President; and (2) H.R. 3519 to promote greater accountability and transparency at the CFPB by subjecting it to congressional oversight through the regular appropriations process.

autonomy and insulation from control by the political Branches.  In fact, there is

neither a case nor any historical practice that could justify CFPB's combined lack

of structural safeguards, and this "novelty may . . . signal unconstitutionality."

*Ass'n of Am. Railroads v. U.S. Dep't. of Transp*., 721 F.3d 666, 673 (D.C. Cir.

2013).  Ultimately, CFPB cannot deny that it is unmoored from the historical

practices, traditions, and Supreme Court case law that together form the guide to

evaluating the constitutionality of Executive Branch authority.

> **B.     CFPB's Arguments About the Lack of Presidential And Congressional Oversight Fail to Evaluate the Context**

CFPB's argument defending the lack of presidential removal at-will and

appropriations oversight (CFPB Br. at 48-52) cites cases that come nowhere close

to the extraordinary circumstances here.

CFPB's brief ignores one of the most important bedrock constitutional

principles taught in every high school civics class.  Governmental power cannot be

exercised by unelected bureaucrats who are not closely supervised and disciplined

by political actors.  *See Freytag v. Comm'r*, 501 U.S. 868, 884 (1991) (political

accountability enables the public to monitor and check through the ballot box

government actions to "ensure that those who wield[] [power are] accountable to

political force and the will of the people."); *Edmond v. United States*, 520 U.S.

651, 663 (1997) (importance of preserving "political accountability relative to

important [g]overnment assignments.").

*Presidential At-Will Removal*.  With regard to presidential removal,

Appellants' opening brief showed that the Supreme Court's decisions in *Myers*,

*Humphreys Executor*, and *Free Enterprise Fund*[6] require unfettered presidential

power to remove executive officers like the CFPB Director "at will."  Plfs. Br. at

38.  Given that there is a single agency head in this case, *Myers* is the controlling

precedent.  The burden rests with CFPB to prove special circumstances that would

allow this Court to depart from the presumptive rule articulated in *Myers* that the

President must have the ability to remove the head of a reporting agency without

any restriction, whether for abuse of his enforcement authority or simply

disagreement with the President's policies.  The Court reaffirmed the holding in

*Myers* in *Free Enterprise Fund* and specifically held that special circumstances

must exist to justify encroachment upon this important presidential disciplinary

tool.  *See Free Enterprise Fund*, 130 S. Ct. at 3146-47.  CFPB identified no such

special circumstances are present here.

The CFPB seeks to avoid *Free Enterprise Fund*, and its affirmation of the

*Myers* rule requiring presidential at-will removal absent special circumstances, by

reliance on *Morrison v. Olson*, 487 U.S. 654 (1988)  (CFPB Br. at 51).  However,

*Morrison* addressed the removal authority with respect to the ***inferior*** executive-

---

[6] *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 130 S. Ct. 3138
(2010), *Humphrey's Executor v. United States*, 295 U.S. 602, 624 (1935), *Myers v.
United States*, 272 U.S. 52 (1926).

branch officers (independent counsels); hence, *Morrison* simply does not apply to this case, which involves a *principal* officer of the Executive Branch within the meaning of Article II, Section 2 of the Constitution. The CFPB does not even try to demonstrate that the CFPB Director is an "inferior" officer in the constitutional sense.

Moreover, the Supreme Court found in *Morrison* that the independent counsel had extremely narrow duties. They had "limited jurisdiction and tenure" and "lack[ed] policymaking or significant administrative authority," *id.* at 691, and accordingly were not "so central to the functioning of the Executive Branch" so as to require presidential control. *Id.* at 691-92.

The CFPB Director, by contrast, is one of the most powerful officers in federal government. He has unilateral decision making authority over the rulemaking, supervision, and enforcement functions of an agency with broad jurisdiction over many aspects of the U.S. economy; power to implement 18 pre-existing statutes, transferred from seven other federal regulators; power to declare what constitutes an "abusive act or practice" (which he has not yet defined); and an aggregated source of funding, exempt from the appropriations process ($597.6 million this year). The agency's power is massive and unprecedented. CFPB's

14

attempt to compare this powerful principal office to the inferior officer involved in *Morrison* is meritless.[7]

    ***Congressional Appropriations Oversight***.  With regard to the lack of congressional appropriations oversight, CFPB cites entirely distinguishable cases (CFPB Br. at 49-50) and plucks out quotes that – at best – stand for the proposition that Congress can create certain types of self-funding programs, such as through user fees.  These cases have nothing to do with how Congress funds federal regulatory agencies.  For example, the *Cincinnati Soap* case challenged Congress' decision to permit the Philippines' treasury to keep a three-cent per pound tax imposed for the production of coconut oil in the Philippines.  *Cincinnati Soap Co. v. United States*, 301 U.S. 308 (1937).  These cases provide no support for the CFPB structure and again reinforce the fact that the structure is unprecedented.

---

[7] CFPB relies on *Humphreys Executor* (limiting removal of members of multimember commission at FTC).  Aside from the fact that there is no internal restraining influence of a multimember commission at the CFPB, at least some judges and scholars have questioned *Humphreys Executor.  See In re Aiken Cnty.*, 645 F.3d 428, 441-42 (D.C. Cir. 2011) (Kavanaugh, J., concurring) (noting that *Humphreys* was "one in a line of decisions issued in 1935 and 1936 . . . by a Supreme Court seemingly bent on resisting President [Franklin] Roosevelt and his New Deal policies."). Judge Kavanaugh noted that "[t]he other cases in that line have long since been discarded as relics of an overly activist anti-New Deal Supreme Court," but somehow, *Humphrey's Executor* is the one product of the age of the Four Horsemen that "lives on." *Id.*

### C.   CFPB's Argument About The Curtailment Of Judicial Review Suggests That Congress's Consolidation Of Power From Other Agencies Is Unreviewable

We explained in our brief (Plfs. Br. at 39) that Dodd-Frank prescribes an improper rule of decision that purports to control the process of judicial review of agency actions and preemptively declares CFPB the winner in any dispute with the Executive Branch about the proper interpretation of a consumer financial protection law.[8] CFPB does not deny this; instead, it justifies this outcome – as it does with so many of the CFPB's other features – by arguing that it is constitutional because Congress said so.  CFPB Br. at 53-54.  But Congress is not the arbiter of the boundaries of congressional power.  Courts will invalidate statutory provisions creating agencies when (as here) Congress violates the constitutional principles – as the Court did in *Free Enterprise Fund* and many other cases.  (JA 380).

Significantly, Dodd-Frank transfers authorities from seven other agencies to CFPB.  This creates a separation-of-powers problem because Dodd-Frank mandates that Courts treat any CFPB interpretation as displacing all previous agency interpretations (including judicially-reviewed ones).  Among other things, this reverses decades of judicial precedent, including the cases that mandate *de novo* review.  *See Proffitt v. FDIC*, 200 F.3d 855, 860 (D.C. Cir. 2000) (collecting

---

[8] 12 U.S.C. § 5512(b)(4)(B) requires courts to grant the same deference to CFPB's interpretation of federal consumer financial laws that they would "if [CFPB] were the only agency authorized to apply, enforce, interpret, or administer the provisions of such Federal consumer financial law."

cases that establish that there is no basis for *Chevron* deference when more than one agency administers a statute).

Aggregating the power of seven agencies into a single executive agency and then requiring the courts to allow it to overrule any prior statutory interpretation by its predecessors at CFPB's election further demonstrates that CFPB possesses unprecedented and dangerous power. Full and vigorous judicial review is an important protection against abuse of power by an enforcement agency. Dodd-Frank dictates a novel and material restraint on judicial power, which is an independent constitutional violation.

### D.    CFPB Does Not Address Other Structural Arguments

CFPB's constitutional argument does not address other of Appellants' constitutional arguments, such as Congress's deviation from the tradition of not using a multimember commission as has been done with similar enforcement agencies such as the FTC and SEC, the failure of Congress to calibrate the scope of checks and balances to the large sweep of CFPB power, the improper and unchecked delegation of power and its threat to liberty. CFPB also does not offer competing judicial criteria in evaluating these concerns (*see* Pltfs. Br. 31-32) and – significantly – *CFPB not does offer any limiting principle*. Appellants refer the Court to the opening brief and briefing below for a fuller discussion of these issues.

17

### III.   CFPB Fails To Justify The District Court's Failure To Exercise Pre-Enforcement Injunctive And Declaratory Power

In seeking to justify the district court's refusal to exercise the equitable and declaratory authority it admittedly possesses, CFPB advances a series of procedural defenses that are not applicable to their threshold constitutional challenge to the existence of the agency itself.  This is not a garden-variety case such as *Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72 (D.D.C. 2009) (CFPB Br. at 29), and others cited by CFPB, where a plaintiff claims that an *established* federal agency has exceeded its authority or even acted in a way so as to violate a plaintiff's rights.  Instead, the claim here is that a new agency of federal government is void *ab initio* because its very structure cannot be tolerated under the Constitution, and therefore it lacks the authority to take *any* actions.

CFPB emphasizes that the Central District of California denied Morgan Drexen's motion to dismiss.  However, contrary to CFPB's characterization (*see* CFPB Br. at 21), the denial of a motion to dismiss is in no way a final adjudication of the constitutional issue.  Such a denial is a non-final, non-appealable interlocutory order that is not even binding on the Central District of California, much less on the parties and this Court.  *See, e.g.*, *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 572-73 (1963) (Harlan, J., dissenting); *Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 137-38 (2d Cir. 2008); *City of Mount*

18

*Clemes v. EPA*, 917 F.2d 908, 915 n.6 (6th Cir. 1990). The denial of a motion to dismiss also has no res judicata or preclusive effect, and does not affect this appeal.

CFPB likewise argues that the denial of the motion to dismiss gives rise to "prudential mootness," but this argument is unavailing for several reasons. First, the Supreme Court's recent decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, – U.S. –, 134 S. Ct. 1377 (Mar. 25, 2014) appears to eliminate that doctrine, or at least calls its existence into question. Formerly, the Supreme Court recognized a role for "prudential" considerations, over and above constitutional requirements, in "[a]ll of the doctrines that cluster about Article III – not only standing but mootness, ripeness, political question, and the like." *Allen v. Wright*, 468 U.S. 737, 750 (1984). In *Lexmark*, the Court appears to have abandoned this approach, on the ground that declining to adjudicate a case or controversy on "prudential" rather than constitutional grounds "is in some tension with [the Court's] recent reaffirmation of the principle that 'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'" *Lexmark*, 134 S. Ct. at 1386 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. –, –, 134 S. Ct. 584, 591 (2013)). In *Lexmark* the Court backs away from previous holdings characterizing prudential justiciability as requiring more than the Constitution, in the context of standing. *See id.* at 1388. As the doctrines of prudential standing and prudential mootness derive from the same

19

source, *see Allen*, 468 U.S. at 750, both doctrines are called into question by

*Lexmark*.

To the extent that CFPB is arguing actual mootness, rather than prudential

mootness, it cannot sustain its "heavy burden." *Honeywell Int'l, Inc. v. NRC*, 628

F.3d 568, 576 (D.C. Cir. 2010).  As noted, denial of the motion to dismiss is non-

final, and if Appellants prevail here, their requested declaratory and injunctive

remedies, including to enjoin the second-filed California action, would remedy the

constitutional violation and certainly would satisfy the mootness standard, which is

merely that the remedy would have "a reasonable chance of affecting the parties'

future relations."  *Id.* at 577.

CFPB's cases are not to the contrary.  *See Foretich v. United States*, 351

F.3d 1198, 1210, 1212-13 (D.C. Cir. 2003) (holding that an injury became

"unredressable" only after the Court lost jurisdiction to grant visitation under a

statute that "extends only to minor children" and noting that reputational injury

does not satisfy Article III standing only "*when that government action itself no*

*longer presents an ongoing controversy.*")  Here, CFPB's California lawsuit

continues and is an "ongoing controversy."  *See Dep't of the Air Force, Scott Air*

*Force Base, Illinois v. Federal Labor Relations Authority*, 104 F.3d 1396, 1402

(D.C. Cir. 1997) (overruling request to dismiss case on "prudential mootness

grounds"); *Defenders of Wildlife v. Jackson*, 791 F. Supp. 2d 96, 109-10 (D. D.C.

20

2011) (permitting one party's claim to proceed where the Court still had the power to enter a "partial remedy."); *Am. Historical Ass'n v. Peterson*, 876 F. Supp. 1300 (D. D.C. 1995) (denying motion to dismiss on grounds of "prudential mootness").

CFPB argues that being forced to undertake the pains and burdens of litigation in California does not constitute the kind of irreparable harm necessary for the court to issue a preliminary injunction.  Once again, CFPB misperceives the nature of the case, which is to allege that an unconstitutional agency lacks authority to take any actions.  The Supreme Court in *Free Enterprise Fund* made clear that a federal court may issue injunctive relief in the face of a new and novel agency whose unusual structure precludes it from taking actions against citizens.  It is not only the money and burden of trial in California – it is the **liberty** deprivation (*see* JA 378) Appellants are suffering from an unconstitutionally structured agency (which happens to be attempting to put Appellants out of business).

In addition, CFPB's blanket argument that having to litigate cannot constitute irreparable harm is overstated.  There clearly are other circumstances when the act of having to defend a litigation matter, standing alone, is a complete injury that justifies immediate judicial intervention.  For example, with regard to the prohibition against double jeopardy, there is more than just protection against a conviction – but also protection against "the personal strain, public embarrassment,

21

and expense of a criminal trial more than once for the same offense. It thus protects interests wholly unrelated to the propriety of any subsequent conviction." *Abney v. United States*, 431 U.S. 651, 661 (1977). Likewise, the immunity enjoyed by foreign sovereigns under the Foreign Sovereign Immunity Act is premised on the recognition that foreign sovereigns are not only immune from ultimate liability, but also from the burdens of having to defend the litigation itself. As this Court has stated: "[S]overeign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990) (internal quotation marks and citation omitted).

Here, where there is a foundational constitutional challenge to a new agency structured in a completely unprecedented manner, the basic principles underlying the exercise of injunctive and declaratory authorities support a conclusion that a reviewing court should address the structural challenge first, without forcing an American citizen to suffer the stigma, embarrassment, burden, and expense of litigation against a potentially unconstitutional government actor before she can seek redress of this irreparable harm that will adversely affect it and all others subject to the CFPB's jurisdiction. The structural challenge is collateral to, and separable from, the merits and should be addressed immediately.

22

CFPB argues that the supervising lawyer Pisinski has no standing, and Morgan Drexen's ability to defend in California gives it an "adequate remedy at law." However, *Free Enterprise Fund* provides that injunctive relief should be available when a new agency's structure violates the Constitution, and here, the motion to dismiss procedure is not an adequate substitute. It forces Morgan Drexen into potentially years of litigation at the hands of an agency whose structure is alleged to violate the Constitution, an issue that has nothing to do with the merits of the case. The motion to dismiss decision is not appealable as of right, and is not equivalent to the equitable procedure *Free Enterprise Fund* envisioned. For example, Morgan Drexen could not argue the "public interest" factor relevant to equitable motions.[9] Ultimately, the denial of Morgan Drexen's liberty interest to be free from unchecked, and therefore potentially tyrannical, government power (JA 378) presents the kind of injury for which there is no adequate remedy at law.

CFPB's reliance on *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987), is misplaced and does not support its position. That case was based on a "traditional rule, dating back to the English division between courts of law and equity, . . . that the latter had 'no jurisdiction over the prosecution, the punishment or the pardon of crimes and misdemeanors' and therefore could not enjoin criminal proceedings."

---

[9] Morgan Drexen filed a motion for preliminary injunction, which was denied in one sentence (no findings were made), and sought discretionary interlocutory appeal, which was denied.

*Id.* at 68 (internal citation omitted).  The analysis focused exclusively on the authority "of an equity court to interfere with criminal proceedings" (*id.* at 70) and did not address the authority of federal courts to utilize their injunctive or declaratory authorities in cases involving threshold constitutional challenges to a federal civil enforcement action as void *ab initio* due to a fatal, fundamental defect in the structure of the agency involved.  Federal courts retain full authority to exercise their equitable powers against unlawfully founded civil enforcement cases when the circumstances warrant their intervention.

CFPB's reliance on *Deaver* is unfounded for a second, independent reason.  As noted above in the discussion of *Morrison v. Olson*, in each case the challenge to a criminal prosecution under the Ethics in Government Act concerned an action by an inferior officer who exercised limited and constrained authority in a criminal context.  This is a far cry from the current matter, in which Appellants challenge the actions of a principal federal officer who exercises enormous and unconstrained powers, including enforcement authority in civil cases.  Unlike Deaver and Olson who challenged only the identity of the officer "qualified to direct the prosecution," Appellants "assert a constitutional right not to stand trial" because of the underlying constitutional violation of CFPB's structure, which taints every action by the CFPB.  *Id*. at 71.

24

**IV.  CFPB's Single Footnote Argument Fails to Address the District Court's Refusal to Enjoin the Second-Filed Action**

In our opening brief, we explained that that District Court committed an independent error by failing to enjoin the second-filed California action.  Pltfs. Br. 47-48.  The parties fully briefed our motion to enjoin the California action in the proceedings below.  (JA 421-motion, JA 528-opposition, JA 539-reply).  CFPB's cursory single-footnote response argues that the failure to enjoin was proper because there was a "race to the courthouse" and that the California court is underway and should not be stopped, "particularly now."   CFPB Br. at 31 n.7.

First, CFPB's "race to courthouse" argument *contradicts* the record because CFPB had not decided whether or not to sue when this case was filed. CFPB confirmed this to the Court after this suit was filed.  *See* 7/25/13 Tr. at 5:10 to 6:11 ("We have *not yet determined whether or not to file an enforcement action*, and I can't commit to what we will do in that regard . . .") (emphasis added).

Second, CFPB fails to confront the numerous other factors presented to the Court below and required under *Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975), which is the governing case, and which authorizes the enjoining of second-filed actions in circumstances such as these. The circumstances presented below include the fact that the parties already agreed to fully brief the constitutional issue, which the Supreme Court in *Free Enterprise Fund* held is collateral and entirely separable from the merits.  This

factor is different from a more typical challenge that anticipates a defense on the merits (such as a defense that an established and legitimately-structured agency violated a statutory or even constitutional restriction).  Here, the challenge is that the agency's structure renders it void *ab initio*.

Beyond the *Free Enterprise Fund* issue, Plaintiffs also presented other *Columbia Plaza* factors.  When resolving a motion to enjoin a second-filed case, *Columbia Plaza* requires the district courts to consider "equity", "convenience", and "the public importance of the questions to be decided," and Plaintiffs presented such factors below, including: (a) the location of the CFPB and its investigation here; (b) the location of all counsel of record here; (c) the familiarity of this Circuit with the kind of administrative and constitutional issues presented; and (d) the pendency of the related *Big Springs* (Case Nos. 13-5247, 13-5248) case challenging the CFPB and presenting standing questions.  Thus there are many factors that favor – and which still favor – enjoining the enforcement proceeding, not just the fact that this case was filed a month prior to the California case being filed – although this factor also weighs in favor of the requested injunction.

Third, Plaintiffs argued below that failure to enjoin the California court could lead to duplicative and potentially inconsistent decisions.  That is precisely what is happening now, and is a reason that the second-filed action should be enjoined – and still must be enjoined.  CFPB's "particularly now" comment in its

26

footnote appears an attempt to turn this argument on its head by emphasizing that the California proceedings are progressing, but the record below shows that this factor was cited to support enjoining the second-filed action.

Fourth, CFPB's footnote argument fails to account for Pisinski's interests because Pisinski was not permitted to intervene in the California lawsuit. CFPB vigorously opposed Pisinski's motion for intervention in California and succeeded in blocking her participation in that court, despite the fact that Pisinski's legal practice is attacked by CFPB's lawsuit, which alleges that lawyers supported by Morgan Drexen are engaged in a ruse. In the absence of relief from this Court, Pisinski will be left without any judicial remedy to assert her liberty interest to challenge CFPB, and to defend her law practice and the activities of Morgan Drexen for which Pisinski is ethically responsible under Rule 5.3 of the ethics rules.

Fifth, the "the public importance of the questions to be decided" is a *Columbia Plaza* factor that should be emphasized in this case. Contrary to CFPB's central theme of prudential avoidance, the constitutionality of the very unique CFPB structure cannot be avoided. If not in this or the *Big Spring* case, the issue will be presented. The constitutionality of CFPB's structure continues to be debated by civic organizations, members of Congress, and legal scholars

27

(such as the declarant below, Professor Todd Zywicki), and resolution of the issue should occur now.

## **CONCLUSION**

For the foregoing reasons and those set forth in Morgan Drexen's opening brief, this Court should reverse the judgment of the district court and declare CFPB to be unconstitutional, and remand to the District Court with instructions to enjoin CFPB from taking further actions against Appellants.

Respectfully submitted,

VENABLE LLP

/s/ Randall K. Miller
Randall K. Miller
Nicholas M. DePalma
Randal Shaheen
8010 Towers Crescent Drive, Suite 300
Tysons Corner, Virginia  22182
(703) 905.1449

***Counsel for Appellants***

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*6,397*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: <u>April 30, 2014</u>                    <u>/s/ Randall K. Miller</u>
                                                           *Counsel for Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 30th day of April, 2014, I caused this Reply Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> John R. Coleman
> David M. Gossett
> CONSUMER FINANCIAL PROTECTION BUREAU
> 1700 G Street, NW
> Washington, DC  20552
> (202) 435-7254
> john.coleman@cfpb.com
> david.gossett@cfpb.com
>
> *Counsel for Appellee*

I further certify that I caused the required copies of the Reply Brief of Appellants to be hand filed with the Clerk of the Court.

/s/ Randall K. Miller
*Counsel for Appellants*